# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

CELINA ROBERTS, ANTHONY SCIOTTO,
ERIC BURNS, KERI DICKEY, ANGELA
RAMIREZ, DIANA SANTILLAN, CAMILLE
GHANEM, ARNOLD WILLIAMS, and
OLUWATOSIN BABALOLA, individually,
and on behalf of other persons similarly situated,

       Plaintiffs,

v.

THE TJX COMPANIES, INC., a Delaware
Corporation; MARSHALLS OF MA, INC.,
a Massachusetts Corporation; MARMAXX
OPERATING CORP., a Delaware Corporation,
d/b/a MARSHALLS HOMEGOODS, d/b/a
MARSHALLS, d/b/a T.J. MAXX HOMEGOODS;
HOMEGOODS, INC., a Delaware Corporation;

       Defendants.

-------------------------------------------------------------X

**CIVIL ACTION NO. 1:13-CV-13142**

**LEAVE TO FILE MEMORANDUM
IN EXCESS OF 20 PAGES GRANTED
ON MARCH 10, 2015, DKT. 81**

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
## OF CLASS AND COLLECTIVE ACTION SETTLEMENT
## AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Anthony Sciotto, Angela Ramirez, Arnold Williams,[1] Camille Ghanem,

Oluwatosin Babalola, Eric Burns, and Tommy Zahtila, and those who will promptly be proposed

to be plaintiffs in a Third Amended Complaint (Gianfranco Pirolo, Michael O'Grady, Jason

Foster and Todd Justice) (together "ASM Training Plaintiffs"),  by and through their counsel,

hereby move the Court for preliminary approval of the proposed class and collective action

settlement ("Settlement") set forth in the Settlement Agreement, attached as Exhibit 1 hereto.

---

[1] Plaintiff Arnold Williams passed away during the period when the Parties were negotiating the terms of the proposed Settlement.  Pursuant to the proposed Stipulation and Settlement Agreement ("Settlement Agreement"), the ASM Training Plaintiffs will later seek to amend the proposed Third Amended Complaint to substitute the Estate of Arnold Williams as a plaintiff for Plaintiff Williams.

Specifically, the ASM Training Plaintiffs respectfully request that the Court enter the proposed

Order consented to by Defendants and attached as Exhibit 2 hereto ("Preliminary Approval

Order"):

1) asserting jurisdiction over the claims alleged, the Parties in this action, and the implementation and administration of the Settlement Agreement;

2) approving notice of the Settlement set forth in the Settlement Agreement, as the Settlement falls within the range of reasonableness, and may be adjudicated fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and the Class Action Fairness Act of 2005 ("CAFA"), upon final consideration thereof at the Final Approval Hearing,  and directing consummation of its terms and provisions;

3) authorizing the filing of Plaintiffs' Third Amended Complaint;[2]

4) conditionally certifying the proposed ASM In Training FLSA Settlement Classes pursuant to Section 16(b) of the FLSA and conditionally certifying the ASM In Training New York State Law Settlement Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, as described below;

5) appointing the ASM Training Plaintiffs (except Arnold Williams) as Class Representatives who, together with Class Counsel (as defined in the Settlement Agreement), shall be authorized to act on behalf of all members of the Settlement Classes with respect to the ASM Training Claims asserted in this action and the Settlement Agreement;

6) approving, as to form and content, the Settlement Notice, Release,  Claim Form, and Reminder Postcard, attached as Exhibits A-D to the Settlement Agreement and authorizing the first-class mailing of Settlement Notices and Claim Forms to all members of the Settlement Classes;

7) appointing Valli Kane & Vagnini LLP, Klafter Olsen Lesser LLP, Burr & Smith, LLP, Fair Work P.C., Mehri & Skalet, PLLC, Hepworth, Gershbaum & Roth PLLC, DiNovo Price Ellwanger & Hardy, LLP, and Shavitz Law Group, P.A. as Class Counsel for the Settlement Classes pursuant to Section 216(b) of the FLSA and Federal Rule of Civil Procedure 23;

8) approving and appointing Class Action Administration, Inc. (the "Claims Administrator") as the third-party Claims Administrator who will administrate this Settlement;

---

[2] Plaintiffs will promptly move for leave to amend the Second Amended Complaint in this action consistent with Section III of the Settlement Agreement and pursuant to FED. R. CIV. P. 15(a)(2).

9)  setting a sixty (60) calendar day deadline (from the date Settlement Notices and
Claim Forms are postmarked to members of the Settlement Classes) for the
execution and return of fully completed Claim Forms, requests for exclusion, or
objections;

10) approving the mailing of a Reminder Postcard thirty-five (35) days after the date
the Settlement Notices and Claim Forms are postmarked to members of the
Settlement Classes who have not filed a Claim Form as of that date; and

11) setting the final approval hearing for a date no earlier than one-hundred (100)
calendar days after this motion was filed with the Court.

Defendants The TJX Companies, Inc., Marshalls of MA, Inc., Marmaxx Operating Corp.,

and HomeGoods, Inc. (together "Defendants") do not oppose the instant motion and consent to

the entry of the proposed order attached as Exhibit 2, hereto. In support of their motion for

preliminary approval, Plaintiffs submit the following incorporated memorandum.

## I.   <u>Introduction</u>

The ASM Training Plaintiffs hereby move, unopposed, for preliminary approval of the

Settlement, which has been reached after several months of arms' length and good faith

negotiations, including a full-day mediation before Hunter R. Hughes, Esq., a mediator with

extensive experience mediating class and collective action wage and hour cases such as this one.

The Settlement will provide a fair and reasonable recovery to certain persons currently and

formerly employed as an Assistant Store Manager ("ASM") at a Marshalls, T.J. Maxx, or

HomeGoods store (excluding California), who participated in the formal Assistant Store

Manager Training Program applicable to Marshalls, T.J. Maxx, or HomeGoods, who allege

claims challenging Defendants' classification of them as exempt from receiving overtime

compensation under the FLSA or  New York Labor Law, §§ 650, *et seq.* ("NYLL") for the time

that they participated in the formal Assistant Store Manager Training Program during the periods

set forth in the Settlement Agreement, and who timely submit a Claim Form to obtain a

settlement payment.

This case stems from three separate actions filed between December 2013 and May 2014 alleging either that Defendants: (1) misclassified ASMs at Marshalls or HomeGoods stores (excluding California) as exempt from the overtime requirements of the FLSA and the NYLL and failed to pay them overtime at a rate of 1.5 times the hourly rate for all hours worked over 40 in a workweek or (2) misclassified ASMs at Marshalls, HomeGoods or T.J. Maxx stores (excluding California) as exempt from the overtime requirements of the FLSA and/or the NYLL and failed to pay them overtime at a rate of 1.5 times the hourly rate for all hours worked over 40 in a workweek during the time they that they participated in a formal Assistant Store Manager Training Program.  In each action, a group of ASMs brought individual and class/collective claims against Defendants under the FLSA and the NYLL.  The Plaintiffs alleged that the parent corporation, The TJX Companies, Inc. ("TJX") controlled the wage and hour policies of its brand-name stores, including Marshalls, HomeGoods, and/or T.J. Maxx, as well as Marshalls/HomeGoods Superstores and T.J. Maxx/HomeGoods Superstores.  Defendants deny such allegations and contend that they complied with the FLSA and the NYLL at all times, properly classified ASMs as exempt, both during their time participating in a formal Assistant Store Manager Training Program and after, and would contest class and collective certification of any of the alleged claims.  The three complaints can be summarized as follows:

| | Date Complaint Filed | Type of Plaintiffs/Claims | Brands Involved |
|---|---|---|---|
| *Roberts v. TJX Companies, Inc.*, 1:13-CV-13142 (D. Mass) | Dec. 11, 2013 | All ASMs (excluding California)/ Alleged misclassification of ASMs and failure to pay overtime for hours worked over 40 in a week | Marshalls HomeGoods |

| *Burns v. TJX Companies, Inc.*, 1:14-CV-10306 (D. Mass) | Feb. 10, 2014 | All Merchandising ASMs (excluding California)/ Alleged misclassification of ASMs and failure to pay overtime for hours worked over 40 in a week | Marshalls |
|---|---|---|---|
| *Ghanem v. TJX Companies, Inc.*, 1:14-CV-12104 (D. Mass) | May 12, 2014 | All ASMs (excluding California)/ Alleged misclassification of ASMs during formal ASM Training Program and failure to pay overtime for hours worked over 40 in a week during that period | Marshalls HomeGoods T.J. Maxx |

The Second Amended Complaint, which effectively consolidated the *Roberts*, *Burns* and *Ghanem* actions into a single matter, was filed August 8, 2014.  In the Second Amended Complaint, Plaintiffs asserted violations of the FLSA on behalf of themselves and other individuals who had been employed by Defendants as a Marshalls or HomeGoods ASM (excluding California), and asserted violations of the NYLL on behalf of themselves and other individuals who had been employed by Defendants as a Marshalls ASM in New York, and alleged that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40, including during the time they spent training for the ASM position.[3]  [*See*

---

[3] Specifically, the Second Amended Complaint alleged that Defendants: (1) misclassified ASMs at Marshalls and HomeGoods stores (excluding California) as exempt from the overtime requirements of the FLSA and the NYLL,

Docket No. 60, August 8, 2014, Case No. 1:13-cv-13142].  Upon consolidation, the *Burns* and

*Ghanem* actions were dismissed.

    In the seven months since the Second Amended Complaint was filed, the Parties have

explored settlement of the ASM Training Claims.  These settlement discussions did not address

the ASM Misclassification Claims.  To negotiate the settlement of the ASM Training Claims, on

or about October 28, 2014, the Parties entered into a Confidential Mediation Agreement.

Pursuant to the Confidential Mediation Agreement, the Parties exchanged detailed information

and numerous documents and conducted detailed legal and factual analyses of the ASM

Training, Plaintiffs' claims and Defendants' defenses.  Both sides conducted their own analysis

regarding the (1) potential liability if the ASM Training Claims were to proceed; (2) relative

strengths and weaknesses of the legal merits of their respective positions; and (3) risks associated

with each side's respective positions.  In preparation for mediation and in the course of this

litigation, Class counsel conducted a significant factual investigation into the ASM Training

Claims.  The investigation included research into the ASM Training Claims and analysis of the

actual duties and responsibilities of the ASM employees during the time they spent training for

the ASM position and the manner in which Defendants compensated ASM employees during

that time.  *See* Declaration of Seth R. Lesser attached as Exhibit 3 ("Lesser Decl." at ¶ 13).  Class

counsel undertook extensive interviews with Plaintiffs to determine their actual job duties and

responsibilities during the time they spent training for the ASM position.  (*Id.*)  Class counsel

also investigated and analyzed the applicable state and federal law as applied to the facts

---

and failed to pay them overtime compensation, during the period of time following their formal training period (the
"ASM Misclassification Claims"); and (2) misclassified ASMs at Marshalls and HomeGoods stores (excluding
California) as exempt from the overtime requirements of the FLSA and/or  the NYLL, and failed to pay them
overtime compensation, during the time that they participated in a formal Assistant Store Manager Training Program
(the "ASM Training Claims").  This proposed Settlement resolves only the ASM Training Claims with respect to
Marshalls, HomeGoods and T.J. Maxx (as well as Marshalls/HomeGoods Superstores and T.J. Maxx/HomeGoods
Superstores) outside of California, and not the ASM Misclassification Claims.

discovered with regard to the ASM Training Claims asserted and the potential defenses thereto. (*Id.* at 12)   On November 10, 2014, the Parties engaged in an all-day mediation session under the direction of Hunter R. Hughes, Esq., an experienced class and collective action mediator, including in similar wage and hour cases with hybrid allegations pursuant to both state and federal law.  (*Id.* at 14)  During the mediation the Parties debated the ASM Training Claims and likelihood of their success.  Matters addressed at mediation included the size and scope of the ASM Training Claims, the likelihood of success on the merits on those claims, the manner in which potential damages associated with those claims could be calculated and obtained, the likelihood of trial on a class basis and what would occur at trial on those claims.  (*Id.* at 14)

The Parties were unable to settle the ASM Training Claims at this mediation, but continued negotiations through the mediator after the November 10, 2014 mediation.  Between November 10, 2014 and January 29, 2015, the Parties exchanged numerous drafts of language addressing the ASM Training Claims, including drafting a summary of certain terms of the proposed settlement.  The Parties also held numerous conferences with the mediator. The Parties agreed upon a summary of certain terms of the proposed settlement on January 31, 2015, and subsequently began negotiating the details of the Settlement Agreement itself between January 31, 2015 and March 11, 2015.  The Settlement Agreement was fully executed on March 11, 2015.

These negotiations resulted in an agreement to settle the ASM Training Claims on the terms set forth in the Settlement Agreement.   As the Settlement is the product of arms-length negotiations by informed experienced counsel, the terms of the Settlement are presumptively fair and deserving of preliminary approval.

## II.    Summary of the Terms of the Settlement and Relief Sought

### A.    Settlement Classes

In order to effectively obtain resolution of the ASM Training Claims, the proposed

Settlement encompasses both the ASM Training Claims under the FLSA, in the form of a

collective action resolution, and the ASM Training Claims under the NYLL, in the form of a

Rule 23 class action resolution.  Further, the Settlement Agreement identifies six (6) settlement

classes, delineated by statute and by brand (Marshalls, HomeGoods, or T.J. Maxx) for a

particular statutory period.  The proposed "Settlement Classes,"[4] for which Plaintiffs seek

conditional collective or class certification for settlement purposes only[5] are:

a.    **HOMEGOODS ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a HomeGoods store (excluding California) for one or more complete weeks during the period from **May 12, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to HomeGoods during that time period;

b.    **MARSHALLS ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a Marshalls store (excluding California) for one or more complete weeks during the period from **May 12, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to Marshalls during that time period;

---

[4] The HomeGoods ASM In Training FLSA Settlement Class, Marshalls ASM In Training FLSA Settlement Class, and T.J. Maxx ASM In Training FLSA Settlement Class are collectively referred to herein as the "ASM In Training FLSA Settlement Classes."  The HomeGoods ASM In Training New York State Law Settlement Class, Marshalls ASM In Training New York State Law Settlement Class, and T.J. Maxx ASM In Training New York State Law Settlement Class are collectively referred to herein as the "ASM In Training New York State Law Settlement Classes".

[5] Though Defendants would, in the course of litigation, vigorously oppose the merits of the ASM Training Plaintiffs' claims and oppose the certification of any collective under Section 216(b) of the FLSA or the certification of any class under Federal Rule of Civil Procedure 23, they do not oppose the instant motion for preliminary approval of the proposed settlement or the certification of the proposed Settlement Classes for settlement purposes only.  To the extent that the Court does not grant preliminary or final approval of the proposed Settlement, Defendants reserve the right to raise any argument with respect to the merits of the ASM Training Plaintiffs' claims or the appropriateness of the certification of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the ASM Training Plaintiffs in this memorandum. In addition, regardless of whether this Court approves the Settlement of the ASM Training Claims, Defendants' non-opposition to this motion for approval shall not act to preclude Defendants from opposing both the merits, and the propriety of collective or class certification, of the ASM Misclassification Claims asserted in this action.

c.    **T.J. MAXX ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a T.J. Maxx store (excluding California) for one or more complete weeks during the period from **November 10, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to T.J. Maxx during that time period;[6]

d.    **HOMEGOODS ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a HomeGoods store located in the State of New York for one or more complete weeks during the period from **November 10, 2008 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to HomeGoods during that time period;

e.    **MARSHALLS ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a Marshalls store located in the State of New York for one or more complete weeks during the period from **December 11, 2007 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to Marshalls during that time period; and

f.    **T.J. MAXX ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a T.J. Maxx store located in the State of New York for one or more complete weeks during the period from **November 10, 2008 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to T.J. Maxx during that time period.[7]

---

[6] The statute of limitations for FLSA claims is two years, or three years for a willful violation. 29 U.S.C. § 255(a). The start of the applicable time periods for the HomeGoods ASM In Training FLSA Settlement Class and the Marshalls ASM In Training FLSA Settlement Class are based on the Parties' agreement to presume, for settlement purposes only, a three-year statute of limitations beginning three years prior to the filing of the *Ghanem* action (on May 12, 2014), which asserted the ASM Training Claims under the FLSA and in the Second Amended Complaint with respect to HomeGoods and Marshalls. The start of the applicable time period for the T.J. Maxx ASM In Training FLSA Settlement Class is, by agreement of the parties for settlement purposes only, the date three years prior to the date of the Parties' November 10, 2014 mediation, at which time the Parties agreed to also resolve ASM Training Claims with respect to T.J. Maxx claims, for settlement purposes only. The end of the applicable time periods for the ASM In Training FLSA Settlement Classes is October 25, 2014, the date through which the claims of Authorized Claimants (as defined in the Settlement Agreement) will be released through the Settlement. As of October 25, 2014, Defendants have no longer classified ASMs as exempt during the formal training period.

[7] The statute of limitations for the New York state law claims is six years. NYLL § 663. The start of the applicable time period for the Marshalls ASM In Training New York State Law Settlement Class is the date six years prior to the filing of the *Roberts* action (which was December 11, 2013), which asserted the ASM Training Claims under the NYLL and in the Second Amended Complaint with respect to Marshalls. The start of the applicable time periods for the HomeGoods ASM In Training New York State Law Settlement Class and the T.J. Maxx ASM In Training New York State Law Settlement Class is, by agreement of the Parties for settlement purposes only, the date six years prior to the date of the Parties' November 10, 2014 mediation, at which time the Parties agreed to also resolve then-unasserted ASM Training Claims under the NYLL with respect to HomeGoods and T.J. Maxx, for settlement purposes only. The end of the applicable time periods for the ASM In Training New York State Law Settlement Classes is October 25, 2014, the date through which the claims of Authorized Claimants and those who fail to timely

Federal district courts in other, similar exempt/non-exempt wage and hour cases have approved this form of hybrid settlement.

**B.      The Qualified Settlement Fund**

The Settlement Agreement provides that, if approved, Defendants will pay a Maximum Gross Settlement Amount of $4,750,000.00 into a qualified settlement fund to resolve the ASM Training Claims as detailed in the Settlement Agreement.  (*See* Settlement Agreement at § V.). If approved by the Court, the qualified settlement fund would be administered by an independent and experienced third-party settlement administrator, Class Action Administration, Inc. (the "Claims Administrator").  The Maximum Gross Settlement Amount represents the maximum amount that Defendants would pay pursuant to the Settlement Agreement in the event that every member of the Settlement Classes participates in the Settlement, and includes Settlement Payments to those individuals, Class Counsel's attorneys' fees, expenses and costs up to one-third (33 and 1/3 %) of the total Maximum Gross Settlement Amount, service payments to each of the ASM Training Plaintiffs, all of whom will be named party plaintiffs and representatives of the Settlement Classes, as described below, of up to but not exceeding $3,250.00 each, and costs of notice and claims administration.  In addition, the full amount of any Authorized Claimants' IRS Form W-2 withholdings (and state/local withholdings if applicable) will be taken out of the Maximum Gross Settlement Amount.  The only amount to be paid by Defendants outside of the Maximum Gross Settlement Amount shall be the employer-paid payroll taxes, including FUTA and the employer's share of FICA and state unemployment, as required by law with respect to settlement payments to Authorized Claimants.  (*Id.* at § V).  Finally, any portion of the Maximum Gross Settlement Amount that is not distributed to the Authorized Claimants as

---

exclude themselves from the Final ASM In Training New York State Law Settlement Classes (as defined in the Settlement Agreement) will be released through the Settlement.

settlement payments or pursuant to Class Counsel's fees, costs and expenses, service payments, and settlement expenses (costs of notice and claims administration) shall be remitted to Defendants, as will any interest accrued on the Maximum Gross Settlement Amount while in the qualified settlement fund, under the terms of the Settlement Agreement.

According to Defendants' records, there are 4,018 putative members of the Settlement Classes.  Each Authorized Claimant will receive a *pro rata* share of the Revised Gross Settlement Amount (the Maximum Gross Settlement Amount minus the amount approved by the Court for Class Counsel's fees, costs and expenses, the amount approved by the Court, if any, for service payments, and settlement expenses) based upon the allocation formula that appears in the Settlement Agreement.  The *pro rata* share available to potential Authorized Claimants shall be based upon the number of "Training Weeks" (as defined in the Settlement Agreement)[8] attributed to the putative settlement class member.  Specifically, the number of Training Weeks attributed to members of the HomeGoods ASM In Training FLSA Settlement Class and the HomeGoods ASM In Training New York State Law Settlement Class will be four (4) weeks, and the number of Training Weeks attributed to members of the Marshalls ASM In Training FLSA Settlement Class, the T.J. Maxx ASM In Training FLSA Settlement Class, the Marshalls ASM In Training New York State Law Settlement Class, and the T.J. Maxx ASM In Training New York State Law Settlement Class will be five (5) weeks, unless the putative Settlement Class member actually participated in the formal Assistant Store Manager Training Program for a shorter period of time than the number of weeks stipulated for the specific settlement class of which they are a member, in which case the number of Training Weeks for any such member shall be the lesser of the actual number of weeks that they participated in the formal Assistant Store Manager Training

---

[8] "Training Weeks" is a defined term in the Settlement Agreement and refers to the number of weeks putative settlement class members are deemed to have participated in the formal Assistant Store Manager Training Program for purposes of the Settlement and release.

Program or the stipulated number of Training Weeks.  The estimated average potential payment

to settlement class members who become Authorized Claimants, exclusive of any proposed

service payments to the ASM Training Plaintiffs, is estimated to be approximately $765.21.

### C.    Notice and Distribution of Individual Settlement Amounts

The Settlement Agreement provides that the Claims Administrator shall send a notice to

each individual who is a member of one of the Settlement Classes.  Upon receipt, in order to

receive a settlement payment, members of the Settlement Classes must timely submit a fully

completed Claim Form so that it is received by the Claims Administrator no later than sixty (60)

calendar days after the date on which the Claims Administrator postmarks the Settlement Notices

and Claim Forms to the members of the Settlement Classes (*see* Settlement Agreement, § VI).

For individuals who timely submit fully completed Claim Forms ("Authorized Claimants"),

Defendants will obtain a release of <u>all</u> claims identified in Section IX of the Settlement

Agreement that could have been asserted against them arising out of these individuals'

employment with Defendants while in a formal ASM Training Program during the Training

Weeks up to October 25, 2014.  (*See id.* at § IX).  For members of the ASM In Training New

York State Law Settlement Classes who do not timely submit a valid and enforceable request for

exclusion, their claims (as defined under the terms of the Settlement Agreement) will be released

and barred by the Settlement once it is final, except that their FLSA claims will only be released

if the individual timely submits a fully completed Claim Form, opts into the Settlement, and

becomes an Authorized Claimant.  (*See id.*).

Using Defendants' payroll data and subsequent agreed-to computerized address searches

when needed, the Claims Administrator will make reasonable efforts to best ensure that each

member of the Settlement Classes receives a Settlement Notice, which shall set forth the material

settlement terms; instructions on how members of the ASM In Training FLSA Settlement

Classes may participate in the Settlement; instructions on how members of the ASM In Training

New York State Law Settlement Classes may exclude themselves from, or submit objections to,

the Settlement; and when and where to appear at the final approval hearing, among other

important information.  A copy of the proposed form of Settlement Notice is attached to the

Settlement Agreement as Exhibit A, the proposed release is attached to the Settlement

Agreement as Exhibit B, the proposed Claim Form is attached to the Settlement Agreement as

Exhibit C, and a proposed Reminder Post Card is attached to the Settlement Agreement as

Exhibit D.

       After final approval of the Settlement at or after the final approval hearing, the

completion of claims administration, and within ten (10) business days after the Court's final

approval order becomes a final unappealable order, and upon further order of the Court, the

Claims Administrator will mail Settlement Payments to Authorized Claimants, along with a copy

of the final approval order.

       **D.**     **Proposed Schedule for Preliminary and Final Approval**

       The ASM Training Plaintiffs propose that, along with granting preliminary approval of

the Settlement, the Court adopts the schedule set forth below for the Parties to effectuate the

various steps in the settlement approval process under the Settlement Agreement:

| Event | Proposed Timing |
|---|---|
| Settlement Notices and Claim Forms Sent to Members of the Settlement Classes | Twenty (20) calendar days after the entry of an order preliminarily approving the Settlement |
| Deadline for filing Requests for Exclusion or objections to the Settlement | Sixty (60) calendar days after the date the Claims Administrator postmarks the Settlement Notice and Claim Form to the members of the Settlement Classes |
| Deadline by which Claim Forms must be received by the Claims Administrator | Sixty (60) calendar days after the date the Claims Administrator postmarks the Settlement Notice and Claim Form to members |

| | of the Settlement classes |
|---|---|
| Final Approval Hearing | Not earlier than one-hundred (100) calendar days after the date this Motion was filed with the Court |

As set forth below, the ASM Training Plaintiffs submit that the Settlement satisfies all the criteria for preliminary settlement approval under federal and state law in that it falls well within the range of possible approval. Accordingly, the ASM Training Plaintiffs request that the Court grant their unopposed motion for preliminary approval of the Settlement.

The ASM Training Plaintiffs are of the opinion that the Settlement Agreement is fair, reasonable, and adequate. Further, Class Counsel believes that resolution of the ASM Training Claims is in the best interest of the members of the ASM In Training FLSA Settlement Classes and ASM In Training New York State Law Settlement Classes in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues Defendants may assert. (Lesser Decl., at ¶ 8) A resolution of the ASM Training Claims at this early stage – rather than following a year or more of discovery, conditional certification and Rule 23 certification motions and briefing, potential post-certification further discovery, pretrial proceedings and potential trial, and the costs attendant upon and likely to be incurred through such activities – most certainly greatly inures to the benefit of the members of the ASM In Training FLSA Settlement Classes and ASM In Training New York State Law Settlement Classes. (Lesser Decl. at ¶¶ 17-18) Settlement of the ASM Training Claims—without release of, or prejudice to, the ASM Misclassification Claims—provides immediate relief to the members of the ASM In Training FLSA Settlement Classes and ASM In Training New York State Law Settlement Classes and allows the Parties to focus litigation on the now narrower issues presented by the ASM Misclassification Claims.

14

In addition, the ASM Training Plaintiffs—Anthony Sciotto, Angela Ramirez, Camille Ghanem, Arnold Williams, Oluwatosin Babalola, Eric Burns, Gianfranco Pirolo, Michael O'Grady, Jason Foster, Todd Justice, and Tommy Zahtila—approve of and consent to the Settlement.  They all further consent to be named plaintiffs in the Third Amended Complaint for which Plaintiffs will promptly seek leave to file, and to represent the Settlement Classes.  (Lesser Decl. at ¶ 21)

## III.   Legal Argument

### A.   The Settlement Agreement Should Be Preliminarily Approved By the Court

By this Motion, the ASM Training Plaintiffs seek preliminary approval of the Settlement Agreement.  "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp.*, 614 F.2d 11, 15 (1st Cir. 1980); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II").  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the Court must approve any settlement of a class action.  In a class action, the ". . . court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").  The ultimate determination whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968).  As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

### 1.      The standards and procedures for preliminary approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a

putative Rule 23 class action, including, as here, through Rule 23 classes certified for settlement

purposes only:

> The claims, issues, or defenses of a certified class may be settled, voluntarily
> dismissed, or compromised only with the court's approval. The following
> procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
>> (1) The court must direct notice in a reasonable manner to
>> all class members who would be bound by the proposal.
>>
>> (2) If the proposal would bind class members, the court may
>> approve it only after a hearing and on finding that it is fair,
>> reasonable, and adequate.
>>
>> (3) The parties seeking approval must file a statement identifying
>> any agreement made in connection with the proposal.
>>
>> (4) If the class action was previously certified under Rule 23(b)(3),
>> the court may refuse to approve a settlement unless it affords a new
>> opportunity to request exclusion to individual class members who
>> had an earlier opportunity to request exclusion but did not do so.
>>
>> (5) Any class member may object to the proposal if it requires
>> court approval under this subdivision (e); the objection may be
>> withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997); *Durett*, 896 F.2d at

604.

In determining whether preliminary approval is warranted, the primary issue before the

court is whether the proposed settlement is within the range of what might be found fair,

reasonable and adequate, so that notice of the proposed settlement should be given to class

members, and a hearing scheduled to determine final approval.  *See* MANUAL FOR COMPLEX

LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary

approval stage, "The judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

the certification, proposed settlement, and date of the final fairness hearing.").  Preliminary

approval permits notice of the hearing on final settlement approval to be given to the class

members, at which time class members and the settling parties may be heard with respect to final

approval.  *Id.* at 322.  Preliminary approval is therefore the first step in a two-step process

required before a class action may be finally settled.  *Id.* at 320.  In some cases, this initial

assessment can be made on the basis of information already known to the court and then

supplemented by briefs, motions and an informal presentation from the settling parties.  *Id.* at

320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts

look to whether there is a basis to believe that the final approval standard will be satisfied.  *See*

MANUAL FOURTH at § 21.633, at 321 ("Once the judge is satisfied as to the certifiability of the

class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the

settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.")  The

standard for final approval of a settlement consists of showing that the settlement is fair,

reasonable, and adequate. *See, e.g.*, *Durett*, 896 F.2d at 604; *Prudential II,* 148 F.3d at 316-17;

*GM Trucks,* 55 F.3d at 785.

## 2.    There is a strong basis to believe that the proposed Settlement is fair, reasonable and adequate

Before granting final approval of a proposed class action settlement, the Court will be

asked to find that the settlement is fair, reasonable, and adequate.  *See*, *e.g.*, FED. R. CIV. P.

23(e); MASS. R. CIV. P. 23(c); *Durett*, 896 F.2d at 604; *Sniffin v. Prudential Ins. Corp.*, 395

Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).  As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions.  *See*, *e.g.*, *Rolland v. Patrick*, 562 F. Supp. 2d 176 (D. Mass. 2008); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72; *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005); *Celluci*, 191 F.R.D. at 8-9; *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-833 (D. Mass. 1987).

In the case at bar, an examination of each of the factors that can be examined at this stage demonstrates that there is a strong basis to preliminarily conclude that the proposed settlement is fair, reasonable, and adequate to the members of the Settlement Classes.

First, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive.  If this Settlement is not approved, the Parties face an extended and costly battle, first regarding conditional certification of the ASM Training Claims asserted under the FLSA and the Rule 23 class certification of the ASM Training Claims asserted under New York state law, and then summary judgment on the merits of whether the job duties of the employees who participated in the formal ASM training program satisfied an exemption of the FLSA or NYLL.  The Parties would have to conduct expensive expert discovery and potentially prepare for a trial that would likely be a lengthy and costly class and/or collective action trial.  Further, if the Parties do not settle the ASM Training Claims, it would likely take years and millions of dollars in legal fees before reaching final resolution of those claims, including exhaustion of all appeals.  As noted, Class Counsel's experience in a similar wage and hour misclassification case has amply demonstrated that this is a very real possibility.

Second, with respect to the amount of the Maximum Gross Settlement Amount in this proposed Settlement compared to the amount potentially at issue, the Plaintiffs believe that the value of the Settlement is fair and reasonable given the various challenges facing Plaintiffs.  Specifically, based upon the multiple legal and factual risks continued litigation would entail, and the risk that Plaintiffs and the putative class could recover nothing if this litigation were to proceed, the Plaintiffs believe that this settlement amount is fair and reasonable to the ASM Training Plaintiffs and the Settlement Classes they seek to represent.  *See In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, inter alia, "the proposed settlement amount is sufficiently within the range of reasonableness.").

Third, with respect to the reaction of the members of the Settlement Classes to the Settlement, the Court will best be able to evaluate this factor after the notice period; however, at this stage, all of the ASM Training Plaintiffs have indicated their support for the Settlement.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel conducted a sufficient investigation of the ASM Training Claims asserted in the Second Amended Complaint as well as the potential recoverable damages, thus allowing them to assess the fairness of the Settlement.  Also, while the Parties are in a relatively early stage in the case, the Parties submitted substantial statements to the mediator setting forth facts and legal analysis relevant to the ASM Training Claims and argued to each other numerous points as to the strengths and weaknesses of each's position on those claims.  The forthright nature of the mediation process and the back-and-forth between the sides, as well as the views of an extremely respected and experienced mediator as to those strengths and weaknesses, focused the Parties on the legal and factual issues presented by the ASM Training Claims, and this Settlement will resolve the legal risks associated with those claims, which the ASM Training Plaintiffs fully appreciate at this point in the litigation.  (*See* Lesser Decl. at ¶¶ 14-16).

Fifth, with respect to the Plaintiffs' likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiffs believe they would have been successful in obtaining certification of an FLSA collective or a Rule 23 class on the ASM Training Claims and would have prevailed on the merits of these claims, but recognize that Defendants would have mounted a strong challenge to certification and to any decision on the merits.  In addition, Plaintiffs believe they could have established that Defendants' misclassification of the ASM during the formal training process was a willful violation of the FLSA  in order to obtain a three-year statute of limitations under the FLSA, but recognize that Defendants would have mounted a

strong challenge to any allegations of willfulness.  Finally, Plaintiffs believe that Defendants could not have established that they had objective or subjective good faith in classifying the ASMs as exempt during the formal trainee process such that liquidated damages would be awarded, but recognize that Defendants would have mounted a strong defense to establish Defendants' good faith and the proper classification of ASMs throughout their employment including the formal training process.  Accordingly, the ASM Training Plaintiffs recognized that winning conditional or class certification, prevailing on the merits, or avoiding a potential motion to decertify an FLSA collective or Rule 23 class, would all have presented significant hurdles.

Sixth, with respect to whether the Settlement provides benefits that the ASM Training Plaintiffs could not achieve through protracted litigation, the Settlement provides the benefit of a prompt and fair resolution to the ASM Training Claims, and the avoidance of delay of Authorized Claimants receiving their portion of the Maximum Gross Settlement Amount.

Seventh, with respect to whether the Settlement was reached as the result of good faith dealings and the absence of collusion, it certainly was (and there is no evidence or argument to the contrary).  Both the ASM Training Plaintiffs and Defendants are represented by highly experienced and competent counsel recognized as national experts in class action wage and hour litigation, and who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.  Class Counsel has obtained significant court-approved settlements of class action wage and hour cases.  (*See* Lesser Decl. at ¶¶ 18, 20).  The experience and reputation of counsel is paramount.  *See*, *e.g.*, *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.");

*Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, not only was the Settlement Agreement the result of protracted, good faith, arms' length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the substantial assistance of an experienced mediator well-versed in the nuances of wage and hour collective and class actions. The proposed Settlement was therefore not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the ASM Training Claims by experienced and qualified counsel.

The ASM Training Plaintiffs believe that the $4.75 million Maximum Gross Settlement Amount is a fair and reasonable result for a wage and hour settlement collective and/or settlement class of 4,018 individuals, and will undoubtedly result in a reasonable payment to each Settlement Class member who becomes an Authorized Claimant. The potential individual payments to members of the Settlement Classes will be calculated based upon an allocation formula that considers the number of individuals included in the Settlement Classes and the number of "Training Weeks" applicable to each under the terms of the Settlement Agreement, so that fairness in potential payments will result.

The result of the proposed Settlement is well within the reasonable standard. Class Counsel also believe that the result is appropriate when considering the difficulty and risks of litigating collective and/or class claims that involve the alleged misclassification of employees under the executive exemption of the FLSA, and applicable state laws and the failure to pay overtime.

Accordingly, the standards for preliminary approval of the Settlement are met in this case and the Court should grant the present motion.

**B.      Preliminary Certification of the Settlement Classes is Appropriate For Settlement Purposes**

In order to approve the collective and class-wide settlement of the ASM Training Claims, the Court must certify the Settlement Classes, even if only for settlement purposes. *See, e.g.*, *Amchem*, 521 U.S. at 591; *In re Lupron Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998); *Prudential II*, 148 F.3d at 283.  District courts have broad discretion in deciding whether to certify a Rule 23 class or FLSA collective.  *Martins v. 3PD Inc.*, No. 11-11313-DPW, 2014 U.S. Dist. LEXIS 40638 at *29-30 (D. Mass. Mar. 27, 2014).

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour misclassification cases that Class Counsel have settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the six Settlement Classes identified in Section II.A. above and in Section II.PP of the Settlement Agreement.  The ASM Training Plaintiffs seek conditional certification of the ASM In Training FLSA Settlement Classes pursuant to federal case law[9] and also seek preliminary certification of the ASM In Training New York State Law Settlement Classes pursuant to Fed. R. Civ. P. 23.  Federal courts routinely certify such hybrid FLSA collectives and state law Rule 23 classes for settlement.  *See, e.g., Caissie v. BJ's Wholesale Club*, 08-cv-30220 (D. Mass.) (Ponsor, *J.*) (final approval granted

---

[9] The ASM Training Plaintiffs contend that the prerequisites for a conditional certification of an opt-in FLSA collective action class are recognized to be different than those under Rule 23 of the Federal Rules of Civil Procedure.  *See, e.g., Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard) (citing to *Trezvant v. Fidelity Employer Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006)). This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action standard that applies to the ASM In Training FLSA Settlement Classes inasmuch as it would follow *a fortiori* from meeting the Rule 23 prerequisites.

June 10, 2010); *Nash v. CVS Caremark Corp.*, No. 09-079-M, 2011 U.S. Dist. Lexis 145053

(D.R. I. Dec. 9, 2011) (certifying a federal settlement class of CVS ASMs and certifying state

law settlement classes pursuant to Rule 23 at the preliminary approval stage); *Beckman v.*

*Keybank, N.A.*, No. 12 Civ. 7836 (RWS), 2012 U.S. Dist. Lexis 176150 (S.D.N.Y. Dec. 11,

2012) (provisionally certifying classes and preliminarily approving settlement).

The First Circuit has established that where common issues exist, courts should "view the

issue . . . in favor of class action status."  *Tardiff v. Knox County*, 365 F.3d 1, 5 (1st Cir. 2004);

*see also In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 23 (1st Cir.

2008) (noting "existence of a common disputed issue weighs in favor of class certification, not

against it").  This is also the case in other circuits.  *See*, *e.g*., *Eisenberg v. Gagnon*, 766 F.2d 770

(3d Cir.1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to

be one, should be committed in favor of allowing a class action").

Certification of the proposed Settlement Classes for the purposes of settlement is also

consistent with the Supreme Court's recent decisions in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.

Ct. 2541 (2011), *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013),

and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), and the First Circuit's decision in *In re*

*Nexium Antitrust Litigation*, Nos. 14-1521, 14-522, 2015 U.S. App. LEXIS 968 (1st Cir. Jan. 15,

2015).  Here, as set forth below, the ASM Training Plaintiffs contend that all the elements of

Rule 23 are met with respect to the proposed settlement, which, merits Rule 23 class certification

for settlement purposes here.  In turn, the different standard for collective action status of Section

16(b) of the FLSA is, for settlement purposes, also satisfied.

1.      **The elements of Rule 23(a) are satisfied in the present case in the settlement context**

To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil

Procedure, a named plaintiff must establish each of the four threshold requirements of subsection

(a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all only if (1) the class is so numerous that joinder of
> all members is impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the representative
> parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the
> class.

Fed. R Civ. P. 23(a). *See*, *e.g.*, *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) ("all four

requirements of Rule 23(a) must be met in order for certification of a class to be proper");

*Prudential II*, 148 F.3d at 308-09.  Here, the ASM Training Plaintiffs believe that all four

elements are satisfied.

1.      **Numerosity under Rule 23(a)(1)**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  The ASM Training Plaintiffs are not required to come before the Court and

detail, to the person, the exact size of the Settlement Classes or to demonstrate that joinder of all

class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the

difficulty or inconvenience of joining all members of the class."  *Advertising Special. Nat. Ass'n*

*v. Federal Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL

PRACTICE 3423 (2d ed. 1948)).  Numerosity is indisputable here, and Defendants have identified

a total of 4,018 members of the Settlement Classes.  (*See* Lesser Decl. at ¶ 22).  Thus, in the

settlement posture in which the ASM Training Claims now stand, numerosity is met.

### 2.        Commonality under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

Commonality requirement is met if the plaintiff's grievances demonstrate "that there are

common questions of law or fact in the case."  *So. States Police Benevolent Ass'n, Inc. v. First*

*Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality

requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").

Rather than requiring that all questions of law or fact be common, Rule 23 only requires

that "the questions of law or fact common to the members of the class predominate over any

questions affecting only individual members."  FED. R. CIV. P. 23(b)(3).  ASM Training

Plaintiffs are not required to show that the claims of all members of the Settlement Classes are

identical to each other as long as there are common questions at the heart of the case.  If the

"core issues of law and fact" are common to the class, then commonality is satisfied.  *Bezdek v.*

*Vibram USA Inc.*, 2015 U.S. Dist. LEXIS 5508 at *25 (D. Mass. Jan. 16, 2015); *see also In re*

*Dehon, Inc.*, 298 B.R. 206, 214 (Bankr. D. Mass. 2003) ("despite some factual differences

between the members of the class, commonality can still exist for purposes of 23(a)(2)").

Here, the ASM Training Plaintiffs posit that commonality is met for settlement purposes

insofar as the claims of the class representatives and all members of the ASM in Training New

York State Law Settlement Classes are all predicated on the core common issue as to whether

Defendants' classification of them as exempt employees during the time they spent training for

the ASM Position in the formal ASM Training Program was proper.  *See*, *e.g.*, *McLaughlin v.*

*Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (holding commonality established

where "class members were all employed by defendant [and c]ommon questions of law include

whether [class members] were properly classified as exempt and whether the defendant acted in

bad faith in so classifying" them); *see also Kirby v. Cullinet Software, Inc.,* 116 F.R.D. 303, 306

(D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only

"illustrative" (*quoting Berenson v. Fanueil Hall*, 100 F.R.D. 468, 470 (D. Mass. 1984)).  The

ASM Training Plaintiffs contend that this is the paradigm in the settlement context where the

ASM Training Claims now stand, of a common issue sufficient to meet the 23(a)(2) standard.

### 3.    Typicality under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of

other class members.[10]  The typicality requirement is satisfied when the class members' claims

"arise[ ] from the same event or practice or course of conduct that gives rise to the claims of

other class members, and . . . are based on the same legal theory." *Garcia-Rubiera v. Calderon*,

570 F.3d 443, 460 (1st Cir. 2009) (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th

Cir. 1996); *see also Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (typicality requirement

"is satisfied when each class member's claim arises from the same course of events, and each

class member makes similar legal arguments to prove the defendant's liability").  A "finding of

typicality will generally not be precluded even if there are 'pronounced factual differences'

where there is a strong similarity of legal theories." *In re Carbon Black Antitrust Litig.*, 2005

WL 102966, *12 (D. Mass. Jan. 18, 2005) (*quoting In re Linerboard Antitrust Litig.*, 203 F.R.D.

197, 207 (E.D. Pa. 2001)); *see also Hayworth v. Blondery Robinson & Co.*, 980 F.2d 912, 923

(3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the

---

[10] The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen.Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  *See, e.g., id.*; *In re Screws Antitrust Litigation*, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litig.*, 104 F.R.D. at 429-30.

same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[11]

The ASM Training Plaintiffs assert that this requirement is also met by the ASM in Training New York State Law Settlement Classes since all of the ASM Training Plaintiffs held an ASM position, participated in a formal ASM Training Program, and were classified as exempt by a Defendant during that time (and not paid overtime as a result). ASM Training Plaintiffs Ramirez, Sciotto, Pirolo, O'Grady, Foster and Zahtila all participated in a formal ASM Training Program during their employment with one of the Defendants in New York.[12] Thus, the ASM Training Plaintiffs contend that their ASM Training Claims are "typical" with regard to the respective classes given the settlement posture in which the ASM Training Claims now stand.

Further, the ASM Training Plaintiffs believe the typicality requirement is met because the ASM Training Claims allegedly all arise from a common course of conduct by Defendants in treating all ASMs as exempt for the time they spent training for the ASM position. Thus, for the purposes of settlement, the ASM Training Plaintiffs contend that the case each member of the ASM In Training New York State Law Settlement Classes would put on would be essentially the same case (hence, commonality) and the ASM Training Plaintiffs themselves would put on that case (hence, they contend their claims are typical).

### 4.      Adequacy under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  In the

---

[11] In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) (*quoting Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986)); *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984).
[12] Four plaintiffs who will be named in the proposed Third Amended Complaint do not seek to be class representatives for the ASM Training Claims. Indeed, Plaintiffs Roberts, Dickey and Santillian do not have viable claims for time spent training for the ASM position, and Plaintiff Williams is now deceased.

First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." *Bouchard v. Sec. of Health & Human Servs.*, No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); *see also Andrews v. Bechtel Power Co.,* 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation."). These two components are designed to ensure that absentee class members' interests are fully pursued.

The ASM Training Plaintiffs contend that adequacy is easily met here in the settlement context – Plaintiffs' attorneys, proposed Class Counsel, are experienced and competent in complex litigation and have an established track record in employment law, specifically including the litigation and settlement of wage and hour cases. (*See* Lesser Decl. at ¶¶ 18-20). In turn, the class representatives of the ASM In Training New York State Law Settlement Classes contend that they have no interests antagonistic to the class and have demonstrated allegiance to the litigation of the ASM Training Claims through patience and participation in the settlement process on behalf of all of the Settlement Classes.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, the ASM Training Plaintiffs now turn to consideration of the factors which, independently, justify certification of the ASM In Training New York State Law Settlement Classes under subdivision 23(b)(3) of the rule.

**2.      The Requirements of Rule 23(b)(3) are Met in the Settlement Context**

The ASM Training Plaintiffs believe that the proposed ASM In Training New York State Law Settlement Classes also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

29

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only. *See Amchem,* 521 U.S. at 618-620. A showing of manageability of trial is not required. *Id.* The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"). Plaintiffs are not required to prove that each "elemen[t] of [their] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quotations omitted).

The First Circuit recognizes that "the need for some individualized determinations at the liability and damages stage does not defeat class certification." *In re Nexium Antitrust Litigation*, Nos. 14-1521, 14-522, 2015 U.S. App. LEXIS 968 at *24 (1st Cir. Jan. 15, 2015); *see also In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Rule 23(b)(3) does not

require that all questions of law or fact be common. *See*, *e.g.*, *Smilow*, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate").

The ASM Training Plaintiffs assert that common questions of law and fact predominate because they take the position that all of the claims of the members of the ASM In Training New York State Law Settlement Classes arise out of common corporate-wide policies defining the roles of the ASMs In Training and classifying them as exempt from the overtime requirements of federal and state laws.  As a result, it is the ASM Training Plaintiffs' contention that no ASM who has worked overtime hours has been paid any overtime compensation during the time they spent formally training for the ASM position.  Therefore, the ASM Training Plaintiffs contend that the ASM In Training New York State Law Settlement Classes present common operative facts and common questions of law which predominate over any legal or factual variations in the application of the classification and compensation policies to individual benefits throughout the state.

These common questions of law and fact include, according to the ASM Training Plaintiffs, without limitation:  (a) whether the duties performed by ASMs during the time spent formally training for the ASM position are non-exempt duties under the applicable NYLL; (b) whether Defendants' policy of classifying ASMs In Training as exempt during the time spent formally training for the ASM position is proper under the NYLL; and (c) whether Defendants have violated the NYLL by failing to pay ASMs overtime wages for the time they spent in formal training for the ASM position.  The ASM Training Plaintiffs contend that these common questions of law and fact suffice in this settlement class to present a predominance of common issues.

Superiority is likewise met in the settlement context because this settlement will resolve the ASM Training Claims – obviating the need for multiple, parallel lawsuits and given the alleged commonality of claims relating to a purported standard policy of the TJX Companies, there would be little or no interest for each class member to proceed with their own case – indeed, the proposed allocation formula treats all Settlement Class members equitably by making available potential payments based upon the length of the formal training program in their respective type of store.

Accordingly, the ASM Training Plaintiffs contend that there is no danger that individual variations, type or magnitude of damage suffered by individual members of the Settlement Classes will affect predominance, as the ASM Training Plaintiffs have alleged that they suffered the same type of damages – and seek the same type of relief – as all members of the proposed Settlement Classes.

Finally, resolution of the ASM Training Claims under New York state law is superior to the individual adjudication of Settlement Class members' claims for relief.  In particular, the Settlement offers members of the Settlement Classes with an opportunity to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that a party will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials.

Accordingly, the ASM Training Plaintiffs contend that the ASM In Training New York State Law Settlement Classes, as well as the ASM In Training FLSA Settlement Classes, are appropriate and should be preliminarily certified for settlement purposes only.

C.      **The Proposed Form of Notice Provides Adequate Notice To The Members of the Settlement Classes**

1.      **The Proposed Form of Notice Satisfies Due Process**

Notice of a class action settlement must be "reasonably calculated to reach the absent class members." *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) (*quoting Hallman v. Pennsylvania Life Ins. Co.*, 536 F. Supp. 745, 748-49 (N.D. Ala. 1982)). The Parties propose that the Claims Administrator send, by first class mail, to each member of the Settlement Classes, as defined above and in the Settlement Agreement (*see* Settlement Agreement at § VI.G.), a Notice and Release (the form of which is attached as Exhibits A and B to the Settlement Agreement) and a Claim Form (in the form as attached as Exhibit C to the Settlement Agreement). Thirty-five days after mailing an initial Settlement Notice, the Claims Administrator will mail a reminder postcard to all members of the Settlement Classes who have not yet filed a Claim Form (in the form as attached as Exhibit D to the Settlement Agreement).

The Parties have agreed in the Settlement Agreement that Notices and Claim Forms would be sent via first class U.S. Mail to the last known addresses of members of the Settlement Classes based on Defendants' records. Prior to sending notice, the Claims Administrator will attempt to confirm the accuracy of each Settlement Class member's address by utilizing the U.S. Postal Service's National Change of Address database. If a Notice is returned by the post office as undeliverable, the Claims Administrator will perform a computerized skip trace search. The Claims Administrator will then promptly re-mail the Notices to Settlement Class members for whom a Notice was returned and a new address is found.

This notice plan is consistent with class and collective certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice

33

practicable.  Indeed, Class Counsel has successfully utilized similar notice plans in other

FLSA/state law settlements, including in this Court and this Circuit.  S*ee e.g.*, *Nash v. CVS

Caremark Corp.*,  No. 09-079-M, 2011 U.S. Dist. Lexis 145053 (D.R.I. Dec. 9, 2011) (approving

similar notice plan); *Caissie v. BJ's Wholesale Club*, 08-cv-30220 (D. Mass.) (Docket no. 25);

*see also, e.g., Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436,

at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets

both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and

reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is

practicable under the circumstances'") (*quoting* FED. R. CIV. P. 23(c)(2)(B), (e)); *In re M.L. Stern

Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13,

2009) (finding similar mail procedure as applied here to be the "best notice practicable").

## 2.     The Proposed Form of Class Notice is Accurate, Informative and Easy to Understand

Under Fed. R. Civ. P. 23(e), settlement class members are entitled to notice of any

proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the

relevant due process considerations, adequate notice must be given to all absent settlement class

members and potential settlement class members to enable them to make an intelligent choice as

to whether to opt-in to an FLSA collective or opt-out of a Rule 23 state law class. *See*, *e.g.*,

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 523 (1st Cir. 1991) (stating "the

court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure

fairness for the class members" (*quoting* 3B MOORE'S FEDERAL PRACTICE ¶ 23.91 at 23-533 to

23-534)); *Prudential II*, 148 F.3d at 326-27.  Similarly, pursuant to Section 16(b) of the FLSA,

settlement class members are entitled to notice to afford them with an adequate opportunity to

opt-in to the Action.  29 U.S.C. § 216(b).

Here, the proposed form of Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the monetary relief the settlement will provide members of the Settlement Classes should they become an Authorized Claimant (as well as an explanation of the method of allocating the Revised Gross Settlement Amount to Settlement Class members and of the claims process), the procedures and deadlines for opting-in to the final ASM In Training FLSA Settlement Classes or opting-out of the final ASM In Training New York State Law Settlement Classes and submitting objections, the consequences of taking or foregoing the various options available to members of the Settlement Classes, and the date, time and place of the final approval hearing. *See* MANUAL FOURTH at § 21.312. Pursuant to FED. R. CIV. P. 23(h), the proposed form of notice also sets forth the maximum amount of attorneys' fees, expenses and costs which may be sought by Class Counsel.

Accordingly, the ASM Training Plaintiffs contend that the proposed form of Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See*, *e.g.*, 4 NEWBERG ON CLASS ACTIONS at §§ 8.21, 8.39; MANUAL FOURTH at §§ 21.311-21.312.

### D.      A Final Approval Hearing Should be Scheduled

The Court should schedule a final approval hearing to determine that final approval of the Settlement is proper.  The final approval hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement.  At that time, moreover, Class Counsel will present their final application for their fees and expenses pursuant to Rule 23(h) as well as for the proposed service payments to the ASM Training Plaintiffs.  Accordingly, the ASM Training Plaintiffs request that the Court schedule the final approval hearing for no earlier than one-hundred (100) calendar days

from the date of this motion, as required by 28 U.S.C. § 1715(d), at the United States District

Court for the District of Massachusetts, Boston Division.

**IV.    <u>Conclusion</u>**

For the foregoing reasons, the ASM Training Plaintiffs respectfully request that this

Court enter the proposed Preliminary Approval Order, attached as Exhibit 2 hereto, which, *inter*

*alia*: (1) asserts jurisdiction over the claims alleged, the Parties in this action, and the

implementation and administration of the Settlement Agreement; (2) approves notice of the

settlement set forth in the Settlement Agreement as the Settlement falls within the range of

reasonableness, and may be adjudicated fair, reasonable, and adequate within the meaning of

Fed. R. Civ. P. 23 and the Class Action Fairness Act of 2005 ("CAFA"), upon final

consideration thereof at the Final Approval Hearing; (3) authorizes the filing of Plaintiffs' Third

Amended Complaint; (4) conditionally certifies the proposed ASM In Training FLSA Settlement

Classes pursuant to Section 16(b) of the FLSA and conditionally certifying the ASM In Training

New York State Law Settlement Classes pursuant to Rule 23 of the Federal Rules of Civil

Procedure, for settlement purposes only, as described above; (5) appoints the ASM Training

Plaintiffs as Class Representatives who, together with Class Counsel (as defined in the

Settlement Agreement), shall be authorized to act on behalf of all members of the Settlement

Classes with respect to the ASM Training Claims asserted in this action and the Settlement

Agreement; (6) approves, as to form and content, the Settlement Notice, Release, Claim Form,

and Reminder Postcard, attached as Exhibits A-D to the Settlement Agreement and authorizes

the first-class mailing of Settlement Notices and Claim Forms to all members of the Settlement

Classes; (7) appoints Valli Kane & Vagnini LLP, Klafter Olsen Lesser LLP, Burr & Smith, LLP,

Fair Work P.C., Mehri & Skalet, PLLC, Hepworth, Gershbaum & Roth PLLC, DiNovo Price

Ellwanger & Hardy, LLP, and Shavitz Law Group, P.A. as Class Counsel for the Settlement

Classes pursuant to Section 216(b) of the FLSA and Federal Rule of Civil Procedure 23; (8)

approves and appoints Class Action Administration, Inc. as the third-party Claims Administrator

who will administrate this Settlement; (9) sets a sixty (60) calendar day deadline (from the date

Settlement Notices and Claim Forms are postmarked to members of the Settlement Classes) for

the execution and return of fully completed Claim Forms, requests for exclusion, or objections;

(10) approves the mailing of a Reminder Postcard thirty-five (35) days after the date the

Settlement Notices and Claim Forms are postmarked to members of the Settlement Classes who

have not filed a Claim Form as of that date;  and (11) sets the final approval hearing for a date no

earlier than one-hundred (100) calendar days after the date this motion was filed with the Court

at the U.S. District Court for the District of Massachusetts.


Dated: March 11, 2015                          Respectfully submitted,



By /s/ Fran L. Rudich                          By /s/ Loren B. Donnell
    Fran L. Rudich, BBO # 548612        Loren B. Donnell, FL Bar No. 0013429
**KLAFTER OLSEN & LESSER LLP**                 **BURR & SMITH, LLP**
Seth R. Lesser                                 Sam J. Smith
Fran L. Rudich                                 Loren B. Donnell
Two International Drive, Suite 350             111 2nd Ave. N.E., Suite 1100
Rye Brook, NY 10573                            St. Petersburg, FL  33701
Telephone: (914) 934-9200                      Telephone: (813) 253-2010


**HEPWORTH, GERSHBAUM**                         **VALLI KANE & VAGNINI LLP**
**& ROTH, PLLC**                                Sara Wyn Kane
Marc S. Hepworth                               James A. Vagnini
Charles Gershbaum                              Robert J. Valli, Jr.
David A. Roth                                  600 Old Country Road, Suite 519
Mathew A. Parker                               Garden City, NY 11530
192 Lexington Avenue, Suite 802                Telephone: (516) 203-7180
New York, NY 10016
Telephone: (212) 545-1199

**MEHRI & SKALET, PLLC**
Cyrus Mehri
Michael D. Lieder
Ellen L. Eardley
Mehri & Skalet, PLLC
1250 Connecticut Ave., NW, Suite 300
Washington, DC  20036
Telephone: (202) 822-5100

**DINOVO PRICE ELLWANGER & HARDY LLP**
Jay D. Ellwanger
William M. Parrish
Adam G. Price
7000 North MoPac Expressway, Suite 350
Austin, TX  78731
Telephone: (512) 539-2626

**SHAVITZ LAW GROUP PA**
Gregg Shavitz
Camar Jones
1515 S Federal Hwy., Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888

**FAIR WORK, P.C.**
Hillary Schwab
450 4th Floor
192 South St.
Boston, MA  02111
Telephone: (617) 607-3260

## <u>CERTIFICATE OF SERVICE</u>

I, Loren B. Donnell, hereby certify that on this 11th day of March 2015, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and that I am not aware of any party to this action that is not a registered participant.

/s/ Loren B. Donnell

Loren B. Donnell