# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------X

CELINA ROBERTS, ANTHONY SCIOTTO,
ERIC BURNS, KERI DICKEY, ANGELA
RAMIREZ, DIANA SANTILLAN, CAMILLE
GHANEM, ARNOLD WILLIAMS,
OLUWATOSIN BABALOLA, TOMMY
ZAHTILA, TODD JUSTICE, GIANFRANCO
PIROLO, MICHAEL O'GRADY, AND JASON
FOSTER, individually, and on behalf of other
persons similarly situated,

          **LEAVE TO FILE EXCESS PAGES
GRANTED ON AUGUST 3, 2015**

          Plaintiffs

          CIVIL ACTION NO. 1:13-CV-13142

v.

THE TJX COMPANIES, INC., a Delaware
Corporation; MARSHALLS OF MA, INC.,
a Massachusetts Corporation; MARMAXX
OPERATING CORP., a Delaware Corporation,
d/b/a MARSHALLS HOMEGOODS, d/b/a
MARSHALLS, d/b/a T.J. MAXX HOMEGOODS;
HOMEGOODS, INC., a Delaware Corporation;

          Defendant.

----------------------------------------------------------------X

## PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF
## THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF
## <u>CLASS AND COLLECTIVE ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

Introduction… ............................................................................................................1

I.      Procedural History ..........................................................................................4

II.     Summary of the Terms of the Settlement, the Settlement Notice, and the Reaction of Members of the Settlement Classes. ..............................................................7

III.    Legal Argument ...........................................................................................11

        A.      Legal Standards for Final Approval of Class Action Settlements ..................11

        B.      Consideration of the Relevant Factors for Settlement Approval ...................14

                1.      Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1) ......................................................................14

                2.      Class Reaction Has Been Positive (*Grinnel* Factor 2). ...........15

                3.      The Stage of the Proceedings and the Amount of Discovery Completed Support Final Approval (*Grinnel* Factor 3) ..........................16

                4.      Plaintiffs Would Face Real Risks In Seeking To Establish Liability and Damages if the Wage-Hour Lawsuits Were to Proceed (*Grinnel* Factors 4 and 5). ....................................................................18

                5.      Obtaining Class or Collective Certification and Maintaining That Certification Through Trial May Be Difficult (*Grinnell* Factor 6) ......21

                6.      The Settlement Amount Is Reasonable, Even in Light of the Best Possible Recovery, Given the Risks of Litigation (*Grinnell* Factors 7, 8  and 9). ...........................................................................22

IV.     The Settlement Is the Result of Arms-Length Negotiations Between Experienced Counsel. ...................................................................................................25

        A.      Class Counsel's Request for An Award of Attorneys' Fees, Costs and Expenses Should Be Approved ..................................................................27

                1.      Size of Settlement/Number of Persons Benefitted ................31

                2.      Skill, Experience and Efficiency of the Attorneys ................32

                3.      Complexity and Duration of Litigation ...............................33

                4.      Litigation Risks ............................................................34

i

        **5.**       **Amount of Counsel Time**.............................................................................34

        **6.**       **Awards in Similar Cases** ...........................................................................35

        **7.**       **Public Policy Considerations** ...................................................................35

    **B.**     **Service Awards to Settlement Class Representatives Should Be Approved.** .37

**Conclusion....** .................................................................................................................................39

**CERTIFICATE OF SERVICE** ..................................................................................................41

# TABLE OF AUTHORITIES

## Cases

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945) .......................................................... 35

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997) ........................................ 12

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), *rev'd on other grounds*, 450 U.S. 728 (1981) ................................................................ 33

*Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa. Apr. 21, 2013).................... 19

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................ 28, 30

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................ 28

*Braun v. Wal-Mart, Inc.*, No. 19-CO-01-9790, 2009 Minn. Dist. LEXIS 332 (Minn. Dist. Ct. June 1, 2009) ................................................................ 31

*Brewer v. BP P.L.C. et al.*, Case 2:11-cv-00401-JCW (E.D. La. June 11, 2012)........................ 32

*Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ................................................................ 24

*Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999) ............................... 13, 15, 38

*Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990)................................................................ 24

*Caissie v. BJ's Wholesale Club,* No. 08-30220-MAP (D. Mass. June 24, 2010)....... 26, 31, 37, 38

*Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ............................ 28

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ........................................................ 13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................... passim

*City P'ship Co. v. Atl. Acquisition P'ship.,* 100 F.3d 1041 (1st Cir. 1996) ........................... 12, 25

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992). ................................... 23

*Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008)........................................... 20

*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998)................................ 37

*Connolly v. Weight Watchers N. Am. Inc.*, Case No. 14-cv-01983-TEH,
  2014 U.S. Dist. LEXIS 102088 (N.D. Cal. July 21, 2014) ...................................................... 39

*Craig v. Rite Aid Corp.,* No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658
  (M.D. Pa. Jan. 7, 2013) ........................................................................................ 20, 21, 32, 39

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ............................................ 32

*Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L (S.D.N.Y. Oct. 11, 2011) ................. 31, 37

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) ............................................. 37

*Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011) ....................... 20

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968) .............................................................. 35

*Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234 (D. Mass. 2004) ...................................... 20

*Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01-11029-REK (D. Mass) .................................... 31

*Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1 (1st Cir. 1999) .................................. 12

*Durrett v. Housing Auth. of Providence,* 896 F.2d 600 (1st Cir. 1990) ...................................... 12

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) ............................ 11, 18, 23, 38

*Furtado v Bishop*, 635 F.2d 915 (1st Cir. 1980) ....................................................................... 30

*Gilliam v. Addicts Rehab. Ctr. Fund,* 05-civ-3452 (RLE), 2008 U.S. Dist. LEXIS 23016
  (S.D.N.Y. Mar. 24, 2008) .................................................................................................. 11

*Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. 34 (D.P.R. 1993) ....................... 16

*Greenspun v. Bogan,* 492 F.2d 375 (1st Cir. 1974) .................................................................. 15

*Guippone v. BH S&B Holdings, LLC*, No. 09-civ-01029 (CM), 2011 U.S.
  Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ..................................................................... 38

*Hale v. Wal-Mart Stores, Inc.,* No. 01-CV-218710, 2009 WL 2206963
  (Mo. Cir. Ct. May 15, 2009) ............................................................................................... 31

*Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) ......... 19

*Hernandez v. The Fresh Diet*, 12-cv-4339 (ALC)(JLC), 2014 U.S. Dist.
  LEXIS 139069 (S.D.N.Y. Sept. 26, 2014) ............................................................................ 22

*In re Cendant Corp.,* 232 F. Supp. 2d 327 (D.N.J. 2002) ............................................................. 37

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197
(D. Me. 2003) ...................................................................................................................... 14, 37

*In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99 (D.R.I. 1996) .................................. 12, 13, 14, 28

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768
(3d Cir. 1995) .............................................................................................................................. 12

*In re Lupron(R) Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 93 (D. Mass. 2005) .......... passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions,* 148 F.3d 283
(3d Cir. 1998) ........................................................................................................................ 11, 12

*In re Relafen Antitrust Litig.,* 231 F.R.D. 52 (D. Mass. 2005) ............................................. passim

*In re RJR Nabisco Inc. Sec. Litig.,* M.D.L. Docket No. 818 (MBM), U.S. Dist. LEXIS
12702 (S.D.N.Y. Aug. 24, 1992) .............................................................................................. 35

*In re StockerYale, Inc. Secs. Litig.,* No. 1:05cv00177, 2007 U.S. Dist. LEXIS 94004
(D.N.H. Dec. 18, 2007) ............................................................................................................. 30

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907
(N.D. Ohio 2003) ....................................................................................................................... 37

*In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ......................................... 34

*In re Thirteen Appeals of Arising out of the San Juan Dupont Plaza Hotel Fire Litig.,*
56 F.3d 295 (1st Cir. 1995) .................................................................................................. 28, 31

*In re Tyco Int'l, Ltd. Multidistrict Litig.,* 535 F. Supp. 2d 249 (D.N.H. 2007) ................. 12, 14, 28

*In re Viatron Computer Sys. Corp. Litig.,* 614 F.2d 11 (1st Cir. 1980) ...................................... 12

*In re Volkswagen & Audi Warranty Extension Litig.,* 784 F. Supp. 2d 35
(D. Mass 2011), *rev'd on other grounds,* 692 F.3d 4 (1st Cir. 2012) ................................. 28, 37

*In re Washington Pub. Power Supply Sys. Sec. Litig.,* 720 F. Supp. 1379 (D. Ariz. 1989), ........ 23

*Indergit v. Rite Aid,* 293 F.R.D. 632 (S.D.N.Y. 2013) ................................................................. 33

*J.I. Case Co. v. Borak,* 377 U.S. 426 (1964) .............................................................................. 36

*Johnson v. Big Lots Stores, Inc.,* 561 F. Supp. 2d 567 (E.D. La. 2008) ...................................... 22

*Kane v. Gage  Merchandising Services, et al.*, C.A. No. 00-40185-NMG
(D. Mass. June 28, 2002) ................................................................ 31

*Kudo v. Panda Express*, 7:09-cv-00712, Dkt. 308 (S.D.N.Y. June 26, 2015)............................ 33

*Lerma v. Wal-Mart,* No. CJ-2001-1395 (Dist. Ct. of Cleveland Cty., Okl. Mar. 16, 2001)......... 31

*Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ (D. Mass. Oct. 19, 2002) ........................... 31

*M. Berendon Co. v. Faneuil Hall Marketplace Inc.*, 671 F. Supp. 819 (D. Mass. 1987). ............ 16

*Macone v. Pongratz*, C.A. No. 07-11360-PBS (D. Mass. Sept. 16, 2008)................................... 31

*Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002). ........................ 33, 34

*Mazola v. May Dept. Stores Co.*, 1:97cv10872, 1999 WL 1261312
(D. Mass. Jan. 27, 1999) ................................................................ 30

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) ............................................. 19, 25

*McLaughlin v. Liberty Mutual Ins. Co.,* C.A. No. 01-11029-REK, (D. Mass.
Dec. 21, 2005)................................................................................. 31

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008)...................................... 34

*Mutuc v. Huntington Mem'l Hosp.,* Nos. BC288727, BC364972 (Cal. Sup. Ct.
Dec. 23, 2008)................................................................................. 31

*Nash v. CVS Caremark Corp.*, No. 09-cv-079-M (D.R.I. April 9, 2012).................................... 26

*New Eng. Carpenters Health Benefits Fund v. 1st Databank, Inc.*, No. 05-11148,
2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) ......................................... 37

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277
(D. Mass. 2009)................................................................................. 13

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ................................... 37

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)............................................................................ 22

*Officers For Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982).............................. 22, 23

*Overka v. American Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010)............................................ 32

*Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 41886
    (S.D.N.Y. Mar. 12, 2012) ................................................................................... 33

*Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 707 (D. Mass. 1987)......... 30

*Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967,
    Docket No. 578 (D. Conn. Oct. 24, 2011)................................................................. 19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................. 36

*Prasker v. Asia Five Eight LLC*, Case No. 08-Civ-5811 (MGC), 2010 U.S. Dist.
    LEXIS 1445 (S.D.N.Y. Jan. 4, 2010). .................................................................... 36

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004) ....................................... 10

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010).... 36

*Sewell v. Bovis Lend Lease LMB, Inc.*, 09Civ6548 (RLE), 2012 U.S. Dist. LEXIS
    53556 (S.D.N.Y. April 16, 2012)........................................................................... 39

*Seymour v. PPG Indus., Inc.*, 891 F. Supp. 2d 721 (W.D. Pa. 2012) .......................................... 20

*Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234 (2d Cir. 2011) ...................... 39

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0437, 2002 U.S. Dist.
    LEXIS 16314 (S.D.N.Y. Aug. 1, 2002).................................................................. 37

*Snodgrass v. Bob Evans Farms, LLC*, Case No. 2:12cv768, 2015 U.S. Dist.
    LEXIS 33621 (S.D. Ohio March 18, 2015) ............................................................ 20

*Sonoda v. Amerisave*, No. 11-1803 EMC (N.D. Cal. 2013) .......................................................... 32

*Stevens v. HMS Host Corp.*, 10CV3571 (ILG)(VVP), 2014 U.S. Dist. LEXIS 119653
    (E.D.N.Y. Aug. 26, 2014) ..................................................................................... 22

*Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247
    (D.N.J. May 15, 2009) .......................................................................................... 19

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01-CV-11814, 2004 U.S. Dist.
    LEXIS 8608 (S.D.N.Y. May 14, 2004). ................................................................. 23

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................... 10

*Tracy v. NVR, Inc.*, 293 F.R.D. 395 (W.D.N.Y. 2013)................................................................... 22

*Trombley v. Bank of America Corp.*, No. 08-cv-456-JD, 2011 U.S. Dist.
   LEXIS 83777 (D.R.I. July 28, 2011) .................................................................. 10

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n,*
   *Local 307* v. *G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495 (6th Cir. 1984) .............. 36

*Urnikis-Negro v. Am. Family Prosperity Servs.*, 616 F.3d 665 (7th Cir. 2010) ......................... 20

*Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999)....................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................ 29

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ............................................ 23, 25

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)...................................................... 11

**Statutes**

29 U.S.C. § 216(b) ....................................................................................... 11, 25

New York Labor Law, §§ 650, *et seq.* .................................................................. passim

**Other Authorities**

American Law Institute, *Principles of the Law of Aggregate Litigation* (2010) ......................... 30

DOL Wage and Hour Opinion Letter FLSA2009-3 (Jan. 14, 2009) ............................................ 20

*Moore's Federal Practice* (3d ed. 1997) ................................................................ 26

**Rules**

Fed. R. Civ. P. 23.......................................................................................... 22

Fed. R. Civ. P. 54.......................................................................................... 27

**Introduction**

Plaintiffs Anthony Sciotto, Angela Ramirez, Arnold Williams,[1] Camille Ghanem,

Oluwatosin Babalola, Eric Burns, Tommy Zahtila, Gianfranco Pirolo, Michael O'Grady, Jason

Foster, and Todd Justice (together "ASM Training Plaintiffs"),  by and through their counsel,

hereby move the Court for final approval of the proposed class and collective action settlement

("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement")

earlier submitted to the Court in connection with the ASM Training Plaintiffs' motion for

preliminary approval of the same proposed Settlement.  ASM Training Plaintiffs thus submit this

memorandum in support of their Unopposed Motion for Final Approval of Class and Collective

Action Settlement and respectfully request that the Court fully and finally approve the terms of

the Settlement Agreement between the ASM Training Plaintiffs and Defendants The TJX

Companies, Inc., Marshalls of MA, Inc., Marmaxx Operating Corp. and HomeGoods, Inc.

("Defendants").

The preliminarily-approved Settlement was reached after extensive pre-suit investigation,

the exchange of copious documents and information between the parties, and several months of

arms-length and good faith negotiations between counsel on both sides with the assistance of an

experienced, well-regarded mediator (who, like Class Counsel, are extremely experienced in the

class and collective litigation and settlement of FLSA/state law misclassification claims).  The

ASM Training Plaintiffs and Class Counsel believe that the Settlement provides a fair,

reasonable and adequate recovery to those who participated in the formal Assistant Store

Manager Training Program  and who timely submitted a Claim Form to obtain a settlement

payment, and who have potential disputed claims challenging Defendants' classification of them

---

[1] Plaintiff Arnold Williams passed away during the period when the Parties were negotiating the terms of the Settlement.

as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), or New York Labor Law, §§ 650, *et seq.* ("NYLL").  Indeed, Class Counsel submit that the Settlement more than satisfies the fair, reasonable and adequate recovery standard.

The reaction of members of the Settlement Classes[2] further speaks to its fairness, reasonableness and adequacy.  Not a single member of the ASM in Training New York State Law Settlement Classes objected to any part of the Settlement and a mere three members of those Settlement Classes elected to opt out.  *See* Declaration of Matthew J. McDermott – Claims Administrator (" McDermott Decl."), attached as Exhibit 2 to the Declaration of Seth R. Lesser ("Lesser Final Approval Decl."), at ¶ 10.  The Claim Form informed each member of the Settlement Classes of the potential individualized amount that he or she was eligible to receive should the Court finally approve the Settlement, as well as the amount of fees, costs and expenses sought by Class Counsel, and the amount of Service Payments sought by Class Counsel on behalf of the individual ASM Training Plaintiffs.  *See* Exhibit A to McDermott Decl. (Claim Form template sent to members of the Settlement Classes).

The ASM Training Plaintiffs and Class Counsel believe that the Maximum Gross Settlement Amount of $4,750,000 will provide a fair and reasonable recovery to certain persons currently and formerly employed as an Assistant Store Manager ("ASM") at a Marshalls, T.J. Maxx, or HomeGoods store (excluding California), who participated in the formal Assistant

---

[2] The HomeGoods ASM In Training FLSA Settlement Class, Marshalls ASM In Training FLSA Settlement Class, and T.J. Maxx  ASM In Training FLSA Settlement Class, each of which were described in the memorandum in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement ("Preliminary Approval Motion") (Dkt. No. 82 at pp. 7-8), are collectively referred to herein as the "ASM In Training FLSA Settlement Classes".  The HomeGoods ASM In Training New York State Law Settlement Class, Marshalls ASM In Training New York State Law Settlement Class, and T.J. Maxx ASM In Training New York State Law Settlement Class are collectively referred to herein as the "ASM In Training New York State Law Settlement Classes".  "ASM In Training FLSA Settlement Classes".  Each of the aforementioned settlement classes are collectively referred to herein as the "Settlement Classes".

Store Manager Training Program with Marshalls, T.J. Maxx, or HomeGoods during the periods of time applicable to the Settlement, who allege claims challenging Defendants' classification of them as exempt from receiving overtime compensation under the FLSA or NYLL for the time that they participated in the formal Assistant Store Manager Training Programs ("ASM Training Claims"), and who timely submitted a Claim Form to obtain a settlement payment and became "Authorized Claimants" warranting approval of the entirety of the Settlement and all relief requested herein.[3]

Plaintiffs thus respectfully request that the Court enter an order: (i) granting Final Judgment on the Released Claims; (ii) giving final approval to the Settlement Agreement because it falls within the range of reasonableness, and in the best interests of the ASM Training Plaintiffs, those individuals who filed a consent to opt-in to this action prior to the entry of a Preliminary Approval Order, and members of the Settlement Classes, and directing consummation of its terms and provisions; (iii) approving Class Counsel's application for an award of Class Counsel's fees, costs, and expenses; (iv) approving ASM Training Plaintiffs' request for Service Payments; (v) certifying the Settlement Classes for purposes of settlement only; (vi) dismissing the Released Claims from the Litigation on the merits and with prejudice and permanently enjoining all members of the Final Settlement Classes from prosecuting against

---

[3] As noted in Plaintiffs' Preliminary Approval Motion, though Defendants would, in the course of litigation, vigorously oppose the merits of the ASM Training Plaintiffs' claims and oppose the certification of any collective under Section 216(b) of the FLSA or the certification of any class under Federal Rule of Civil Procedure 23, they do not oppose the instant motion for final approval of the Settlement or the certification of the Settlement Classes for settlement purposes only. To the extent that the Court does not grant final approval of the Settlement, Defendants reserve the right to raise any argument with respect to the merits of the ASM Training Plaintiffs' claims or the appropriateness of the certification of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the ASM Training Plaintiffs in this memorandum. In addition, regardless of whether this Court approves the Settlement of the ASM Training Claims, Defendants' non-opposition to this Motion for approval shall not act to preclude Defendants from opposing both the merits, and the propriety of collective or class certification, of the ASM Misclassification Claims asserted in this action. Indeed, Defendants oppose Plaintiffs' recently filed Motion for Conditional Certification on the ASM Misclassification Claims (Dkt. Nos. 124-125) and will file their opposition to that motion in accordance with the schedule set forth by the Court.

Defendants and the Released Persons any Released Claims; and (vii) asserting and retaining

jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and

administration of this Settlement Agreement.

I.      **Procedural History**[4]

        This case stems from three separate actions (*Roberts*, *Burns* and *Ghanem*) filed between

December 2013 and May 2014 alleging either that Defendants: (1) misclassified ASMs at

Marshalls or HomeGoods stores (excluding California) as exempt from the overtime

requirements of the FLSA and the NYLL and failed to pay them overtime at a rate of 1.5 times

the hourly rate for all hours worked over 40 in a workweek, or (2) misclassified ASMs at

Marshalls, HomeGoods or T.J. Maxx stores (excluding California) as exempt from the overtime

requirements of the FLSA and/or the NYLL and failed to pay them overtime at a rate of 1.5

times the hourly rate for all hours worked over 40 in a workweek during the time they that they

participated in a formal ASM Training Program.  In each action, a group of ASMs brought

individual and class/collective claims against Defendants under the FLSA and the NYLL.

Plaintiffs alleged that the parent corporation, The TJX Companies, Inc. ("TJX"), controlled the

wage and hour policies of its brand-name stores, including Marshalls, HomeGoods, and/or T.J.

Maxx, as well as Marshalls/HomeGoods Superstores and T.J. Maxx/HomeGoods Superstores.

Defendants deny such allegations and contended that they complied with the FLSA and the

NYLL at all times, properly classified ASMs as exempt, both during their time participating in a

formal ASM Training Program and after, and that neither class nor collective certification of any

class or collective alleged in this action is appropriate.

---

[4] Plaintiffs previously set forth the procedural history of this case at pages 3-6 and 13-17 of their Preliminary
Approval Motion (Dkt. No. 82).  Relevant portions of that discussion are repeated here.

The Second Amended Complaint, which effectively consolidated the *Roberts*, *Burns* and *Ghanem* actions into a single matter, was filed August 8, 2014.  In the Second Amended Complaint, Plaintiffs asserted violations of the FLSA on behalf of themselves and other individuals who had been employed by Defendants as a Marshalls or HomeGoods ASM (excluding California), and asserted violations of the NYLL on behalf of themselves and other individuals who had been employed by Defendants as a Marshalls ASM in New York, and alleged that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40, including during the time they spent training for the ASM position (*See* Dkt. No. 60, August 8, 2014, Case No. 1:13-cv-13142).  Upon consolidation, the *Burns* and *Ghanem* actions were dismissed.

In the months after filing the Second Amended Complaint, the Parties explored settlement of the ASM Training Claims.  The settlement discussions did not address the ASM Misclassification claims.  On or about October 28, 2014, the Parties entered into a Confidential Mediation Agreement to facilitate negotiation of the ASM Training Claims.  Pursuant to the Confidential Mediation Agreement, the Parties exchanged detailed information and numerous documents and conducted detailed legal and factual analyses of the alleged ASM Training Claims and Defendants' defenses to those claims.  Both sides conducted their own analysis regarding the: (1) potential liability if the ASM Training Claims were to proceed; (2) relative strengths and weaknesses of the legal merits of their respective positions; and (3) risks associated with each side's respective positions.   In preparation for mediation, and in the course of this litigation, Class Counsel conducted a significant factual investigation into the ASM Training Claims, including conducting research into the ASM Training Claims and analysis of the actual duties and responsibilities of the ASM employees during the time they spent training for the

5

ASM position, and the manner in which Defendants compensated ASM employees during that time.  Class Counsel interviewed numerous Plaintiffs to determine their actual job duties and responsibilities during the time they spent training for the ASM position, and reviewed Defendants' detailed policies and procedures regarding formal Assistant Store Manager Training Programs.  Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the ASM Training Claims asserted and the potential defenses thereto.

On November 10, 2014, the Parties engaged in an all-day mediation session under the direction of Hunter R. Hughes, Esq., an experienced class and collective action mediator who has mediated numerous similar complex wage and hour cases with hybrid allegations pursuant to both state and federal law.  In preparation for the mediation, and during the mediation, the Parties presented detailed analyses of the ASM Training Claims, the likelihood of their success, and Defendants' defenses to those claims.  Matters addressed at mediation included the size and scope of the ASM Training Claims, the likelihood of success on the merits on those claims, the manner in which potential damages associated with those claims could be calculated and obtained, the likelihood of trial on a class basis and what would occur at trial on those claims. The Parties were unable to settle the ASM Training Claims at this mediation, but continued negotiations through the mediator.  Between November 10, 2014 and January 29, 2015, the Parties exchanged numerous proposed ideas and drafts of language addressing the settlement of the ASM Training Claims, including a summary of certain terms of the Settlement.  The Parties also held numerous conferences with the mediator.  The Parties agreed upon a summary of certain terms of the Settlement on January 31, 2015, and subsequently began negotiating the details of the Settlement Agreement itself between January 31, 2015 and March 11, 2015.  The

Settlement Agreement was fully executed on March 11, 2015 and submitted to the Court the

same day in connection with Plaintiffs' Preliminary Approval Motion.  Dkt. No. 82-1.[5]  On May

6, 2015, the Court granted preliminary approval of the Settlement and set a Final Approval

Hearing for August 13, 2015.

II.     **Summary of the Terms of the Settlement, the Settlement Notice, and the Reaction of Members of the Settlement Classes.**

As set forth in the Preliminary Approval Order (Dkt. No. 82), the Settlement Agreement

provides that, if approved, Defendants will pay $4,750,000 into a qualified settlement fund

("QSF") to resolve the ASM Training Claims in their entirety as detailed in the Settlement

Agreement and as set forth in the Third Amended Complaint.  *See* Settlement Agreement at §

VI(T) (Dkt. No. 82-1).  The QSF is being administered by Class Action Administration, Inc.

("CAA"), an independent and experienced third-party settlement administrator.  The Maximum

Gross Settlement Amount (hereinafter referred to as "Settlement Amount") represents the

maximum amount that Defendants would pay pursuant to the Settlement Agreement if every

member of the Settlement Classes had participated in the Settlement, inclusive of the settlement

payments, Class Counsel's requested attorneys' fees, expenses and costs, requested service

payments to each of the ASM Training Plaintiffs, the costs of notice and claims administration,

and Authorized Claimants' IRS Form W-2 taxes and withholdings.  (*Id.* at §§ II, p. 14).   The

only amount to be paid by Defendants outside of the Settlement Amount shall be the employer-

paid payroll taxes, including FUTA and the employer's share of FICA and state unemployment,

as required by law with respect to settlement payments to Authorized Claimants.  (*Id*. at §V, p.

26).  Finally, any portion of the Settlement Amount that is not distributed to the Authorized

Claimants as settlement payments or pursuant to Class Counsel's fees, costs and expenses,

---

[5] On April 16, 2015, Plaintiffs submitted a notice filing supplemental information in response to the Court's inquiries during the status conference held on March 26, 2015.  (Dkt. No. 101).

service payments, and settlement expenses (costs of notice and claims administration) shall be remitted to Defendants, as will any interest accrued on the Settlement Amount while in the qualified settlement fund, under the terms of the Settlement Agreement. *Id.*  As set forth in Plaintiff's Preliminary Approval Motion, and as preliminarily approved by the Court, the Settlement is a hybrid FLSA collective action and Rule 23 state law class action settlement, which encompasses differing statutes of limitations based upon various laws.[6]

Pursuant to this Court's Preliminary Approval Order, each member of the Settlement Classes was sent, by first-class U.S. mail, a Settlement Notice in the form approved by the Court, along with an individualized Claim Form (also in the form approved by the Court), that set forth the material settlement terms; instructions on how members of the ASM In Training FLSA Settlement Classes may participate in the Settlement; instructions on how members of the ASM In Training New York State Law Settlement Classes may exclude themselves from, or submit objections to, the Settlement; and when and where to appear at the final approval hearing, among other important information, including the number of Training Weeks attributable to the Settlement Class members and the estimated amount of the potential settlement payment he or she would receive if he or she became an Authorized Claimant based on the application of the allocation formula set forth in the Settlement Agreement (assuming final approval).  *See* McDermott Decl. at ¶ 5; Ex. A.  Prior to sending the Settlement Notices and Claim Forms, CAA reviewed the list of members of the Settlement Classes provided by Defendants pursuant to the Settlement Agreement and updated mailing addresses using National Change of Address (NCOA) database and credit reporting ("skip-trace") databases.   McDermott Decl. at ¶ 2.  After

---

[6] In its Preliminary Approval Order, the Court preliminarily approved six Settlement Classes.  In accordance with the Settlement Agreement, the Revised Gross Settlement Amount shall be allocated among members of these Settlement Classes who become Authorized Claimants as set forth in Section II of the Settlement Agreement and as described at page 10 of the Preliminary Approval Motion.

CAA performed those address updates, each of the 4,018 members of the Settlement Classes had a complete mailing address. *Id.*

On May 26, 2015, Settlement Notices were sent by CAA to each of the 4,018 members of the Settlement Classes. McDermott Decl. at ¶ 5. On June 30, 2015, CAA sent a reminder postcard (in the form preliminary approved by the Court) to the 3,221 members of the Settlement Classes who had neither timely filed a fully completed Claim Form not opted-out of the Settlement. *Id.* at ¶ 7. In addition, CAA established and maintained a Settlement-specific website (which has had 1,485 page views between May 26, 2015 and August 4, 2015) to allow members of the Settlement Classes to learn information about the proposed Settlement, and a Settlement-specific toll-free telephone number for members of the Settlement Classes to call to learn information about the proposed Settlement from live CAA associates, including support for Spanish-speaking callers. Between its establishment and August 4, 2015, the toll-free number received 333 calls. *Id.* at ¶ 8.

As of July 25, 2015, the date by which all fully completed Claim Forms were required to have been received by CAA in order for a member of the Settlement Classes to become an Authorized Claimant, 1,536 Claim Forms had been fully and timely received by CAA.[7] McDermott Decl. at ¶ 12. During the 60-day period for members of the Settlement Classes to respond to the Settlement Notice, only 150 mailed Settlement Notices were returned to CAA as undeliverable. *Id.* at ¶ 6. CAA re-mailed eight (8) such Settlement Notices to forwarding addresses provided by the United States Postal Service, six (6) of which were not returned a second time as undeliverable. *Id.* In addition, CAA re-mailed one hundred forty-two (142) such Settlement Notices using updated address information found via skip-trace research, ninety-four

---

[7] Twenty-three (23) Claim Forms were fully completed but were received after the July 25, 2015 deadline. After receiving input from Counsel for the Defendants and Counsel for the ASM Training Plaintiffs, CAA approved these claims. McDermott Decl. at ¶ 12.

(94) of which were not returned a second time as undeliverable.  *Id.*  Therefore, as of July 25,

2015, a total of only 50 members of the Settlement Classes had all mailed Settlement Notice

attempts returned as undeliverable.  *Id.*

In addition, as of July 25, 2015, also the date by which all requests for exclusion or

objections were required to have been received by CAA from members of the ASM in Training

New York State Law Settlement Classes in order to be effective, only nine (9) individuals timely

mailed requests for exclusion from the Settlement.  McDermott Decl. at ¶ 10.   Of those nine (9)

individuals, three (3) were members of the ASM in Training New York State Law Settlement

Classes and six (6) were members of the ASM in Training FLSA Settlement Classes who

mistakenly made requests for exclusion (as opposed to simply not filing a Claim Form to

participate).  *Id.*  Thus, only three (3) members of the ASM in Training New York State Law

Settlement Classes timely requested to exclude themselves from the Settlement.  *Id.*  In addition,

as of August 4, 2015, CAA did not receive any objections to the Settlement from members of the

ASM in Training New York State Law Settlement Classes and is not aware of any such

objections having been filed with the Court.  *Id.* at 11.  Similarly, Class Counsel is not aware of

any objections to the Settlement filed or made by members of the ASM in Training New York

State Law Settlement Classes.  Lesser Final Approval Decl. at ¶ 11. Class Counsel submits that

there is no doubt that the Settlement Notice program set forth in the Settlement Agreement,

ordered in the Court's  Preliminary Approval Order, and carried out by CAA, complied with Fed.

R. Civ. P. 23 and due process.[8]

---

[8] *See Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56-57 (1st Cir. 2004) (mailing to all known class members found to comport with the requirements of due process); *Trombley v. Bank of America Corp.*, Civil No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777, at *19 (D.R.I. July 28, 2011) (approving mailed notice to reasonably identifiable class members); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing, met requirements of Rule 23 and due process).

III.    **Legal Argument**

Class Counsel represent that the Settlement is fair, reasonable, and adequate.  Lesser Final Approval Decl. at ¶ 4.  In fact, Class Counsel believe that the Settlement is a good result given all considerations.  *Id.* at ¶¶ 4-9; *see* pages 14-15, below.  At a minimum, Class Counsel and the ASM Training Plaintiffs submit that the proposed Settlement is in the best interests of the members of the Settlement Classes in light of all known facts and circumstances, including the risks and delays of litigation that are presented by Defendants' defenses to the ASM Training Claims and potential pre-trial and appellate issues Defendants may assert.  *Id.* at ¶ 4.  The expeditious resolution of the ASM Training Claims, when considered against another year or more of discovery, the uncertainty of the outcomes of motions for conditional certification of FLSA collectives and class certification of Rule 23 classes on the ASM Training Claims, including possible motions for decertification of (any) conditionally certified FLSA collective or class action on such claims, pretrial proceedings and a potential trial, and the costs attendant upon such activities – most certainly makes Class Counsel believe that the Settlement inures to the benefit of members of the Settlement Classes.  *Id.*[9]

A.    **Legal Standards for Final Approval of Class Action Settlements**[10]

It is well-established that "compromises of disputed claims are favored by the courts."

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. of Am. Sales*

_____

[9]  In addition, the Settlement is supported by the ASM Training Plaintiffs, each of whom consented to be named Plaintiffs in the Third Amended Complaint.  *Id.*

[10] The Settlement settles all wage and hour claims brought by the ASM Trainee Plaintiffs, both under NYLL and the FLSA.  The ASM Training Claims asserted under the FLSA are brought as a putative "collective action," in which putative FLSA collective members must affirmatively "opt-in" to the litigation.  29 U.S.C. § 216(b).  The ASM Training Claims asserted under the NYLL, on the other hand, are brought as a putative "opt-out" class action under the general class action provisions of Rule 23.  When considering final approval of "hybrid" collective actions of state wage and hour class claims under state law and federal FLSA collective action claims, courts have looked at the fairness, adequacy, and reasonableness of the settlement for both statutory frameworks by examining the *Grinnell* factors.  *See, e.g., Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005)*; Gilliam v. Addicts Rehab. Ctr. Fund,* 05-civ-3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *8 (S.D.N.Y. Mar. 24, 2008).

*Practices Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) ("*Prudential II*").  Settlement spares the litigants of the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Accordingly, courts in the First Circuit consistently favor the settlement of disputed claims.  *Durrett v. Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp. Litig.,* 614 F.2d 11, 15 (1st Cir. 1980); *see also* Local Rule 16.4(A) (providing that "[t]he judicial officer shall encourage the resolution of disputes by settlement….").

In the context of putative or certified class actions subject to Federal Rule of Civil Procedure 23, Rule 23(e) mandates that settlements must receive court approval.  *See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d at 316.  "'Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims.'"  *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005) (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995).  The discretion accorded the court however "is circumscribed by the long-recognized policy of encouraging settlements."  *Durrett,* 896 F.2d at 604; *see also In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 105 (D.R.I. 1996).  Thus, "[a]lthough the district court must carefully scrutinize the settlement, there is a presumption in favor of the settlement if the parties negotiated it at arms-length after conducting meaningful discovery." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) (citing *City P'ship Co. v. Atl. Acquisition P'ship.,* 100 F.3d 1041, 1043 (1st Cir. 1996)).  In deciding whether to approve the settlement of a class action, the Court must find that the settlement is fair, reasonable and adequate.  *Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 7 (1st Cir. 1999).

12

To evaluate the fairness of a settlement, the Court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). The Court should not, therefore, turn the hearing into a trial and reach any conclusions on the issues of fact and law that underlay the merits of the dispute. *See In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. at 106 ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute."). An evidentiary hearing or full-blown trial would defeat the very purpose of a settlement – avoiding a sharply contested trial and unnecessary litigation.

Thus, judicial evaluation of the fairness of a settlement in a class action involves a limited inquiry into whether the potential rewards of litigation with its attendant risks and costs are outweighed by the benefits of the settlement. This determination "is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999).

"The First Circuit has not established a fixed test for evaluating the fairness of a settlement." *New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 280 (D. Mass. 2009). Many courts in this Circuit have thus looked to the factors set forth by the Second Circuit to determine the fairness of a settlement:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 280-281 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also In re Lupron*, 228 F.R.D. at 93-94 (noting that *Grinnell* has supplied the "most commonly

referenced factors" and proceeding to apply them).  However, other courts in this Circuit have

used pared down versions of the *Grinnell* list.  *See, e.g., In re Compact Disc Minimum*

*Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (court utilizes a six-factor

list); *In re Tyco*, 535 F. Supp. 2d at 259-60 (court utilizes a five-factor list); *In re Fleet/Norstar*

*Sec. Litig.*, 935 F. Supp. at 106-07 (court utilizes a four-factor list).

Here, consideration of all the *Grinnell* factors compels the conclusion that this Settlement

is fair, reasonable, and adequate and should be given final approval by the Court.

**B.**     **Consideration of the Relevant Factors for Settlement Approval**

**1.**     **Litigation Through Trial Would Be Complex, Costly and Long**
           **(*Grinnell* Factor 1)**

FLSA (and state law analogue) misclassification claims are, by their very nature, complex

and take a significant period of time to litigate.  If approved, this Settlement will dispose of the

ASM Training Claims asserted in the Third Amended Complaint, leaving only the claim that

Defendants misclassified ASMs at Marshalls and HomeGoods stores (excluding California)

during the period of time following their formal training period (the "ASM Misclassification

Claims") to be resolved by the Court.  In the absence of Settlement approval, the parties would

face extended and costly battles with respect to the litigation of the ASM Training Claims,

including potential motions for conditional and class certification of the ASM Training Claims,

motions for the decertification of any such claims (to the extent any were certified by the Court),

and motions for summary judgment on the ASM Training Claims.  If summary judgment

motions seeking the dismissal of the ASM Training Claims were denied, the Parties would have

to conduct additional further discovery and prepare for a trial, which would undoubtedly be

lengthy and costly.  While Class Counsel and the ASM Training Plaintiffs believe in the merits

of the ASM Training Claims, and would be willing to fight for them, in the absence of the

Settlement it would likely have taken years and millions of dollars in legal fees, and consumed scarce judicial resources, before reaching final resolution of the ASM Training Claims, including exhaustion of all appeals.  Class Counsel can readily attest from experience that retail misclassification cases can be time consuming, fraught with issues and expensive.[11]

Accordingly, by reaching a settlement prior to such litigation, ASM Training Plaintiffs seek to avoid significant expense and delay, and instead ensure timely recovery for members of the Settlement Classes who become Authorized Claimants. *See Bussie*, 50 F. Supp. 2d at 66; *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) ("Costs would include . . . the cost of a four-week trial which promises to feature a battle of various experts."); *Prudential II*, 148 F.3d at 318 (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"). The first *Grinnell* factor weighs in favor of final judicial approval of the Settlement.

### 2.     Class Reaction Has Been Positive (*Grinnel* Factor 2).

The response to the Settlement by members of the Settlement Classes is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement.  *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (class's reaction supported approval where the "overall reaction to the settlement has been positive" and the objections asserted by class members did not focus upon the total settlement consideration); *Greenspun v. Bogan,* 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a settlement]."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d at 77; *Giusti-*

---

[11] Class Counsel are particularly well aware of the risks and delays attendant upon wage and hour misclassification cases.  For example, in January 2009, Mr. Lesser and Ms. Rudich of Klafter Olsen & Lesser tried an assistant manager retail chain store misclassification case. That opt-in FLSA collective action on behalf of 342 employees involved discovery, consumed six weeks of trial time, and cost hundreds of thousands of dollars in expenses; the post-trial motion practice that followed was quite extensive and included motions for judgment notwithstanding the verdict and for decertification of the collective class.  *See* Lesser Final Approval Decl. at ¶ 5.

*Bravo v. United States Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections.").

Consideration of the reaction of members of the Settlement Classes weighs in strong favor of approval where, as here, there have been no objections received from members of the ASM in Training New York State Law Settlement Classes in response to the Settlement Notice that was mailed (and in some instances re-mailed).  In addition, the Settlement Notice advised members of the ASM in Training New York State Law Settlement Classes of their right to exclude themselves from the Settlement, and only 3 requests for exclusion were timely received by CAA from members of those settlement classes. McDermott Decl. at ¶ _ and Exhibit C.  This response demonstrates that the members of the Settlement Classes approve the terms of the Settlement, including the results achieved on their behalf, and supports final judicial approval.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed Support Final Approval (*Grinnel* Factor 3).

The purpose of considering the stage of the proceedings when evaluating a settlement for final approval is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal.  *See M. Berendon Co. v. Faneuil Hall Marketplace Inc.*, 671 F. Supp. 819, 823, 825 (D. Mass. 1987).  Here, there can be no question that the ASM Training Plaintiffs and Class Counsel had enough information to make an informed decision regarding the adequacy of the Settlement.  While the litigation of the ASM Training Claims was at an early stage, formal First Phase discovery (prior to the filing of any motion for conditional certification in this action) had commenced, extensive informal discovery was exchanged in connection with the mediation of the ASM Training Claims, and numerous witnesses were interviewed by Class Counsel regarding the ASM Training Claims.  In addition, Class Counsel are – it is fair to say – very experienced in filing and handling retail

manager misclassification cases.   Lesser Final Approval Decl. at ¶ 5.  They have literally handled dozens of such cases and, as noted above (n. 10), have tried such a case.  In addition, as the Court is aware, by virtue of several prior cases Class Counsel has litigated during the last several years against the same Defendants in New York (in which Section 216(b) motions were not granted), Class Counsel had previously undertaken some "first stage", pre-motion for conditional certification discovery in those cases on nearly identical claims and, in this action, that information was compounded by the discussions that Class Counsel had with their clients both pre-filing and post-filing.

Moreover, in preparation for mediation, Class Counsel and the ASM Training Plaintiffs specifically requested the information from Defendants about the size of the potential settlement classes on the ASM Training Claims, and the scope of the ASM Training Plaintiffs' employment and other information, including details regarding the length of the periods in which ASMs participated in a formal Assistant Store Manager Training Program, the Defendants' policies and procedures regarding the formal training of ASMs, all of which Defendants ultimately provided to Class Counsel prior to the mediation.  In turn, both sides conducted their own analysis regarding the (1) potential liability if the ASM Training Claims were to proceed; (2) relative strengths and weaknesses of their respective positions; and (3) risks associated with each side's respective positions.  Lesser Final Approval Decl. at ¶ 2.  The November 10, 2014 mediation involved an exchange of comprehensive position statements, a day of in-person discussion and negotiation, and numerous post-mediation discussions.  Matters addressed included the size and scope of the ASM Training Claims, the likelihood of success on the merits, the manner in which alleged damages associated with those claims could be

calculated and obtained, the likelihood of trial and what would occur at trial.  Lesser Final

Approval Decl. at ¶ 3.

In short, the combination of investigation, the exchange of information, and inquiry

permitted Class Counsel to get to the heart of the issues in the case in an effective and

efficient manner.  Accordingly, the Parties' exchange of information here meets the standard

of being part of "an aggressive effort" to litigate the case and Class Counsel were fully

equipped to evaluate the strengths and weaknesses of the ASM Training Claims.  *See Frank v.

Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in

relatively early stages of discovery" where parties had exchanged extensive information

pertaining to the identities of class members and to Defendant's time and pay practices and

where counsels' negotiations, while "cooperative," had "been in no way collusive").

### 4. Plaintiffs Would Face Real Risks In Seeking To Establish Liability and Damages if the Wage-Hour Lawsuits Were to Proceed (*Grinnel* Factors 4 and 5).

 "As any experienced lawyer knows, a significant element of risk adheres to any litigation

taken to binary adjudication."  *In re Lupron*, 228 F.R.D. at 97.  Accordingly, courts routinely

approve settlements where plaintiffs would have faced significant legal or factual obstacles to

establishing liability.  *See, e.g., In Re Relafen Antitrust Litig.*, 231 F.R.D. at 73.  Although the

ASM Training Plaintiffs believe they have strong claims, they are subject to tangible risks as to

liability and damages.

First, a trial on the merits would involve risk to the ASM Training Plaintiffs because of

the fact-intensive nature of proving liability on their claims under the FLSA and NYLL; the ultimate

issue of whether members of the Settlement Classes were properly classified as exempt during

the time that they participated in a formal ASM Training Program depends on a qualitative

weighing test.  The defenses available to Defendants would likewise pose substantial risk to the

ASM Training Plaintiffs' ability to prove both liability and damages.  In order to proceed to trial (or defeat any dispositive motions filed by Defendants), additional factual development would be necessary.  Further, the estimated potential recovery must account for a large number of legal and factual contingencies.  Those contingencies include how many hours the average ASM worked in a week during the time that they participated in a formal ASM Training Program; how many weeks of formal ASM training were encompassed; whether the members of any putative collective or class on the ASM Training Claims could obtain a third year of liability and, in turn, damages under the FLSA (a question of willfulness), liquidated damages under the FLSA (a question of good faith), and/or statutory penalties under the NYLL.  These are fact intensive questions that also depend on the achievement of favorable legal determinations.  When putative collective action FLSA misclassification cases like this one reach juries, the results can be unpredictable, as is demonstrated by the four last such collective action trials of which Class Counsel are aware, three of which resulted in employer verdicts.  *Compare, e.g., Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) (same); *Bell v. Citizens Fin. Group, Inc.*, 2:10-cv-00320 (W.D. Pa.) (Apr. 21, 2013) (same).

Second, there is a particular issue as to damages for Class Counsel and the ASM Training Plaintiffs to consider because, even if liability could be established, the Parties dispute the proper method for calculating potential damages in an action like this one.  *See McCoy*, 569 F. Supp. 2d at 462 (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement).  Here, Defendants will surely assert in litigation (as

they did through the mediation process) that the damage analysis that would be applied would be based on the "half-time" method, which would have significantly diminished the value of the ASM Training Claims, even assuming liability was proven.  In support of that position, Defendants cited the First Circuit Court of Appeals' decision in *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999), as well as DOL Wage and Hour Opinion Letter FLSA2009-3, at 2 (Jan. 14, 2009) (citing *Valerio*), the U.S. District Court for the District of Massachusetts' decision in *Dooley v. Liberty Mut. Ins. Co.*, 307 F. Supp. 2d 234, 251-52 (D. Mass. 2004), and the decisions of the Fourth Circuit, Seventh Circuit, and Tenth Circuit in *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prosperity Servs.*, 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008), respectively.  The ASM Training Plaintiffs, on the other hand, note that outside of the First Circuit, some district courts have questioned the applicability of the "half-time" method of calculating overtime damages and applied what is sometimes called a "regular rate" or "time and one half" approach.  *See, e.g, Snodgrass v. Bob Evans Farms, LLC*, Case No. 2:12cv768, 2015 U.S. Dist. LEXIS 33621 (S.D. Ohio March 18, 2015) (ruling that methodology should be "regular rate" approach for a misclassification case); *Seymour v. PPG Indus., Inc.*, 891 F. Supp. 2d 721, 737 (W.D. Pa. 2012) (noting that whether half-time method applied to each individual plaintiff was jury question).  The risk of this issue to the ASM Training Plaintiffs weighs in favor of settlement.  *See Craig v. Rite Aid Corp.,* No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658 at *38-39 (M.D. Pa. Jan. 7, 2013) (the disputed method of damage calculations was a crucial unresolved issue that weighed in favor of settlement approval of FLSA retail manager misclassification case).

Although the ASM Training Plaintiffs believe that the ASM Training Claims are meritorious, Class Counsel are experienced and realistic, and understand that the resolution of liability and damages issues, the outcome of a potential trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The Settlement alleviates this uncertainty.   District Judge Jones of the Middle District of Pennsylvania captured this point in approving a hybrid FLSA retail misclassification case settlement in which some of the Class Counsel here represented the class, writing "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability."  *Craig*, 2013 U.S. Dist. LEXIS 2658, at *38.  These words apply with full force in this case.

### 5. Obtaining Class or Collective Certification and Maintaining That Certification Through Trial May Be Difficult (*Grinnell* Factor 6).

The risks to the ASM Training Plaintiffs of first obtaining, and then maintaining, either conditional certification of an FLSA collective on the ASM Training Claims or the certification of a Rule 23 state law class on those claims through trial are also present.  With respect to FLSA conditional certification issues, while Class Counsel contend that the bar for certification is low (a point that Defendants would readily dispute), the ASM Training Plaintiffs would have had to move for conditional certification of the ASM Training Claims under Section 216(b) of the FLSA and, even if conditional certification was granted, later survive a motion by Defendants to decertify such an FLSA collective after an additional, second phase of discovery.  In addition, with respect to Rule 23 certification issues, the ASM Training Plaintiffs would have to move for class certification for the NYLL classes and, even if class certification was granted, would later have to also survive a motion by Defendants to decertify such a class.  Case authority demonstrates the substantial difficulty and litigation risks associated with achieving and/or maintaining collective or class certification. *See, e.g., Stevens v. HMS Host Corp.*, 10CV3571

(ILG)(VVP), 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 26, 2014) (decertifying retail sale

FLSA collective action); *Hernandez v. The Fresh Diet*, 12-cv-4339 (ALC)(JLC), 2014 U.S.

Dist. LEXIS 139069 (S.D.N.Y. Sept. 26, 2014) (decertifying misclassification collective

action); *Tracy v. NVR, Inc.,* 293 F.R.D. 395 (W.D.N.Y. 2013) (decertifying outside contractor

collective action); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008)

(decertifying retail store manager collective action).  Irrespective of how motions for conditional

certification, class certification, or decertification might be decided, ASM Training Plaintiffs

and Class Counsel are well aware from experience that decertification/final certification

determinations would be reached only after intense, exhaustive briefing and argument by both

sides.  Yet further, the possibility of Defendants seeking permission to file an interlocutory

appeal under Fed. R. Civ. P. 23(f), should a class be certified under Rule 23, is always present

(and such motions are quite often made in Class Counsel's experience).  Risk, expense, and

delay permeate continued litigation.  Settlement eliminates this risk, expense, and delay.  This

factor favors final approval.

> **6.      The Settlement Amount Is Reasonable, Even in Light of the Best Possible Recovery, Given the Risks of Litigation (*Grinnell* Factors 7, 8 and 9).**

In the light of Class Counsel's assessment of the best possible recovery, given the

attendant risks, the Settlement is fair, reasonable and adequate.  A reasonable settlement is not

determined by a hard and fast mathematical equation yielding a particularized sum.  Rather, "in

any case there is a range of reasonableness with respect to a settlement."  *In re Relafen Antitrust

Litig.*, 231 F.R.D. at 73 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Courts routinely approve settlements even though the benefits amount to less than the

recovery sought (or else there would have been no reason to settle).  *Officers for Justice v. Civil

Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982); *In re Washington Pub. Power Supply Sys. Sec.*

*Litig.*, 720 F. Supp. 1379, 1391, 1417 (D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir. 1992).  As the seminal *Grinnell* decision itself recognized, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2; *accord, e.g,. Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (upholding settlement which amounted to "only a negligible percentage of the losses suffered by the class"). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.  When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *13 (*quoting Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,  No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).  Even if a defendant could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186.

Here, Class Counsel and the ASM Training Plaintiffs believe that the $4,750,000 Settlement Amount is reasonable given the attendant risks of litigating the ASM Training Claims, even though recovery could possibly be greater if the ASM Training Plaintiffs were to fully succeed on their claims at trial and survived an appeal.  Class Counsel believes that the fairness and reasonableness of the Settlement can be best understood, however, by considering the range of potential damages calculated by them in connection with mediation.   Specifically, using what Class Counsel believes to be a favorable, yet reasonable set of assumptions (notably, a set

of assumptions with which Defendants do not agree), and assuming a positive verdict at trial,

Class Counsel and the ASM Training Plaintiffs contend that the potential value of FLSA

collective and state law class action ASM Training Claims presented in this action would have

ranged from approximately $3.187 million (Plaintiffs' valuation using the "half-time"

methodology) to $11.26 million (using the "regular rate" or "time and one half" approach).

Lesser Final Approval Decl. at ¶ 9.  In other words, assuming all ASM Training Plaintiffs and

every member of a putative FLSA collective and New York state law class on the ASM

Training Claims prevailed in every part of their case hereafter to trial, the Settlement Amount

ranges from approximately 42% to 149% of the amount that might possibly have been

awarded.[12]  *Id.*  Plaintiffs submit that this is more than fair, reasonable and adequate, particularly

in light of the risks and challenges described above.  Further, the average Authorized Claimant

will receive a pre-tax gross amount of $165.77 for each ASM Training Week (assuming final

approval of Class Counsel's requested fees, costs and expenses and requested Service Payments

to the ASM Training Plaintiffs).  In concluding that the Settlement is fair, reasonable and

adequate, Class Counsel weighed the benefits against the risk involved in litigation.  *Cf. Cagan*

*v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450, at **34-35

(E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the

"best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus.,*

*Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at **16-18 (S.D.N.Y. Feb. 17, 1977)

(approving settlement of less than 1% of the best possible recovery).[13]

---

[12] Class Counsel's assumptions in this calculation include, among others, establishing a willful violation of the FLSA to extend the statute of limitations from two to three years, overcoming Defendants' defenses to liquidated damages, and assuming a favorable damage determination by the jury.

[13] In addition, as fully explained in ASM Training Plaintiffs' Unopposed Notice of Filing Supplemental Information In Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class and Collective Action Settlement (Dkt. No. 101 at 11-14), the claims-made, reversionary structure of this proposed Settlement is particularly proper (if not uniquely so) for the settlement of FLSA claims given that, in a putative FLSA collective action, a putative

**IV.     The Settlement Is the Result of Arms-Length Negotiations Between Experienced Counsel.**

An additional factor for the Court to consider is the existence of arms-length negotiations by experienced trial counsel in reaching the Settlement.  In lieu of a more extended inquiry into the ASM Training Claims asserted and result achieved, federal courts focus on whether the settlement was achieved through "arms-length negotiations" by counsel who have "the experience and ability … necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74.  Moreover, in the First Circuit, there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery.  *City P'ship Co.*, 100 F.3d at 1043.

This Settlement was reached as the result of good faith dealings without collusion.  Both sides are represented by highly experienced and competent counsel.  Among Class Counsel are nationally recognized members of the plaintiffs' bar, specializing in complex class litigation, specifically including employment and wage and hour claims.  *See* Lesser Final Approval Decl. at ¶ 8.  Class Counsel have, between them, prosecuted a substantial number of wage and hour cases to successful conclusion (both at trial and in settlement).  Included among their cases was the largest wage and hour settlements of which we are aware in both this Circuit and in this

---

FLSA collective action member must affirmatively "opt-in" to the FLSA action in order to participate in the litigation.  As a result, in an FLSA settlement, a member of a FLSA settlement collective (or "settlement class" as the term has been used in the instant action) who does not affirmatively consent to join the case and to participate in the settlement will retain her FLSA claims against the Defendants, including the right to file a separate lawsuit against Defendants, even after the resolution of the case on a classwide basis.  *See* 29 U.S.C. § 216(b).  In the proposed Settlement, any member of any of the Settlement Classes who did not become an Authorized Claimant will not be eligible to participate in the settlement and will retain the right to sue Defendants for alleged FLSA violations.  The settlement structure proposed here achieves a balance between providing fair settlement compensation to participating class members based on the length of their formal ASM Training Program, while protecting Defendants in the event it needs to defend unreleased FLSA claims from members of the Settlement Classes who did not become Authorized Claimants.  Where, as here, provisions for funding the claims of the participating members of the Settlement Classes are negotiated at arms-length, they "[do] not undermine the fairness, reasonableness, or adequacy of the Settlement." *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 474 (D.N.J. 2008).

Court, *Nash v. CVS Caremark Corp.*, No. 09-cv-079-M (D.R.I. April 9, 2012) ($34 million

FLSA/state law wage and hour class and collective action settlement); *Caissie v. BJ's Wholesale*

*Club,* No. 08-30220-MAP (D. Mass. June 24, 2010) ($9.15 million FLSA/state law wage and

hour class and collective action settlement).  As noted, Class Counsel includes attorneys who

won a jury trial in a similar wage and hour case.  *See* Lesser Final Approval Decl. at ¶ 5.  Class

Counsel have also obtained other significant court approved settlements of class action wage and

hour cases in literally scores of other cases.  *See id.* at  ¶ 8.  *See generally* 3B James W. Moore,

*Moore's Federal Practice* ¶ 23.85[2] (3d ed. 1997) ("[t]he greater experience that class counsel

possesses, the greater weight a court tends to attach to counsel's opinions on fairness, adequacy,

and reasonableness.").

In turn, Defendants' counsel in this action are all prominent leaders in their respective

areas.  Lisa Schreter, Andrew Voss, Gregory Keating and Richard Black, the principal lawyers

representing Defendants in the case, and their other colleagues at Littler Mendelson, P.C., are

nationally known for their labor and employment defense practice, including the defense of

putative class and collective wage and hour claims.

Further, the Settlement and its material terms were negotiated with the substantial

assistance of an experienced mediator, Hunter R. Hughes, who is well-versed in the nuances of

wage and hour class and collective actions.  The Settlement was therefore not the product of

collusive dealings but, rather, was informed by the experience of qualified counsel with the

guidance of a qualified mediator.  It meets the *Grinnell* factor of being the product of arms-

length negotiations.  Thus, this factor strongly supports approval of the Settlement.

The *Grinnell* factors, as well as the additional factors, all weigh in favor of granting final approval of the Settlement. Thus, the Settlement is fair, reasonable, and adequate, and the Court should grant final approval.

**A.      Class Counsel's Request for An Award of Attorneys' Fees, Costs and Expenses Should Be Approved**

Class Counsel posit that they are entitled to reasonable attorneys' fees, costs and expenses to compensate them for their work in recovering alleged unpaid wages on behalf of the members of the Settlement Classes. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Class Counsel seek an award of attorneys' fees, costs and expenses in the amount of $1,583,333.33), or thirty-three and one-third percent (33 and 1/3%) of the Settlement Amount. Lesser Final Approval Decl. at ¶ 11. For the purposes of this Motion, Defendants do not oppose Class Counsel's application for attorneys' fees, costs and expenses.[14] The Settlement Notice advising members of the Settlement Classes of the Settlement, which was approved by the Court, provided that "Class Counsel will apply for fees, costs and expenses in an amount not to exceed 33 1/3% of the Maximum Gross Settlement Amount." *See* McDermott Decl., Ex. A (Notice) at 5. Not a single objection was received to Class Counsel's request for attorneys' fees, costs and expenses. Class Counsel contends that this request for thirty-three and one-third percent (33 and 1/3%) of the Settlement Amount for attorneys' fees, costs and expenses is reasonable and is within the accepted range typically awarded in contingency fee common fund and FLSA cases (*see* pages 30-31, below).

"'An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'" *In re Tyco*, 535 F. Supp. 2d at 265

---

[14] Defendants do not oppose Class Counsel's instant request for attorneys' fees, costs and expenses for settlement purposes only. However, to the extent that the Court does not grant final approval of the Settlement, Defendants reserve their rights to raise any argument with respect to any subsequent requests by Class Counsel for attorneys' fees, costs and expenses in association with any claims asserted by any Plaintiffs in this action.

(quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)); *see also Blum v. Stenson*, 465

U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a

percentage of the fund bestowed on the class").  "The common fund doctrine is founded on the

equitable principle that those who have profited from litigation should share its costs."  *In re*

*Thirteen Appeals of Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305

n.6 (1st Cir. 1995) ("*Thirteen Appeals*").  Under the percentage method, the court has broad

discretion in determining an appropriate fee.  *See id.* at 308.  "A court must shape the fee 'based

on what it determines is a reasonable percentage of the fund recovered for those benefitted by the

litigation.'"  *Id.* at 305.  "The measurement should not be what benefits are claimed by the class

but rather what benefits are made available by counsel to be claimed."  *In Re Volkswagen & Audi*

*Warranty Extension Litig.*, 784 F. Supp. 2d 35, 47 (D. Mass 2011), *rev'd on other grounds*, 692

F.3d 4 (1st Cir. 2012)(citations omitted); *see also Camden I Condo. Assoc. v. Dunkle*, 946 F.2d

768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from

a common fund shall be based upon a reasonable percentage of the fund established for the

benefit of the class").  As the Supreme Court has recognized, it is appropriate that attorneys'

fees, costs and expenses be awarded on the entire settlement even though amounts to be paid to

settlement class members who do not file claims will revert to Defendants.  *See Boeing Co.*, 444

U.S. at 480-81.

The First Circuit has held that a district court has the discretion to award attorneys a

percentage from a common fund.  *Thirteen Appeals,* 56 F.3d at 308; *see also In re Fleet/Norstar*

*Sec. Litig.*, 935 F. Supp. at 108.  In *Thirteen Appeals*, the First Circuit joined the "prevailing"

majority of courts that have adopted the percentage of a common fund as a basis for awarding

fees.  As the First Circuit explained:

In complex litigation -- and common fund cases, by and large, tend to be complex -- the POF approach is often less burdensome to administer than the lodestar method. [citation omitted.]  Rather than forcing the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended, the POF method permits the judge to focus on "a showing that the fund conferring a benefit on the class resulted from" the lawyers' efforts [citation omitted.] …

For another thing, using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency.  Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement....[citation omitted.]  If the POF method is utilized, a lawyer is still free to be inefficient or to drag her feet in pursuing settlement options -- but, rather than being rewarded for this unproductive behavior, she will likely reduce her own return on hours expended.

Another point is worth making: because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.  We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character."  [citation omitted.]

56 F.3d at 307  (emphasis added).  Further, the First Circuit described the "POF" method as "offer[ing] significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace."  *Id.* at 308.  Yet another advantage of the percentage method is that it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)(internal citations omitted).[15]

---

[15] Indeed, in perhaps the most recent serious consideration of current fee jurisprudence, found in the American Law Institute's recently adopted Principles of Aggregate Litigation, the percentage-of-the fund was recognized as the proper principle:

> (b) Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.  The court can consider using the "lodestar" approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.
> (c) Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:

There is no hard and fast rule mandating a certain percentage of a common fund that may reasonably be awarded as a fee.  The amount of any fee must be determined on the facts of each case.  "It is not the obligation of this court to set the fee at the lowest amount possible but rather to determine whether the fees sought are 'reasonable.'"  *In re Volkswagen*, 784 F. Supp. 2d at 47. The ordinary contingency fee arrangement is usually for one-third of the settlement fund.  *See Furtado v Bishop*, 635 F.2d 915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, *J.*, concurring).

Class Counsel believes that their request here for thirty-three and one-third percent (33 and 1/3%) of the Settlement Amount for Class Counsel's attorneys' fees, costs and expenses falls within the acceptable range for common fund cases in this Circuit, both within the wage and hour context as well as otherwise.  *See In re StockerYale, Inc. Secs. Litig.*, No. 1:05cv00177, 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007) (awarding class counsel fees of 33% of $3,400,000 gross settlement fund, with expenses in addition to fee award); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (approving fee of 33 1/3%); *Mazola v. May Dept. Stores Co.*, 1:97cv10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (recognizing that, "in this circuit, percentage fee awards range from 20% to 35% of the fund); *Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 707, 710 (D. Mass. 1987) (recognizing that fees in the 20%-50% range in common fund class actions are not uncommon).[16]

---

    (1) situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or

    (2) cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b), (c) at 248-49 (2010).

[16] Pertinently, it is in line with the fee awards in this circuit for FLSA/state law wage and hour cases.  *See, e.g., Caissie v. BJ's Wholesale Club,* No. 08-30220-MAP (D. Mass. June 24, 2010) (30% fee in $9.15 million settlement); *Macone v. Pongratz,* C.A. No. 07-11360-PBS (D. Mass. Sept. 16, 2008) (33% award in $966,000 wage

The First Circuit, in *Thirteen Appeals,* did not provide a definitive list of factors for the fee determination.  *See In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *12 ("the First Circuit does not mandate the weighing of any specific set of factors in assessing a common fund fee request"); *see also In re Tyco*, 535 F. Supp. 2d at 265-66 ("the First Circuit does not require courts to examine a fixed laundry list of factors").  However, relying on factors employed in other Circuit courts, courts within this District have embraced the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *12*; see also In re Relafen Antitrust Litig.*, 231 F.R.D. at 79 (utilizing a substantially similar formulation but adding "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel").  Here, Class Counsel believes that the application of each of these considerations supports the requested amount for attorneys' fees, costs and expenses.

## 1.      Size of Settlement/Number of Persons Benefitted

The Settlement called for a Settlement Amount of $4.75 million.  The Settlement Notice was mailed to 4,018 Class Members, and as of the July 25, 2015, deadline for Claim Forms to be

---

and hour settlement); *Kane v. Gage  Merchandising Services, et al.*, C.A. No. 00-40185-NMG (D. Mass. June 28, 2002) (one-third from $690,000 FLSA collective action settlement); *Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ (D. Mass. Oct. 19, 2002) (one-third from $820,000 settlement fund in a FLSA collective action); *Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01- 11029-REK (D. Mass. 2005) & *McLaughlin v. Liberty Mutual Ins. Co.*, C.A. No. 01-11029-REK, (D. Mass. Dec. 21, 2005) (consolidated cases; awarding $1.8 million in counsel fees, which was 28% of $6.4 million settlement involving both FLSA collective actions and a Rule 23 Massachusetts overtime class claim).  Relevant decisions from other circuits include *Braun v. Wal-Mart, Inc.,* No. 19-CO-01-9790, 2009 Minn. Dist. LEXIS 332 (Minn. Dist. Ct. June 1, 2009) (38% of a  $54.25 million dollar settlement); *Hale v. Wal-Mart Stores, Inc.,* No. 01-CV-218710, 2009 WL 2206963 (Mo. Cir. Ct. May 15, 2009) (38.3% of a $90 million dollar settlement); *Mutuc v. Huntington Mem'l Hosp.,* Nos. BC288727, BC364972 (Cal. Sup. Ct. Dec. 23, 2008) (30% of a $36 million dollar settlement); *Lerma v. Wal-Mart,* No. CJ-2001-1395 (Dist. Ct. of Cleveland Cty., Okl. Mar. 16, 2001) (40% of a $42.5 million dollar settlement); *see also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op (S.D.N.Y. Oct. 11, 2011) (one third of $42 million settlement fund in FLSA and state wage and hour case).

received by the Claims Administrator, 1,536 unique Claim Forms were submitted by members of the Settlement Classes.  McDermott Decl. at ¶ 12.  Thus, this factor weighs in favor of reasonableness.

### 2.      Skill, Experience and Efficiency of the Attorneys

Class Counsel respectively submit that the $4.75 million Settlement Amount was achieved, in part, because of the level of experience and reputation of counsel.  *See, e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (recognizing Klafter Olsen & Lesser as "experienced in handing wage and hour class actions and hav[ing] knowledge of the applicable law"); *Craig*, 2013 U.S. Dist. LEXIS 2658, at *45 (Stating that Class Counsel (which included Klafter Olsen & Lesser as lead counsel and Hepworth Gershbaum & Roth as Class Counsel) "are experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and that the Class Members have benefitted tremendously from able counsel's representation." *Overka v. American Airlines, Inc*., 265 F.R.D. 14, 19 (D. Mass. 2010) (in certifying a nationwide class on behalf of skycaps working for American Airlines, the Honorable William G. Young in this District held that Attorney Hillary Schwab and her co-counsel in that case were "well qualified and experienced in class actions on behalf of employees in the service industry"); *Brewer v. BP P.L.C. et al*., Case 2:11-cv-00401-JCW, Dkt. 306 (E.D. La. June 11, 2012) (approving Burr & Smith, among others, as class counsel in collective action settlement and noting plaintiffs' counsels' "credentials are impeccable and whose specialized knowledge and experience in this field of law are impressive"); *Sonoda v. Amerisave*, Case No. 11-1803 EMC (N.D. Cal. 2013) (appointing Mehri & Skalet, among others, as co-lead class counsel for the settlement class, stating, "the Court finds that Class Counsel showed a high degree of skill and efficiency in prosecuting this case, which involved issues of considerable complexity"); *Kudo v. Panda*

*Express*, 7:09-cv-00712, Dkt. 308 at 5-6 (S.D.N.Y. June 26, 2015) (appointing Valli Kane &

Vagnini, among others, as class counsel for settlement class recognizing how they "have

succeeded in negotiating an award that has real value for the class members"); *Palacio v.

E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 U.S. Dist. LEXIS 41886, at \*7 (S.D.N.Y. Mar.

12, 2012) (appointing the Shavitz Law Group as class counsel based on its experience in

"numerous wage and hour class and collective actions"); *Indergit v. Rite Aid,* 293 F.R.D. 632,

654 (S.D.N.Y. 2013) (certifying settlement class of store managers and naming DiNovo, Price,

Ellwanger & Hardy, among others, as class counsel, finding "it is clear that counsel is

qualified").  Defendants, in turn, were ably represented by a prominent law firm and attorneys

with specific experience and well-known expertise in this type of litigation.  "The quality of

opposing counsel is also important in evaluating the quality of the services rendered by

Plaintiffs' Class Counsel."  *Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 373

(S.D.N.Y. 2002).  Thus, this factor weighs in favor of granting the requested fee.

### 3.  Complexity and Duration of Litigation

The ASM Training Claims had all the hallmarks of complex and extended FLSA and

state law litigation.  As the Supreme Court has recognized, "FLSA claims typically involve

complex mixed questions of fact and law . . . . These statutory questions must be resolved in

light of volumes of legislative history and over four decades of legal interpretation and

administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743

(1981), *rev'd on other grounds*, 450 U.S. 728 (1981).  The risks of proceeding with this

case have been set out above.  *See* pp. 18-21, above.  As note 11 above details, FLSA

litigation involving similar claims can lead to complex legal and factual adjudications.  *See

also, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008)

33

(encompassing over seven years of litigation and two trials).  This factor weighs in favor of reasonableness.

### 4.    Litigation Risks

In addition to the litigation risks set forth in pages 14-15, below, the risk of nonpayment is another litigation risk faced by Class Counsel for which they should be compensated.  "Many cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award."  *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *15-16 (internal quotations omitted).  The contingency risk here was significant from the outset and supports the requested fee.  Class Counsel undertook the ASM Training Claims on a strictly contingent-fee basis, and invested a substantial amount of time and money to prosecute the claims with no guarantee of compensation or recovery of out-of-pocket costs.  There was a substantial risk of nonpayment in the event these claims were dismissed.  *See Maley*, 186 F. Supp. 2d at 372 ("Class Counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.") (citations omitted); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (class counsel not only undertook risks of litigation, but advanced own funds and financed litigation).  The litigation risks, in particular the risk of nonpayment, support the fee application.

### 5.    Amount of Counsel Time

Class Counsel have expended significant resources litigating the ASM Training Claims. Specifically, as here relevant, the firms making the instant request for attorneys' fees, costs and expenses in the amount of thirty-three and one-third percent (33 and 1/3%) of the Settlement Amount have expended over 1,650 hours in investigating, filing, litigating and negotiating and

settling of the ASM Training Claims.[17]  Lesser Final Approval Decl. ¶ 12.  Thus, this factor

weighs in favor of granting the fee request.

### 6.      Awards in Similar Cases

The request by Class Counsel for an award of thirty-three and one-third percent (33 and

1/3%) of the Settlement Amount for fees, costs and expenses is fully supported by awards in

class actions involving common funds, including, specifically, wage and hour class and

collective action settlements, as shown at pages 30-31 and note 16, above.

### 7.      Public Policy Considerations

Important public policy considerations also support approval of the requested fees, costs

and expenses.  In considering attorneys' fees, courts are mindful that such awards serve the dual

purpose of encouraging representatives acting as "private attorneys' general," to seek redress for

damages to entire classes of persons and discouraging future misconduct of a similar nature.  *See*

*Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825

(2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress

misconduct and by the same token discourages misconduct which would occasion suit.")

(quotation omitted); *see also In re RJR Nabisco Inc. Sec. Litig.*, M.D.L. Docket No. 818 (MBM),

U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ("The prospect of handsome compensation is

held out as an inducement to encourage lawyers to bring such suits") (quoting *Dolgow*, 43

F.R.D. at 494).

The FLSA and its state law analogs are remedial statutes designed to protect the wages of

workers.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's

objective, which is ensuring that every employee receives "a fair day's pay for a fair day's

---

[17] Class Counsel have closely reviewed their time records, carefully including only time spent on efforts directed toward the ASM Training Claims.  Where time was spent on tasks benefitting the case as a whole, Class Counsel only included a small percentage of their time in determining this number.

work").  Class Counsel contends that adequate compensation for attorneys who protect those

rights by taking on such litigation furthers the remedial purpose of these statutes.  Such adequate

compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental

to the maintenance of the minimum standard living" of workers through private lawsuits and

"insur[ing] effective access to the judicial process" by removing the significant barrier of paying

legal fees and costs out of pocket.  *United Slate, Tile & Composition Roofers, Damp &*

*Waterproof Workers Ass'n, Local 307* v. *G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495,

501-02 (6th Cir. 1984) (internal quotations omitted).  Fee shifting provisions "encourage

members of the bar to provide legal services to those whose wage claims might otherwise be too

small to justify the retention of able, legal counsel.  But for the separate provision of legal fees,

many violations . . .  would continue unabated and uncorrected."  *Sand v. Greenberg*, No. 08

Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010).  "Attorneys who fill the

private attorney general role must be adequately compensated for their efforts.  If not, wage and

hour abuses would go without remedy because attorneys would be unwilling to take on the risk."

*Prasker v. Asia Five Eight LLC*, Case No. 08-Civ-5811 (MGC), 2010 U.S. Dist. LEXIS 1445, at

*17 (S.D.N.Y. January 4, 2010).  In addition, this case is resolving a putative class action, and

class actions are recognized as an invaluable safeguard of public rights.  *See Phillips Petroleum*

*Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).

Thus, this factor supports the fee request.

Since each of the relevant factors commonly viewed as required supports its

reasonableness, the fee request should be approved by the Court.[18]

---

[18] "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee."  *In re Relafen Antitrust Litig.*, 231 F.R.D. at 81(citations omitted).  It can be used, however, as "a check or validation of the appropriateness of the percentage of funds fee, but is not necessary.'"  *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009

**B.      Service Awards to Settlement Class Representatives Should Be Approved.**

Service Payments for "class representatives" have "an important function in promoting

class action settlements."  *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005)

(*quoting Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0437, 2002 U.S. Dist. LEXIS

16314 (S.D.N.Y. Aug. 1, 2002)).  Such awards "are recognized as serving an important function

in promoting class action settlements." *In re Lupron*, 228 F.R.D. at 98 (citing *Denney*, 230

F.R.D. at 355)); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (same); *see also In re*

*Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003)

("Because a named plaintiff is an essential ingredient of any class action, an incentive award can

be appropriate to encourage or induce an individual to participate in the suit").

Here, the Settlement Agreement provides for Class Counsel and the ASM Training

Plaintiffs to seek Service Payments for the ASM Training Plaintiffs in an amount up to but not

exceeding $3,250 each.  The amount of the requested Service Payments in this case is consistent

with, if not lower than those that have been granted for class representatives who were willing to

---

WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (quotation omitted).  Should the Court utilize the lodestar method as a
cross check, the Court "is not required to wade through every billed hour, every claimed service, and charged
expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute
findings."  *In re Volkswagen*, 784 F. Supp. 2d at 47 (citation omitted).  The lodestar is calculated by multiplying the
number of hours incurred by the hourly rate for the services rendered.  *In re Tyco*, 535 F. Supp. 2d at 265 n.12.
Here, Class Counsel's lodestar for the services rendered specifically with respect to the ASM Training Claims totals
$807,860.40.  *See* Lesser Final Approval Decl. at ¶ 12.  This results in a multiplier of less than 2.  Such a multiplier
is decidedly well within the commonly accepted range.  *See generally In re Cendant Corp.,* 232 F. Supp. 2d 327,
341-2 (D.N.J. 2002) ("Multiples ranging from one to four are frequently awarded in common fund cases when the
lodestar method is applied."); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938
n.45 (N.D. Ohio 2003) (relying on an analysis of over 1,000 cases to conclude that "the courts' effective multipliers
averaged: (a) 3.89 across all 1,120 cases, (b) 4.50 across the 64 cases where the recovery exceeded $100 million,
and (c) 2.97 across the 10 mass tort cases."); *see also Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, slip op.
17 (S.D.N.Y. Oct. 11, 2011) (5.3 multiplier on one third fee of $42 million settlement; also citing other authorities).
And this multiplier is within or lower than many lodestar multipliers approved by the Courts in this Circuit in many
others  *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (approving lodestar multiplier
of 8.9); *In re Tyco*, 535 F. Supp. 2d at 271 (multiplier of 2.697); *In re Relafen*, 231 F.R.D. at 82 (multiplier of 2.02);
*New Eng. Carpenters*, 2009 U.S. Dist. LEXIS 68419, at *10 (multiplier of 8.3).  In fact, in this Court's largest FLSA
settlement, the multiplier exceeded 5x.  *See, e.g., Caissie*, No. 08-30220-MAP (5x+ multiplier and 30% fee in a
$9.15 million FLSA/state law wage and hour class and collective action settlement).  Thus, even were it to be
considered, the lodestar cross check would support a finding that the requested amount of attorneys' fees, costs and
expenses is reasonable.

put their name forward to represent others similarly situated within this Circuit. *See*, *e.g.*, *Caissie v. BJ's Wholesale Club,* No. 08-30220-MAP (D. Mass. June 24, 2010) ($10,000 service awards approved in connection with $9.15 million settlement of FLSA/state law wage and hour class and collective action in case, like this one, that settled expeditiously); *In re Relafen,* 231 F.R.D. at 82 (approving service awards in the amount of $8,000 for each named consumer plaintiff); *Bussie v. Allmerica Fin. Corp.,* No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *13 (D. Mass. May 19, 1999) (approving $5,000 service awards to named plaintiffs).[19]  The ASM Training Plaintiffs provided support to this litigation by agreeing to step forward to serve as the representatives for the Settlement Classes, and fulfilled their commitments in that regard.  Each assisted Class Counsel materially with the case.  Lesser Final Approval Decl. ¶ 16.

Further, Class Counsel posits that the payment of greater amounts to the ASM Training Plaintiffs is warranted because stepping forward to have one's name on a wage and hour complaint involves a certain degree of risk of retaliation – if not from the employer in the case but within the industry.[20]  Accordingly, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings, LLC*, Case No. 09-civ-01029 (CM), 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."); *see also*, *e.g.*, *Connolly v. Weight Watchers N. Am. Inc.*, Case No. 14-cv-01983-TEH, 2014 U.S. Dist.

---

[19] The terms incentive and service awards are used interchangeably by litigants and the courts.

[20] Class Counsel stresses that in no manner is there any evidence that TJX has engaged, or would engage, in retaliation or even countenance it in any form against the individuals who stepped forward in this case.  Class Counsel's point is that the fear of retaliation from one's employer, or within the industry, is a real one for many employees.

LEXIS 102088, at *13 (N.D. Cal. July 21, 2014) (named plaintiffs assume "the risk of being stigmatized or disfavored by their current or potential future employers by suing their employer"); *Sewell v. Bovis Lend Lease LMB, Inc.*, 09Civ6548 (RLE), 2012 U.S. Dist. LEXIS 53556, at *42 (S.D.N.Y. April 16, 2012) ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *see also Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA right."); *see Craig*, 2013 U.S. Dist. LEXIS 2658, *50 (citing *Shahriar* to support service awards of $7,500 (original named plaintiff)/$5,000 (other named plaintiffs) in retail chain store misclassification settlement).

Importantly, the fact that Class Counsel and ASM Training Plaintiffs would seek Service Payments in an amount up to but not exceeding $3,250 was set forth in the Settlement Notice and no members of the ASM In Training New York State Law Settlement Classes objected. Accordingly, Class Counsel's request for Service Payments in the amount of $3,250 to each of the ASM Training Plaintiffs is reasonable and should be approved.

## Conclusion

For the foregoing reasons, the ASM Training Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement and enter and enter the accompanying proposed Order on Final Approval of Class and Collective Action Settlement and Judgment and the relief set forth therein.

Date:   August 5, 2015                              Respectfully submitted,

                                                    /s/ Seth R. Lesser
**VALLI KANE & VAGNINI LLP**                        **KLAFTER OLSEN & LESSER LLP**
Sara Wyn Kane*                                      Seth R. Lesser**
Robert J. Valli, Jr.*                               Fran L. Rudich
James A. Vagnini*                                   Two International Drive, Suite 350
600 Old Country Road, Suite 519                     Rye Brook, New York 10573
Garden City, New York 11530                         Telephone: (914) 934-9200
Telephone: (516) 203-7180

**BURR & SMITH, LLP**                               **FAIR WORK, P.C.**
Sam J. Smith*                                       Hillary Schwab
Loren B. Donnell*                                   192 South Street, Suite 450
111 2nd Ave. N.E., Suite 1100                       Boston, MA 02111
St. Petersburg, FL  33701                           Telephone:  (617) 607-3260
Telephone: (813) 253-2010

**MEHRI & SKALET, PLLC**                            **HEPWORTH, GERSHBAUM**
Cyrus Mehri*                                        **& ROTH, PLLC**
Michael D. Lieder*                                  Marc S. Hepworth*
1250 Connecticut Ave., NW, Suite 300                Charles Gershbaum*
Washington, DC 20036                                David A. Roth*
Telephone: (202) 822-5100                           192 Lexington Avenue, Suite 802
                                                    New York NY 10016
                                                    Telephone: (212) 545-1199

**DINOVO PRICE ELLWANGER**                          **SHAVITZ LAW GROUP PA**
**& HARDY LLP**                                     Gregg Shavitz*
Jay D. Ellwanger*                                   Camar Jones*
William M. Parrish*                                 1515 S Federal Hwy., Suite 404
Adam G. Price*                                      Boca Raton, Florida 33432
7000 North MoPac Expressway, Suite 350              Telephone: (561) 447-8888
Austin, Texas  78731
Telephone: (512) 539-2626


* Admitted *Pro Hac Vice*                           ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I, Loren B. Donnell, hereby certify that a true copy of the above document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 5, 2015.

/s/ *Loren B. Donnell*
Loren B. Donnell

*Attorney for Plaintiffs*