UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------X

CELINA ROBERTS, ANTHONY SCIOTTO,
ERIC BURNS, KERI DICKEY, ANGELA
RAMIREZ, DIANA SANTILLAN, CAMILLE
GHANEM, ARNOLD WILLIAMS,
OLUWATOSIN BABALOLA, TOMMY
ZAHTILA, TODD JUSTICE, GIANFRANCO
PIROLO, MICHAEL O'GRADY,
and JASON FOSTER, individually
and on behalf of all other persons similarly situated,

                       Plaintiffs,

            -against-

THE TJX COMPANIES, INC., a Delaware
Corporation; MARSHALLS OF MA, INC.,
a Massachusetts Corporation; MARMAXX
OPERATING CORP., a Delaware Corporation,
d/b/a MARSHALLS HOMEGOODS, d/b/a
MARSHALLS, d/b/a T.J. MAXX HOMEGOODS;
HOMEGOODS, INC., a Delaware Corporation,

                  Defendants.

-------------------------------------------------------------X

CIVIL ACTION

Case No.:  1:13-CV-13142 (ADB)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE CLAIMS OF
PLAINTIFFS ANTHONY SCIOTTO AND TOMMY ZAHTILA**

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS                                                    i

TABLE OF AUTHORITIES                                                ii

I.  INTRODUCTION                                                     1

II.  SUMMARY JUDGMENT STANDARD OF REVIEW IN FLSA CASES               2

III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST
BE DENIED BECAUSE THERE ARE GENUINE DISPUTES OF
MATERIALFACTS AS TO THE APPLICATION OF THE
EXECUTIVE EXEMPTION TO PLAINTIFFS                                    3

   A.  Plaintiffs' Primary Job Duty Was Not Management               5

      1.  Plaintiffs' Most Important Duty, Which Required the
      Majority of Their Workday, Was the Performance of
      Non-Exempt Work.                                               9

      2.  Plaintiffs Were Not Free From Direct Supervision          14

      3.  Relationship Between Plaintiffs' Wages and Comparable
      Nonexempt Employees' Wages                                    17

      4.  Customarily and Regularly Directing the Work of Two or
      More Employees                                                17

      5.  Plaintiffs Occasional Suggestions Were Not Given
      Particular Weight                                             18

IV.  CONCLUSION                                                     20

## TABLE OF AUTHORITIES

Cases ..........................................................................................................................Page(s)

*Ale v. TVA*,
   269 F.3d 680 (6th Cir. 2001) ...........................................................................10

*Anderson v. Dolgencorp of New York, Inc.*,
   2011 WL 1770301 (N.D.N.Y. May 6, 2011) ...............................................9, 14

*Arnold v. Ben Kanowsky, Inc.*,
   361 U.S. 388 (1960) ....................................................................................6, 7, 8

*Barreto v. Davie Marketplace, LLC*,
   331 Fed. Appx. 672 (11th Cir. 2009) .........................................................9, 22

*Carhuapoma v. New York-Presbyterian Healthcare Sys.*,
   2013 WL 1285295  (S.D.N.Y. Mar. 29, 2013) ..............................................17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..........................................................................................5

*Clougher v. Home Depot USA*,
   696 F. Supp. 2d 285 (E.D.N.Y. 2010) ...........................................................17

*Copas v. East Bay Municipal Utility Dist.*,
   61 F. Supp. 2d 1017 (N.D. Cal. 1999)..............................................................6

*Corning Glass Works v. Brennan*,
   417 U.S. 188 (1974) ..........................................................................................6

*Costello v. Home Depot USA, Inc.*,
   928 F. Supp. 2d 473 (D. Conn. 2013)........................................................11, 22

*Davis v. Wal-Mart Stores, Inc.*,
   2010 WL 3718834 (M.D. Ala. Sept. 13, 2010) ..............................................11

*Dole v. Papa Gino's of Am., Inc.*,
   712 F.Supp. 1038 (D. Mass 1989)....................................................................12

*Donovan v. Burger King*,
   672 F.2d 221 (1st Cir. 1982)........................................................................9, 11

*Farmers Ins. Exch. v. RNK, Inc.*,
   632 F.3d 777 (1st Cir. 2011)..............................................................................5

FLSA. *De Jesus-Rentas v. Baxter Pharmacy Servs. Corp.*,
   44 F.3d 1060 (1st Cir. 1995)..............................................................................5

*Green v. Harbor Freight Tools USA, Inc.*,
   2013 WL 4504316 (D. Kan. Aug. 23, 2013) .............................................17, 22

*Greenburg v. P.R. Mar. Shipping Auth.*,
   835 F.2d 932 (1st Cir. 1987)..............................................................................6

*Griggs-Ryan v. Smith*,
   904 F.2d 112 (1st Cir. 1990)..............................................................................5

*Guthrie v. Lady Jane Collieries*,
   722 F.2d 1141 (3d Cir. 1983) ..........................................................................11

*Harris v. Dist. of Columbia*,
   741 F. Supp. 254 (D.D.C. 1990)....................................................................6, 8

*Henry v. Quicken Loans, Inc.*,
  698 F.3d 897 (6th Cir. 2012) ..................................................................8
*Hickton v. Enter. Rent-a-Car Co.*,
  2012 WL 4356762 (W.D. Pa. July 20, 2012) ......................................9, 14, 18, 22
*Indergit v. Rite Aid Corp.*,
  2010 WL 2465488 (S.D.N.Y. Mar. 31, 2010)....................................................9, 14
*Johnson v. Big Lot Stores, Inc.*,
  604 F. Supp. 2d 903 (E.D. La. 2009)...........................................................8, 11
*Jones v. Virginia Oil*,
  69 Fed. Appx. 633 (4th Cir. 2003) ..............................................................10
*Madden v. Lumber One Home Ctr., Inc.*,
  745 F.3d 899 (8th Cir. Mar. 17, 2014) .......................................................21, 22
*Martinez v. Hilton Hotels Corp.*,
  930 F.Supp.2d 508 (S.D.N.Y. 2013) ..............................................................8
*Marzuq v. Cadete Enterprises, Inc.*,
  2013 WL 5437034 (D. Mass. Sept. 25, 2013)......................................................8
*McCullough v. Aramark Educ. Servs.*,
  2004 WL 813005 (M.D.N.C. Feb. 5, 2004) .....................................................9, 14
*McLaughlin v. Boston Harbor Cruise Lines, Inc.*,
  419 F.3d 47 (1st Cir. 2005) ......................................................................6
*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ...............................................................11, 19
*Murphy v. Town of Natick*,
  516 F. Supp.2d 153 (D. Mass. 2007) ..............................................................7
*National State Bank v. Federal Reserve Bank*,
  979 F.2d 1579 (3d Cir. 1992) .....................................................................6
*Nicholson v. Bangor Historic Track, Inc.*,
  No. 2:11-CV-00347-NT, 2013 WL 685337 (D. Me. Feb. 25, 2013) ..................................8
*O'Connor v. Steeves*,
  994 F.2d 905 (1st Cir. 1993)......................................................................5
*Plaunt v. Dolgencorp, Inc.*,
  No. 1:09-CV084, 2010 WL 5158620 (M.D. Pa. Dec. 14, 2010)......................................16
*Resolution Trust Corp. v. Gill*,
  960 F.2d 336 (3d Cir. 1992) ......................................................................6
*Roberts v. Dolgencorp*,
  2010 WL 4806792 (M.D. Tenn. Nov. 18, 2010) ..................................................10
*Rodriguez v. Farm Stores Grocery, Inc.*,
  518 F.3d 1259 (11th Cir. 2008) .................................................................11
*Rooney v. Town of Groton*,
  577 F. Supp. 2d 513 (D. Mass. 2008)..............................................................7
*Rubery v. Buth-Na-Bodhaige, Inc.*,
  470 F. Supp. 2d 273 (W.D.N.Y. 2007).....................................................6, 14, 17, 20
*Schaefer v. Indiana Michigan Power Co.*,
  358 F.3d 394 (6th Cir. 2004) ....................................................................12
*Tamas v. Family Video Music Club, Inc.*,
  2013 WL 4080649 (N.D. Ill. Mar 28, 2013) ....................................................8, 14

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,*
    321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944).................................................6
*Turner v. Ferguson,*
    149 F.3d 821 (8th Cir. 1998) ........................................................................6
*Wynne v. Tufts Univ. Sch. Of*
    *Med.*, 976 F.2d 791 (1st Cir. 1992) ..............................................................5

Rules

Fed. R. Civ. P. 56(a) .........................................................................................5
Rule 56................................................................................................................6

Regulations

29 C.F.R. 541.100...............................................................................................7
29 C.F.R. 541.700.............................................................................................19
29 C.F.R. § 541.104(c)......................................................................................20
29 C.F.R. § 541.105...........................................................................................21
29 C.F.R. § 541.106(a)......................................................................................11
29 C.F.R. § 541.700(a)........................................................................................8
29 C.F.R. §541.104(a).......................................................................................20
5 C.F.R. § 551.202(e) .........................................................................................7

## I.   **INTRODUCTION**

The parties have just completed first-stage discovery focused on issues relevant to FLSA conditional certification. Ignoring the evidence adduced to date, Defendants TJX Companies, Inc., et al. ("Defendants," "TJX," or "Marshalls") now move for summary judgment against Plaintiffs Anthony Sciotto ("Sciotto") and Tommy Zahtila ("Zahtila").[1]

Zahtila and Sciotto worked as Operations Assistant Store Managers ("Operations ASMs") at Defendants' Marshalls stores. They were not authorized to use discretion regarding company policies and procedures, nor did they have authority over other employees. Zahtila and Sciotto lacked authority to hire, promote, discipline or terminate hourly associates, or award employee salary increases. Rather, they spent the majority of their time ringing the register, stocking shelves, unloading trucks, and cleaning the store (including the bathroom). Plaintiffs' depositions are replete with testimony stating there was simply no time to manage those around them, which was the Store Manager's (SM's) job. Plaintiffs testified that the SM was in the store with them the vast majority of time, and that Plaintiffs spent the majority of their time performing associate level tasks. During the minimal time they were so-called "managing," performing screening interviews, submitting draft performance reviews, or giving employees feedback (testified by Plaintiffs as "coaching in the moment"), they were working under the direction of their SM and did not exercise any meaningful discretion, as they were strictly limited by TJX corporate policies and procedures.

---

[1] On July 23, 2015, Plaintiffs moved for conditional certification of a class of all current and former Merchandise Assistant Store Managers ("Merchandise ASMs") at Defendants' Marshalls and HomeGoods stores. (Dkt. 124 & 125.) Plaintiffs have not moved for conditional certification of Operations Managers, which is the position Plaintiffs Zahila and Sciotto held. In that motion, Plaintiffs present substantial evidence that, pursuant to company-wide policies and procedures, all Merchandise ASMs have the same primary job duties. Importantly, Defendants' instant motion for summary judgment involves two individual Operations ASMs; it does not involve any Merchandise ASMs, which are the subject of Plaintiff's Motion for Notice and Conditional Certification. Thus, the two outstanding motions – Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Conditional Certification – are distinct as to both law and facts.

Even in the rare event that the SM was not present, Plaintiffs had to seek approval from the TJX corporate office in order to make any decision, including but not limited to, changing the temperature of the store, changing the music playing in the store, contacting an outside vendor to fix a repair, sending employees home early to save payroll, and closing the store in an emergency.

In making their motion, Defendants ignore the vast majority of Plaintiffs' testimony and engage in a tortured manipulation of the facts to manufacture a claim that there is no factual dispute.[2] Defendants cherry-pick testimony, taking Plaintiffs' testimony completely out of context, and continuously mischaracterize Plaintiffs' testimony regarding their employment and the jobs they actually performed. Disregarding this evidence, Defendants argue that Plaintiffs were properly classified as exempt executives under the Fair Labor Standards Act. <u>Defendants are wrong</u>.

Defendants' motion must be denied because there are genuine disputed material factual issues as to the duties and tasks that Plaintiffs actually performed as Operations Assistant "Managers." These are precisely the issues that a fact-finder, not the Court, must resolve. The fact that there are obvious issues of fact is proven by Defendants' own Rule 56.1 statements, which are 24 pages long and contain over 80 paragraphs. (ECF. Doc. 127). There are numerous issues of disputed material facts; accordingly, Defendants' motions should be denied.

## II.    SUMMARY JUDGMENT STANDARD OF REVIEW IN FLSA CASES

The purpose of summary judgment "is to pierce the boilerplate pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. Of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is only granted when the movant

---

[2] Plaintiffs' Statement of Facts are contained throughout Plaintiffs responses to Defendants 56.1 as well as in Plaintiffs Counter Statement, provided pursuant to Local Rule 56.1.

shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).

The employer bears the burden of proving an employee is exempt under the FLSA. *De Jesus-Rentas v. Baxter Pharmacy Servs. Corp.*, 44 F.3d 1060, 1070 (1st Cir. 1995). Because of the remedial nature of the FLSA, exemptions are to be narrowly construed against employers asserting them. *Id.* In assessing a summary judgment motion, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted); *accord O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

### III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THERE ARE GENUINE DISPUTES OF MATERIAL FACTS AS TO THE APPLICATION OF THE EXECUTIVE EXEMPTION TO PLAINTIFFS.

"Deciding whether an employee is exempt must be a voyage through fact-bound waters. Although there are great many stars of law to navigate by, the course turns on the facts of an employee's job duties." *Harris v. Dist. of Columbia*, 741 F. Supp. 254, 259 (D.D.C. 1990). Defendants' thus faces two burdens in making its summary judgment motions: (1) a moving party's burden under Rule 56 for summary judgment; and (2) an employer's burden to support its affirmative defense that an employee is exempt from overtime under the FLSA. *See, e.g., Corning*

3

*Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (employer bears burden of demonstrating it is entitled to exemption in FLSA case). Due to the "FLSA's 'remedial and humanitarian' purposes, the statute 'must not be interpreted or applied in a narrow, grudging manner.'" *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 58 (1st Cir. 2005) quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). *See also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) ("exemptions are to be narrowly construed against the employer seeking to assert them"). Where the employer seeks summary judgment on its own assertion that the plaintiff is exempt from the FLSA, the employer's burden is particularly high.[3]

Invariably, "in determining whether an employee is exempt, there must be an intensive inquiry into the facts of the particular case." *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273, 276 (W.D.N.Y. 2007). In addition, "the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee." 5 C.F.R. § 551.202(e); *see also* citations at pp. 15-16 below.

The executive exemption applies when an employee is: (1) compensated no less than $455 per week; (2) the employee's "primary duty" is management; (3) the employee customarily and regularly directs the work of two or more employees; and (4) the employee has the authority to hire or fire, or her suggestions and recommendations regarding the same are given "particular weight." 29 C.F.R. 541.100. Summary judgment is only appropriate when the employer proves all four prongs of this test through record evidence, without disputed material fact. *Murphy v. Town of Natick*, 516 F. Supp.2d 153, 160 (D. Mass. 2007). FLSA exemptions, including the executive

---

[3] *See Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998) ("summary judgments in favor of parties who have the burden of proof are rare, and rightly so"). *See also Copas v. East Bay Municipal Utility Dist.*, 61 F. Supp. 2d 1017 (N.D. Cal. 1999); *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 341 (3d Cir. 1992).

exemption, must be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 523 (D. Mass. 2008) (citing *Arnold v. Ben Kanowsky Inc.*, 361 U.S. 388, 392, n. 4 (1960).

While Plaintiffs concede that Defendants' satisfy the first factor of the executive exemption (salary), they deny that any of the other three factors are satisfied. Additionally, Defendants have provided and rely upon declarations of other employees to support their motion. However, the truthfulness of these declarations is questionable. Sciotto testified that he was told by several employees that the declarations he was shown during his deposition were "altered." Sciotto Dep. p. 249: 3-12; 22: 9-23.[4] The Defendants have, therefore, presented a credibility contest to the Court, which in turn confirms, along with the other disputed material facts set forth in more detail below, that Defendants' motion for summary judgement must be denied.

### A. Plaintiffs' Primary Job Duty Was Not Management

"Primary duty" means "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Facts that help determine an employee's primary duty include: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id.* No one factor is dispositive. *Marzuq v. Cadete Enterprises, Inc.*, 2013 WL 5437034 at *4 (D. Mass. Sept. 25, 2013) (citing 29 C.F.R. § 541.700(a)); *see also Harris v. Dist. of Columbia*, 741 F. Supp. 254, 259

---

[4] See Anthony Sciotto Deposition, annexed to Declaration of Justin R. Marino as Exhibit 15 (hereinafter cited to by deponent's last name and relevant page number). For ease of reference, Plaintiffs did not resubmit the deposition testimony with its opposition papers.

(D.D.C. 1990); *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 523 (S.D.N.Y. 2013); *Johnson v. Big Lot Stores, Inc.*, 604 F. Supp. 2d 903, 908 (E.D. La. 2009).

First and foremost, the determination of the actual daily duties performed by a plaintiff is a question of fact. *Nicholson v. Bangor Historic Track, Inc.*, No. 2:11-CV-00347-NT, 2013 WL 685337, at *8 (D. Me. Feb. 25, 2013) (citing *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012)). When a defendant and plaintiff offer contradictory characterizations of the plaintiff's daily duties, the primary-duty prong must be left to the trier of fact. *Id.*

Here, Defendants rely on extracted bits and pieces of Plaintiffs' deposition testimony (often taken out of context). Defendants' reassembly of those pieces into something that bears little resemblance, if any, to their original form is disputed by Plaintiffs and is wholly inadequate to support a motion for summary judgment on the executive exemption. *See, supra* at pp. 10-12. Thus, Defendants' motion for summary judgment must be denied. *See, e.g.*, *Tamas v. Family Video Music Club, Inc.*, 2013 WL 4080649 at *24 (N.D. Ill. Mar 28, 2013) (denying summary judgment where plaintiff provided evidence that she performed far more non-exempt than exempt work); *Hickton v. Enter. Rent-a-Car Co.*, 2012 WL 4356762, at *65-66 (W.D. Pa. July 20, 2012) (denying summary judgment because "a jury could reasonably determine that [plaintiff's] limited exempt duties were much less important than her nonexempt duties"); *Anderson v. Dolgencorp of New York, Inc.*, 2011 WL 1770301 at *24-41 (N.D.N.Y. May 6, 2011) (denying summary judgment where the parties presented numerous competing factors weighing on the relative importance of exempt versus non-exempt work); *Indergit v. Rite Aid Corp.*, 2010 WL 2465488 , at *7 (S.D.N.Y. Mar. 31, 2010) (explaining that due to the required deeply factual inquiry, courts are often reluctant to grant summary judgment based on the executive exemption); *Barreto v. Davie Marketplace, LLC*, 331 Fed. Appx. 672, 676 n.1 (11th Cir. 2009) (noting that the factual question of whether the

non-exempt duties are comparatively more important than the exempt duties are within the exclusive province of the jury); *McCullough v. Aramark Educ. Servs.*, 2004 WL 813005 (M.D.N.C. Feb. 5, 2004) (denying summary judgment where there was conflicting evidence as to whether the employee's primary duty was management).

Defendants rely on *Donovan v. Burger King,* 672 F.2d 221 (1st Cir. 1982) for the proposition that an employee is "in charge" of a store even if they spend the majority of their time performing non-exempt work, and to support that management is Plaintiffs' primary duty. This reliance is similarly flawed. First, there are genuine material factual disputes as to whether Plaintiffs were "in charge." In fact, the evidence overwhelmingly proves otherwise. Plaintiffs testified that their SMs were present around 80% of the time, that they were micro-managed by their SMs, and that they had to get the authorization of their SMs before making the most basic and routine decisions even if they were the sole manager physically at the store. Sciotto Dep. pp. 76: 20-22, 61: 21-24, 62: 5-7, 62: 15-18; Zahtila Dep. pp. 59: 18-24; 70: 264-265.[5] This weighs against a finding that Plaintiffs were in fact "in charge."  Several other cases cited by Defendants rely on that same misplaced argument. *See e.g., Roberts v. Dolgencorp,* 2010 WL 4806792 (M.D. Tenn. Nov. 18, 2010) (recognizing that the plaintiff was the most senior employee in the store and was only supervised by a manager who visited "less than once a month," and she admitted that she was the "leader" and "in charge"); *Jones v. Virginia Oil,* 69 Fed. Appx. 633, 635 (4th Cir. 2003) (admitting that employee was the most senior employee in the store on a daily basis, referred to

---

[5] See Tommy Zahtila Deposition, annexed to Declaration of Justin R. Marino as Exhibit 2 (hereinafter cited to by deponent's last name and relevant page number).  For ease of reference, Plaintiffs did not resubmit the deposition testimony with its opposition papers.

themselves as "captain of the ship," and the only supervision was by a district manager who visited

a few times a week).[6]

Second, it is important to point out that "the words 'in charge' are not a magical incantation

that render an employee a bona fide executive regardless of his actual duties," *Ale v. TVA*, 269

F.3d 680, 691 (6th Cir. 2001). As courts have recognized, an employee's status as in charge does

not excuse a thorough analysis of the primary duty factors:

> The regulation clearly directs the court's attention to several factors, which must be
> considered before a determination of 'primary duty of management' may be made. Thus,
> the regulation requires more than a conclusory leap from a holding of 'in charge' to a
> conclusion that a 'primary duty of management' has been established.

*Guthrie v. Lady Jane Collieries,* 722 F.2d 1141, 1145 (3d Cir. 1983).[7]

Third, *Donovan* was decided after a full trial, involving the direct and cross examinations

of numerous witnesses. *Donovan* 672 F.2d at 223.  Finally, the assistant managers in *Donovan* had

decision-making authority in the absence of a manager, and performed managerial tasks

concurrently with nonexempt tasks; that is not present here. *Id.* Plaintiffs have provided ample

testimony that they simply could not manage while tasking. *See, e.g.* Zahtila Dep. p. 75:11-20

(explaining how he is unable to "manage or supervise or direct anybody on the sales floor when

I'm tied down and stuff up front ringing a register. At that point I have no control."); Sciotto Dep.

pp. 99-100 (explaining how when tasking he was "not in a supervisory role" because  he had to

---

[6] Indeed, Sciotto flatly denied that he was "in charge:"
> Q:  But at the end of the day, is it fair to say that assistant store managers and the store managers are
> responsible for ensuring the smooth operation of the business?
> A: No.
> Q:  Why not?
> A:  Because it's the store manager that takes the ultimate fall for everything and they make all the
> important decisions and dole them out to assistant managers.
> Sciotto Dep. at p. 289: 3-12.

[7] *See also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1272, n. 60 (11th Cir. 2008) ("Courts cannot rely
solely on whether an employee was 'in charge' of the store. Rather, they must evaluate the employee's actual job
duties."); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008).

focus on the task at hand); *see also Costello v. Home Depot USA, Inc.*, 928 F. Supp. 2d 473, 481 (D. Conn. 2013) (summary judgment denied where defendant provided no evidence as to whether plaintiff was capable of simultaneously performing managerial and non-managerial tasks); *Davis v. Wal-Mart Stores, Inc.*, 2010 WL 3718834 (M.D. Ala. Sept. 13, 2010); *Morgan*, 551 F.3d at 1272-73 ("a store manager unloading a truck and stocking the storeroom was not concurrently supervising the cashier out front"); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 914 (E.D. La. 2009) (concurrent performance of managerial and non-managerial duties is not the extent of the inquiry as the regulations provide that, "[w]hen an employee performs exempt and nonexempt work concurrently, whether the exemption is met is determined on a case-by-case basis.") (citing 29 C.F.R. § 541.106(a)).

Analysis of all of the following factors leads to the same conclusion – there are genuine material factual issues in dispute over whether the Plaintiffs primary job duty was management.

### 1. *Plaintiffs' Most Important Duty, Which Required the Majority of Their Workday, Was the Performance of Non-Exempt Work.*

Defendants rely on their own TJX job descriptions for Operations ASMs as "fact" in their misguided attempt to demonstrate that management was the primary duty of Zahtila and Sciotto. Def. Motion at pp.7-8. Citing these job descriptions, Defendants argue that Plaintiffs were "expected to" perform, and/or were "responsible for" an extensive list of managerial tasks. Def. Motion at pp.7-8. This argument fails for two reasons.

First, the mere "authorization" or "expectation" of an employee to perform managerial duties is <u>not</u> controlling on the issue of primary duty. *See Dole v. Papa Gino's of Am., Inc.*, 712 F.Supp. 1038, 1044-45 (D. Mass 1989). Instead, the issue hinges on whether the defendant has produced sufficient evidence of the managerial duties (and relative importance of those duties) *actually performed* by the assistant managers. *Id.*; *see also Schaefer v. Indiana Michigan Power*

*Co.*, 358 F.3d 394, 400-01 (6th Cir. 2004) ("We focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions and performance evaluations.").

Secondly, Defendants argue that the importance of Plaintiffs' managerial tasks is confirmed by Plaintiffs' performance reviews. This argument fails for the same reason – they do not describe what they actually did. Performance reviews, like job descriptions, are not persuasive evidence on the issue of primary duty. *See Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 400-01 (6th Cir. 2004) ("We focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in . . . performance evaluations."). Plaintiffs repeatedly testified that the phrasing of their performance reviews was not an accurate reflection of the duties they actually performed on a day-to-day basis. Zahtila Dep. pp. 182:03-183:14 (explaining that his SM removed any reference to his performance of non-exempt work in his performance evaluation to "beef up" his duties and make them seem more managerial); Sciotto Dep. p. 288: 2-8 (explaining that his reviews would be doctored as they would "want my answers to be more geared towards managerial functions instead of reality and I would write my reviews based on reality."). Sciotto explained that the reviews were embellished to make it "look like there was management duties involved in the development plan," because "they don't want to own up to the fact that we task as ASMs." Sciotto Dep. pp. 349: 9-13; 351: 23-25; 352: 2-4.

For example, although Zahtila's performance review states that he "continued to work closely with the backroom coordinator and stockroom associates to execute Best Methods and focus on coaching and training to develop associates to excel in Best Methods procedures and to maintain door-to-floor consistency throughout F/Y13," Zahtila testified that his actual duties in the backroom were to support the timely execution of the door-to-floor policy by personally unloading

the trucks and processing the freight alongside the hourly employees. Zahtila Dep. pp. 184:22-185:06. Similarly, although Zahtila's performance review states in the comments that he needed to "upgrade the quality of [the] markdown team and hold them accountable for company programs and standards," Zahtila testified that in reality this was his SM's way of reminding Zahtila that, as an ASM, he personally needed to perform markdowns alongside the hourly employees in order to complete the corporate-mandated markdowns within the corporate-prescribed timeline. Zahtila Dep. pp. 185:15-188:20.

Likewise, Sciotto's review stated that he promoted two associates to coordinator, but he explained that he "never had any communication with these two girls in my life outside of hello." Sciotto Dep. p. 238: 19-25. Sciotto's review stated that he oversees the receiving process, weekly monitors stocking, processing markdown teams per activity, coaches in the moment and ensures DTF and markdown tracking is to company standard. When asked if that was accurate, Sciotto answered: "Absolutely not." Sciotto p. 105: 7-8. "I did not oversee processes like that. I tasked." Sciotto Dep. p. 106: 19-21. Scoitto's review also alleged that he successfully rolled out Kronos in both the Westbury and Elmont stores. Sciotto explained "[t]hat is a complete fabrication. Complete." Sciotto Dep. p. 207: 7-8. Further, Sciotto responded to the statement by saying "I don't even know what to say to this," and "I don't even know what that would entail." Sciotto Dep. p. 207: 10-15.

Most importantly, Plaintiffs adamantly dispute Defendants' mischaracterization of the testimony, which presents a material dispute regarding Plaintiffs' primary duty. Summary judgment must be denied where there is a material dispute regarding the employee's primary duty. *See. e.g., Tamas,* 2013 WL 4080649, at *24 (denying summary judgment where plaintiff provided evidence that she performed far more non-exempt than exempt work); *Hickton,* 2012 WL 4356762,

at *65-66 (summary judgment denied because "a jury could reasonably determine that [plaintiff's] limited exempt duties were much less important than his nonexempt duties"); *Anderson*, 2011 WL 1770301, at * 24-41 (denying summary judgment where the parties presented numerous competing factors weighing on the relative importance of exempt versus non-exempt work); *Indergit*, 2010 WL 2465488, at *7 (primary duty issue involves a "deeply factual ... inquiry ... courts are often reluctant to grant summary judgment based on the executive exemption"); *McCullough, McCullough,* 2004 WL 813005, at *6-7 (summary judgment denied where there was conflicting evidence that the employee's primary duty was cooking, not management); *Rubery,* 470 F. Supp. 2d at 277 (summary judgment denied where employer claimed plaintiff "ran the show" and plaintiff testified to performing 90% hourly work).

Besides the clear factual disputes between the Defendants' reliance on the job descriptions and performance reviews and the reality of what Plaintiffs' jobs actually entailed, there are clear differences about how Plaintiffs' deposition testimony relates to their misclassification. While Defendants' Motion states that "Zahtila was responsible for scheduling shift employees," Zahtila's actual testimony was that Kronos, the company's automated scheduling system, would generate the schedule based on the store's corporate-dictated payroll budget. Zahtila Dep. p. 52: 02-07. Zahtila had absolutely no role in creating the budget. Zahtila Dep. p. 194: 06:09. His only role with respect to the computer-generated schedule was to "tweak it" by "making small, little adjustments," such as making sure that Kronos had assigned the corporate-ordered number of employees to work on the day the merchandise-delivery truck was scheduled to arrive. Zahtila Dep. p. 205: 21-07.

And, while Defendants' Motion states that Zahtila "had responsibility" over his store's loss prevention program, Zahtila's actual testimony was as follows: "The only duties that I had with loss prevention was customer service. We actually had a loss prevention team in the stores, so they

12

took care of monitoring and observing customers that walked through the store." Zahtila Dep. p.

277:07-25. Upon further questioning by defense counsel, Zahtila added that he also "had a role"

in ensuring that merchandise had appropriate security tags, which was a loss-prevention function.

Zahtila Dep. p. 277:18-25. Taken together, this testimony does not suggest, much less establish

for summary judgment purposes, that Zahtila was "responsible for" the store's loss prevention

program as Defendants suggest.

Defendants argue that Sciotto admitted that even when he was "electing" to task he was

still able to adequately manage the store. Def. Mot. at p. 13. However, Sciotto explained that was

not the case, "I am focused on tasking at the time so I'm not in a supervisory role making sure that

– so if I happen to look and see something not being done right, at that moment I would be able to

coach in the moment. But that time is so small and constricted because I am focused at the task at

hand." Sciotto Dep. pp. 99-100. Further, he explained that there were many times he was in the

stockroom cleaning, and at that time there was no way he was supervising the sales floor. Sciotto

Dep. p. 99: 5-10. Defendants also argue that Sciotto stated that the SM never left his office, and

this made Sciotto the most senior employee. Def. Mot. at p. 14. However, Sciotto's testimony

actually stated that 9 times out of 10, the SM was the Manager on Duty and it was the SM who

directed employees because the ASMs were tasking and simply could not do it. Sciotto Dep. pp.

70: 8-12; 71: 8-14. This testimony does not suggest, as Defendants argue, that Sciotto was able to

manage even when tasking, nor that he was performing managerial functions as required by

summary judgment standards.

In short, Defendants' contention that Plaintiffs' managerial duties were more important

than their non-managerial duties, is simply false. The respective stores in which Plaintiffs worked

could not have achieved their ultimate objective – to offer "an ever changing assortment" of brand-

name merchandise at a discounted price – without the Plaintiffs primarily performing hourly work. Indeed, the Plaintiffs' non-exempt labor was <u>so</u> important and necessary to the execution of such policies as Door-to-Floor / Freight in 48, Store-Generated Markdowns / 5 in 5, and Recovery of the Store, that it took up approximately 70% of their time. Zahtila Dep. p. 312: 18-20; Sciotto Dep. p. 354: 4-5.[8] On this record, a reasonable and prudent jury easily could conclude that Defendants valued Zahtila and Sciotto's non-managerial contributions more highly than their managerial functions. *See Plaunt v. Dolgencorp, Inc.*, No. 1:09-CV084, 2010 WL 5158620, at *8 (M.D. Pa. Dec. 14, 2010). To be sure: "The jury could presume that if [Defendants] truly derived more value from [Plaintiffs'] management skills, [Defendants] would have encouraged [Plaintiffs] to spend more time on those tasks." *Id.* Similarly, based on Defendants' refusal to allot more payroll budget for hourly employees, which forced Plaintiffs to perform the low-level tasks themselves, "the jury could reasonably find that the manual labor was what [Defendants] most valued." *Id.* In light of these reasonable conclusions, Defendants' burden of proof to establish the executive exemption applies to Plaintiffs and the fact that the Court must view the entire record in the light most hospitable to the Plaintiffs and indulge all reasonable inferences in Plaintiffs' favor, Defendants' Motion for Summary Judgment must be denied as a matter of law.

## 2. *Plaintiffs Were Not Free From Direct Supervision*

Defendants' motion should also be denied because there is a material dispute as to whether Plaintiffs were free from direct supervision while working as Operations ASMs. "Both freedom from supervision and the exercise of discretionary authority contemplate decisions of the kind and

---

[8] Several other witnesses have also testified to spending the majority of their time performing non-exempt tasks. *See* Exhibit A, Shawn Corway Deposition, annexed to the Declaration of Sara Wyn Kane at pp. 349, 352, 406 (spent 75%-80% of time on non-exempt tasks); See Exhibit B, Gianfranco Pirolo Deposition, annexed to the Declaration of Sara Wyn Kane at p. 320 (80%-85% of time on non-exempt tasks). Deposition exhibits will be cited by last name and relevant page number.

quality normally made by persons formulating policy within their spheres of responsibility, or who participate in this process, or who exercise authority to commit the employer in a substantial respect, financial, or otherwise." *Clougher v. Home Depot USA,* 696 F. Supp. 2d 285, 291 (E.D.N.Y. 2010); *see also Green v. Harbor Freight Tools USA, Inc.*, 2013 WL 4504316 at *40 (D. Kan. Aug. 23, 2013) ("[d]espite the fact that [p]laintiffs had some level of discretion in certain discrete areas, however, genuine issues of disputed material facts exist as to whether overall [p]laintiffs had a level of discretion consonant with an employee whose duties are primarily managerial."); *Carhuapoma v. New York-Presbyterian Healthcare Sys.*, 2013 WL 1285295 at *33-34 (S.D.N.Y. Mar. 29, 2013).

When the type of independent authority an employee is able to exercise is disputed, it is an issue of fact requiring a credibility assessment. *Rubery,* 470 F. Supp. 2d at 277 (denying summary judgment where "…issues of credibility may be involved in the final resolution of this issue" as there were issues of fact regarding what the plaintiff did during the workday and "what type of independent authority she had."). In *Hickton,* 2012 WL 4356762 at * 67-68, summary judgment was also denied where plaintiff had to check with her manager before making most decisions, and called her manager when he was not present. The same is true here. Plaintiffs were never in charge of the store because: (1) the SM was present in the store the vast majority of time with Plaintiffs and retained all authority and control; and (2) during the limited times the SM was not present, the SM would leave detailed instructions and any substantial decisions would still require a call to either the SM or District Manager. Zahtila testified that the Store Manger would set all the expectations and he would just follow through with them. Zahtila Dep. p. 230: 14-16. "As assistant managers, we never used stats to operate the business. A store manager would delegate to us what

needed to get done and we would do it. We were tasked to get it done." Sciotto Dep. p. 214: 17-22.

The Store Manager was the only one to schedule or have people moved to different departments; the only one who could approve the budget; and the one who directed the processing of the merchandise because the SM had time to walk the store to identify which departments were light. Zahtila Dep. pp. 197: 16-18; 198: 2-12; 293: 15-19. Sciotto explained that any decision with any level of importance needed to be made by the SM. Sciotto Dep. pp. 264-265. If the store was busy and Sciotto needed to go task, he would have to ask the SM where he should go work – "want me to stay in back and unload, want me to go up front and ring?" Sciotto Dep. p. 75.

Even when the SM was not there, he/she would leave detailed instructions about what needed to be done, and if there was an issue in the store, the SM or District Manager had to be contacted. Zahtila Dep. p. 62: 5-7. Zahtila could not make decisions regarding anything that would affect the business, "cutting hours or anything like that, I still needed to reach out to my Store Manager for approval on that." Zahtila Dep. p. 62: 15-18. Zahtila did not have any discretion to deal with customer complaints – if a customer complained he would get the SM, and if the SM was not there, he would tell the customer to either call the 1-800 number or call the next day to speak to the SM. Zahtila Dep. p. 287: 13-25.

Defendants' allegations that Plaintiffs were free from direct supervision because they used their discretion when performing their duties is at odds with Plaintiffs' deposition testimony. The evidence shows that Plaintiffs were micromanaged by their SMs and restricted by corporate policies and procedures. Because there is a material dispute over the extent to which Plaintiffs' operated independently of their supervisors' directives, Defendants' motion for summary judgment must be denied.

16

### 3. *Relationship Between Plaintiffs' Wages and Comparable Nonexempt Employees' Wages*

Plaintiffs' wages, when compared to those of nonexempt employees' wages for similar work, weigh against the application of the executive exemption. The Court must consider Plaintiffs' wages in relation to the wages paid to other employees for the kind of nonexempt work performed by Plaintiffs. 29 C.F.R. 541.700. On this point, Defendants argue that, even if Plaintiffs worked 60 hours per week, they still earned substantially more than a new hourly associate, at $7.25/hour, could earn in a week. Def. Motion at p.16. Plaintiffs submit that Defendants' argument is flawed in that they should not compare the wages of an Operations Assistant Manager to a new hourly associate. *Cf. Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1271 (11th Cir. 2008) (comparing store managers' average salary with the average hourly wage of assistant store managers, the non-exempt position immediately below store manager).   Thus, a better comparison would be between the hourly wages of a non-exempt Coordinator and the Plaintiffs' salaries, as the non-exempt duties performed by a Coordinator are analogous to the non-exempt duties performed by Plaintiffs on a day-to-day basis. As Zahtila testified, key-carrying Coordinators were authorized to, and actually did perform all or nearly all of the non-exempt duties that Plaintiffs performed on a daily basis. Zahtila Dep., p. 346: 8-12. As "merits" discovery has yet to be conducted in this action, Plaintiffs are not in a position to provide additional information as to the salary comparison between Plaintiffs and key carriers and/or coordinators.

### 4. *Customarily and Regularly Directing the Work of Two or More Employees.*

Defendants have failed to provide record evidence sufficient to meet their burden of proving Plaintiffs customarily and regularly directed the work of two or more full-time employees. The regulations and case law provide that an exempt employee "must customarily and regularly direct the work of two or more [full-time or their equivalent] employees." 29 C.F.R. §541.104(a).

17

"An employee who merely assists the manager . . . and supervises two or more employees only in the actual manager's absence does not meet this requirement." 29 C.F.R. § 541.104(c). Summary judgment should be denied where, as here, there are "material issues of fact regarding the actual number of subordinate hours plaintiff[s] supervised each week." *Rubery,* 470 F. Supp. 2d at 277.

Defendants' only "evidence" that Plaintiffs meet this element is that they were responsible for overseeing the front-end and back of the store, and in this capacity supervised more than two full-time employees. Def. Mot. at. 7. This is false. When asked if they oversaw the front-end and back of the store, neither Plaintiff was able to answer yes. Zahtila explained that he was able to do this "occasionally," and if he was upfront tasking, he was not at all able to supervise the associates in the back of the store. Zahtila Dep. p. 280: 3-6; Zahtila Dep. p. 307: 2-5. Sciotto has explained that he could not supervise and oversee because he had to focus on tasking and thus, was "not in a supervisory role. . ." and the only way he would be able to oversee these areas of the store is if he happened to look up and see something, but that time period was "so small and constricted," that it was meaningless. Sciotto Dep. pp. 99-100. At a minimum, there is a genuine issue of fact that the jury should resolve.

### 5. *Plaintiffs Occasional Suggestions Were Not Given Particular Weight*

TJX cannot meet its burden to prove there are no genuine issues of material fact regarding whether Plaintiffs' had the authority to hire or fire, or whether their suggestions or recommendations were given "particular weight." Factors to consider regarding whether an employer gave "particular weight" include the frequency that suggestions and recommendations were made, requested, or relied upon, and "does not include an occasional suggestion." 29 C.F.R. § 541.105. "[M]ore than informal input, solicited from [plaintiffs] is needed to prove applicability

18

of the executive exemption." *Madden v. Lumber One Home Ctr., Inc.,* 745 F.3d 899, at *11 (8th Cir. Mar. 17, 2014) (collecting cases).

Here again, rather than look to the actual testimony of what the Plaintiffs did, Defendants point to the fact that "the Operations ASM job description plainly *contemplates* that this role will be responsible for hiring, training and developing staff in the store." Def. Mot. at p. 18 (emphasis added). What Defendants may have contemplated in the job description did not actually occur. While Plaintiffs testified that they performed initial screening interviews, they were required to ask corporate-mandated questions (Zahtila Dep. p. 95: 13-20; Sciotto Dep. p. 138); their opinion of whether to hire the candidate did not matter (Zahtila Dep. p. 97: 20-22); and the only recommendation they gave to the SM was giving him/her the written answers to the corporate-dictated questions they were required to ask. (Zahtila Dep. pp. 97-98).

This is consistent with other witness' deposition testimony, who also described how the argument that they hired associates consisted of their performing the initial interview by reading questions from a scripted form. *See* Corway Dep. pp. 211-212 (explaining that ASMs had to follow the list of corporate-scripted questions during interviews); Pirolo Dep. p. 170 ("It's a scripted form."). Similarly, other witnesses have corroborated Plaintiffs' testimony that they would not give hiring recommendations. *See* Pirolo Dep. pp. 172-173 (the manager would look at the filled out corporate form and decide whether to do the second interview).

Further, Zahtila testified that when the SM changed his initial performance review of an associate and he disagreed, "it was always her way." Zahtila Dep. p. 172: 15.[9] Defendants have also claimed that Zahtila was able to recommend associates for promotion (Def. Statement of Facts

---

[9] This is corroborated by the testimony of other witnesses. Corway testified that he would never offer opinions or observations of associates to be used in their evaluations Corway Dep. pp. 250-252.

¶ 43); however, the only proof of this is that Zahtila once recommended an associate for promotion and the associate was not in fact promoted. Zahtila Dep. pp. 298-299. The FLSA never intended the functional equivalent of a "suggestion box" to satisfy the requirement that an exempt employee's recommendations be given particular weight.

Thus, there are genuine disputes as to whether recommendations were given particular weight. *See, e.g., Barreto v. Davie Marketplace,* LLC, 331 Fed. Appx. 672, 677-78 (11th Cir. 2009) (genuine dispute where plaintiff's recommendation to fire was followed in one instance, but a recommendation to hire in another instance was not followed); *Hickton,* 2012 WL 4356762 (genuine dispute where plaintiff made important decisions not dictated by policy); *Madden,* 745 F.3d 899, at *21 (employees did not meet this element when they were "not involved directly in hiring"); *Costello,* 928 F. Supp. 2d at 496 (material issue of fact existed precluding summary judgment where plaintiff rarely interviewed or drafted employee evaluations; hiring and firing was not within plaintiff's discretion; and defendant produced no evidence that plaintiff's recommendations were relied upon); *Green,* 2013 WL 4504316, at *44-45 (denying summary judgment where defendant offered no evidence demonstrating that plaintiffs' recommendations were given particular weight).

Defendants have failed to produce any evidence that Plaintiffs' occasional suggestions or recommendations were followed, much less given "particular weight." Rather, the testimony makes clear that Plaintiffs very occasional suggestions were given no weight at all. Defendants have failed to meet their burden.

**IV.    Conclusion**

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny TJX's Motion for Summary Judgment.

Date:   September 18, 2015

Respectfully submitted,

 _/s/ Sara Wyn Kane_____
**VALLI KANE & VAGNINI LLP**
Sara Wyn Kane*
Robert J. Valli, Jr.*
James A. Vagnini*
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180

**BURR & SMITH, LLP**
Sam J. Smith*
Loren B. Donnell*
111 2nd Ave. N.E., Suite 1100
St. Petersburg, FL 33701
Telephone: (813) 253-2010

**MEHRI & SKALET, PLLC**
Cyrus Mehri*
Michael D. Lieder*
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100

**DINOVO PRICE ELLWANGER
& HARDY LLP**
Jay D. Ellwanger*
William M. Parrish*
Adam G. Price*
7000 North MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser**
Fran L. Rudich
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

**FAIR WORK, P.C.**
192 South Street, Suite 450
Boston, MA 02111
Telephone: (617) 607-3260

**HEPWORTH, GERSHBAUM
& ROTH, PLLC**
Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
Mathew A. Parker*
192 Lexington Avenue, Suite 802
New York NY 10016
Telephone: (212) 545-1199

**SHAVITZ LAW GROUP PA**
Gregg Shavitz*
Camar Jones*
1515 S Federal Hwy., Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

\* Admitted *Pro Hac Vice*

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I, Sara Wyn Kane, hereby certify that a true copy of the above document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 18, 2015.

/s/ *Sara Wyn Kane*
Sara Wyn Kane

*Attorney for Plaintiffs*