UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CELINA ROBERTS, ANTHONY SCIOTTO, ERIC BURNS, KERI DICKEY, ANGELA RAMIREZ, DIANA SANTILLAN, CAMILLE GHANEM, ARNOLD WILLIAMS, OLUWATOSIN BABALOLA, TOMMY ZAHTILA, TODD JUSTICE, GIANFRANCO PIROLO, MICHAEL O'GRADY, AND JASON FOSTER, individually, and on behalf of other persons similarly situated, | * * * * * * * * * * * * | Civil Action No. 13-cv-13142-ADB |
| Plaintiffs, v. | * * * |  |
| THE TJX COMPANIES, INC., a Delaware Corporation; MARSHALLS OF MA, INC., a Massachusetts Corporation; MARMAXX OPERATING CORP., a Delaware Corporation, d/b/a MARSHALLS HOMEGOODS, d/b/a MARSHALLS, d/b/a T.J. MAXX HOMEGOODS; HOMEGOODS, INC., a Delaware Corporation; | * * * * * * * * * * |  |
| Defendants. | * * |  |

**MEMORANDUM AND ORDER**

September 30, 2016

BURROUGHS, D.J.

In this putative class and collective action, the named Plaintiffs allege that their

employers, The TJX Companies, Inc.; Marshalls of MA, Inc.; Marmaxx Operating Corp.; and

HomeGoods, Inc. (together, "Defendants") misclassified them as exempt from the overtime

requirements of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and then failed to pay them overtime as required by the FLSA and the NYLL.

Plaintiffs, who worked as Assistant Store Managers ("ASMs") at Marshalls, HomeGoods, and T.J. Maxx stores in various states (excluding California), allege that the Defendants misclassified them as exempt from the overtime requirements of the FLSA and the NYLL (1) during the period when Plaintiffs participated in a formal "ASM Training Program" sponsored by their employer (the "ASM Training Claims"); and (2) during their subsequent employment as ASMs (the "ASM Misclassification Claims").

Presently before the Court is Plaintiffs' Unopposed Motion for Final Approval of a Class and Collective Action Settlement [ECF No. 135], which pertains *only* to the ASM Training Claims. Plaintiffs Anthony Sciotto, Angela Ramirez, Arnold Williams, Camille Ghanem, Oluwatosin Babaloa, Eric Burns, Tommy Zahtila, Gianfranco Pirolo, Michael O'Grady, Jason Foster, and Todd Justice (together, the "ASM Training Plaintiffs") move for an order granting final approval of the parties' proposed Stipulation and Settlement Agreement ("Settlement") pursuant to Fed. R. Civ. P. 23(e).[1] In addition, Plaintiffs' counsel[2] ("Class Counsel") have applied for an award of attorneys' fees pursuant to Fed. R. Civ. P. 23(h), in the amount of $1,583,333.33. For the reasons set forth in this Memorandum and Order, Plaintiffs' Unopposed

---

[1] The Settlement is limited to resolving the ASM Training Claims. The parties continue to litigate the ASM Misclassification Claims, which pertain to Plaintiffs' regular employment as ASMs, outside of their training periods.
[2] Plaintiffs are represented by numerous attorneys from several different law firms, including Fran L. Rudich and Seth R. Lesser of Klafter Olsen & Lesser LLP; Hillary Schwab of Fair Work, P.C.; Sam J. Smith and Loren B. Donnell of Burr & Smith LLP; Sara Wyn Kane, James A. Vagnini, and Robert J. Valli, Jr., of Valli Kane & Vagnini LLP; Marc S. Hepworth, Charles Gershbaum, David A. Roth of Hepworth, Gershbaum & Roth, PLLC; Cyrus Mehri and Michael D. Lieder of Mehri & Skalet, PLLC; Gregg Shavitz, Camar Jones, and Alan Quiles, of Shavitz Law Group, P.A.; and Jay D. Ellwanger, William M. Parrish, and Adam G. Price of Dinovo Price Ellwanger & Hardy LLP.

Motion for Final Approval [ECF No. 135] is <u>ALLOWED</u>. Class Counsel's fee petition is also <u>ALLOWED</u>, albeit with some reservations.

## I.    BACKGROUND

This case stems from three separate putative class and collective actions filed between December 2013 and May 2014—*i.e.*, <u>Roberts v. TJX Companies, Inc.</u>, 1:13-cv-13142; <u>Burns v. TJX Companies, Inc.</u>, 1:14-cv-10306; and <u>Ghanem v. TJX Companies, Inc.</u>, 1:14-cv-12104. In each case, the named plaintiffs alleged that Defendants misclassified ASMs as exempt from the overtime requirements of the FLSA and NYLL at Marshalls, HomeGoods, and/or T.J. Maxx stores nationwide (excluding California), and thereby avoided paying ASMs for overtime in accordance with the FLSA and NYLL.

The three cases were consolidated on August 8, 2014, when Plaintiffs filed their Second Amended Complaint in the above-captioned action. After consolidation, the <u>Burns</u> and <u>Ghanem</u> actions were dismissed, and the parties began to discuss settlement of the ASM Training Claims. On or about October 28, 2014, the parties entered into a Confidential Mediation Agreement to facilitate negotiations. Pursuant to this Agreement, the parties exchanged detailed information and numerous documents, and each side conducted legal and factual analyses of the ASM Training Claims and Defendants' defenses thereto. In preparation for mediation, Class Counsel also conducted interviews with potential class members and investigated the actual duties and responsibilities of the ASM employees during the time they spent in the ASM Training Program. Class Counsel also reviewed Defendants' policies, procedures, and pay records to determine how ASMs were compensated.

On November 10, 2014, the parties engaged in an all-day mediation session under the direction of Hunter R. Hughes, Esq., who is an experienced class and collective action mediator. Mr. Hughes also has experience mediating wage and hour cases. During the mediation, the

parties presented detailed information about their respective views of the ASM Training Claims, Plaintiffs' likelihood of success on the merits, the manner in which potential damages would be calculated, and the likelihood of trial on a class basis.

Although the parties did not settle the ASM Training Claims at the November 10th mediation, they continued to negotiate through the mediator between November 2014 and late January 2015. The parties finally agreed upon key settlement terms on January 31, 2015, and executed a proposed Settlement Agreement on March 11, 2015. See [ECF No. 82, Ex. 1].

## A. Settlement Classes

The Settlement resolving the ASM Training Claims creates six Settlement Classes, three of which cover claims arising under the NYLL ("the "NYLL Settlement Classes"), and three of which cover claims arising out of the FLSA (the "FLSA Settlement Classes"). Within each group, there is one settlement class for Marshalls ASMs, one settlement class for HomeGoods ASMs, and one settlement class for T.J. Maxx ASMs. The six Settlement Classes are as follows:

    i.    **HOMEGOODS ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a HomeGoods store located in the State of New York for one or more complete weeks during the period from **November 10, 2008 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to HomeGoods during that time period;

    ii.    **MARSHALLS ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a Marshalls store located in the State of New York for one or more complete weeks during the period from **December 11, 2007 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to Marshalls during that time period;

    iii.    **T.J. MAXX ASM IN TRAINING NEW YORK STATE LAW SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a T.J. Maxx store located in the State of New York for one or more complete weeks during the period from **November 10, 2008 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to T.J. Maxx during that time period;

iv. **HOMEGOODS ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a HomeGoods store (excluding California) for one or more complete weeks during the period from **May 12, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to HomeGoods during that time period;

v. **MARSHALLS ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a Marshalls store (excluding California) for one or more complete weeks during the period from **May 12, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to Marshalls during that time period; and

vi. **T.J. MAXX ASM IN TRAINING FLSA SETTLEMENT CLASS**: Any and all persons employed as an Assistant Store Manager at a T.J. Maxx store (excluding California) for one or more complete weeks during the period from **November 10, 2011 to October 25, 2014** and who participated in the formal Assistant Store Manager Training Program applicable to T.J. Maxx during that time period;

The parties have agreed on a "claims-made" settlement, such that members of the Settlement Classes must timely file a Claim Form to be eligible to receive a settlement check. If a class member fails to do so, however, the consequences are different for the FLSA Settlement Classes and the NYLL Settlement Classes. The FLSA Settlement Classes are governed by the "collective action" procedures set forth in the FLSA, which require members of the collective action to affirmatively "opt in" to a collective action settlement. See 29 U.S.C. § 216(b). Accordingly, each of the FSLA Settlement Classes is an "opt in" class. If a putative class member chooses not to opt into an FLSA Settlement Class, his or her FLSA claims will not be adjudicated in this collective action settlement. In contrast, the NYLL Settlement Classes are governed by the class action procedures set forth in Fed. R. Civ. P. 23. Under Rule 23, members of the NYLL Settlement Classes must affirmatively "opt out" of the NYLL Settlement Classes to be excluded from the Settlement. Fed. R. Civ. P. 23. Here, the parties' Settlement Agreement provides that members of the NYLL Settlement Classes may opt out of the Settlement. If they fail to do so, they will be bound by the Settlement terms, whether or not they choose to file a claim and pursue a settlement check. See Yayo v. Museum of Fine Arts, No. 13-11318, 2014

WL 2895447, at *3 (D. Mass. June 26, 2014); <u>Lusardi v. Xerox Corp.</u>, 99 F.R.D. 89, 92 (D.N.J. 1983).

**B.      Settlement Structure and Payments to Class Members**

The Settlement provides that the Defendants shall pay a "Maximum Gross Settlement Amount" of $4,750,000 into a qualified settlement fund to resolve the ASM Training Claims. The Maximum Gross Settlement Amount includes four components, to be paid in the following order: (1) attorneys' fees, expenses, and costs to be awarded to Class Counsel, in an amount up to one-third of the Maximum Gross Settlement Amount (here, $1,583,333.33);[3] (2) the expenses of administering the settlement (which is being handled by an agreed-upon third party claims administrator); (3) "service payments"[4] to each of the eleven named ASM Training Plaintiffs, in an amount not to exceed $3,250 per named Plaintiff; and (4) settlement payments to individual class members who file Claim Forms.

In this case, Class Counsel has requested $1,583,333.33 (which is one-third of the $4.75 million Maximum Gross Settlement Amount) in attorneys' fees. The total amount of the proposed service payments to the eleven ASM Training Plaintiffs will be $35,750. Finally, the third-party claims administrator represents that the total cost of administering the Settlement will be $72,800. The Settlement provides that after any attorneys' fee award, settlement expenses, and Plaintiffs' service payments are deducted from the Maximum Gross Settlement Amount, the remaining "Revised Gross Settlement Amount" will be available for distribution to the class members in the form of settlement payments. Thus, assuming that the Court were to award Class

---

[3] The Settlement Agreement also provides that Defendants will not oppose Class Counsel's petition for attorneys' fees, so long as the requested fee award does not exceed $1,583,333.33.
[4] Service payments are designed to compensate each named ASM Training Plaintiff not only for their claims in this case, but also for the additional time and efforts they expended in pursuing this action on behalf of absent class members.

Counsel their requested attorneys' fees, the Revised Gross Settlement Amount available for distribution to the class members would be $3,058,116.67.

The Settlement further provides a formula for calculating each class member's settlement payment. Specifically, each member of the Settlement Classes will be eligible to receive a settlement payment equal to the number of weeks that the class member spent in the ASM Training Program, divided by the total number of training weeks of all Settlement Class members, multiplied by the Revised Gross Settlement Amount. Here, the parties represent that there are 4,018 members of the Settlement Classes, and that the total number of training weeks for all class members is 18,447.43.

Based on these figures, and assuming that the Revised Gross Settlement Amount is in fact $3,058,116.67, the resulting settlement payments to class members would be $165.77 per week spent in the ASM Training Program. If, however, the Court were to award Class Counsel less in attorneys' fees than the $1,583,333.33 they request, the Revised Gross Settlement Amount would increase, as would settlement payments to members of the Settlement Classes. Finally, the parties' proposed Settlement is "reversionary," meaning that any portion of the Maximum Gross Settlement Amount that is not distributed as attorneys' fees, settlement expenses, service payments, or settlement payments will be returned to the Defendants.

### C. Preliminary Approval and Notice to the Settlement Classes

On May 6, 2015, the Court granted Plaintiffs' unopposed motion for preliminary approval of the proposed Settlement. [ECF No. 112]. The Court also scheduled a Final Fairness Hearing for August 13, 2015. [ECF No. 113]. The Court's Order required the parties to, *inter alia*, provide notice of the Settlement to each of the 4,018 class members, and give each class

member an opportunity to participate in the Settlement by filing a Claim Form, to object to the Settlement, and/or "opt out" of the NYLL Settlement classes. See [ECF No. 112].

In accordance with the Court's Order, the third-party claims administrator mailed a Court-approved Notice, Claim Form, and Release of Claims to all 4,018 members of the Settlement Classes. Of these mailings, 150 Notices were returned to the claims administrator as undeliverable. The claims administrator then made further attempts to serve those remaining 150 class members using updated address information. After a second round of mailings, only 50 Notices were returned to the claims administrator as undeliverable (approximately 1.2% of class members).[5]

The Notice informed members of the NYLL Settlement Classes that they could exclude themselves from the Settlement by submitting a written request for exclusion. As of August 4, 2015, the claims administrator had received three (3) valid requests for exclusion by members of the NYLL Settlement classes, and those individuals have been duly excluded from the Settlement. The Notice also informed members of the NYLL Settlement Classes that they could object to the Settlement by filing written objections. As of August 4, 2015, the claims administrator had not received any objections to the proposed Settlement. Further, no class members objected to the Settlement at the Final Fairness Hearing before the Court on August 13, 2015.

Finally, the Notice instructed class members to claim a share of the Settlement if they wanted by submitting a fully completed Claim Form to the claims administrator on or before July

---

[5] In addition to the primary Notice that was mailed to all class members in May 2015, the claims administrator also mailed a postcard reminder to all class members who had not yet submitted a Claim Form by June 30, 2015. The claims administrator also established a toll-free number and a settlement-specific website that offered additional information on the Settlement.

25, 2015. As of August 4, 2015, the claims administrator had received 1,567 unique Claim Forms. The claims administrator determined that 1,536 of those Claim Forms were complete and timely, and those claims were therefore approved. Five (5) Claim Forms were deficient, and the claims administrator mailed deficiency letters to those class members. The claims administrator represents that those claims will be approved, assuming that the members respond and provide complete information. Two (2) Claim Forms were submitted by individuals who were not identified as Class Members, and those claims were denied. Twenty-three (23) Claim Forms were received after the July 25, 2015 deadline. After consulting with the parties, however, the claims administrator ultimately approved those 23 claims despite their late submission. Finally, one (1) Claim Form was submitted by an individual who also submitted a written request for exclusion. The claims administrator honored the request for exclusion and denied the claim. In sum, it appears that the claims administrator has received responses from 1,567 of the 4,018 class members, for an approximate response rate of 39%.

Assuming that the Court grants final approval of the Settlement and allows Class Counsel's fee petition in its entirety, Defendants represent that they will pay a total of $2,890,739.17, inclusive of attorneys' fees ($1,583,333.33), the costs of administering the settlement ($72,800), service payments to the named ASM Training Plaintiffs ($35,750), and settlement payments to the approximately 39% of class members who filed Claim Forms ($1,198,855.84).[6] Under this scenario, when all is said and done, approximately $1,859,260 of the $4,750,000 Maximum Gross Settlement Amount (approximately 39%) would revert to the Defendants.

---

[6] See Transcript of August 13, 2015 Final Fairness Hearing [ECF No. 139 at 5].

Plaintiffs now ask this Court to enter an Order (1) finally approving the class and collective action Settlement; and (2) awarding Class Counsel attorneys' fees in an amount of $1,583,333.33.

## II.  FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Certified Rule 23 class actions may be settled only with the court's approval "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997).[7] "Although the district court must carefully scrutinize the settlement, there is a presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery." In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 259 (D.N.H. 2007) (citing City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Here, both Plaintiffs and Defendants have been represented by competent, experienced counsel throughout the proceedings. The Court further finds that the parties conducted sufficient discovery to permit an arms-length negotiation and settlement of the ASM Training Claims. In preparation for mediation, the parties exchanged large amounts of information and documents. Both sides conducted their own analyses regarding the merits of the ASM Training Claims, and

---

[7] The private settlement of collective actions under the FSLA also requires the approval of either the Department of Labor or the district court. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1353 (11th Cir. 1982) (district court may enter a stipulated judgment after "scrutinizing the settlement for fairness"). A court may approve an FLSA settlement upon a finding that all parties to the action have agreed to it, and that it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, 679 F.2d at 1355. A court's review of a FLSA settlement, however, is slightly less demanding than its review of a Rule 23 class action settlement because, unlike a Rule 23 class action, a FLSA collective action settlement does not bind absent class members. See Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In this case, the Court ultimately concludes that the parties' proposed Settlement satisfies the more stringent Rule 23 standard. Thus, the Court will not conduct a separate fairness analysis under the FLSA standard.

the parties engaged in an all-day mediation session under the direction of an experienced class

action mediator. The Court notes, moreover, that the mediation session did not result in an

immediate settlement, and the parties continued to negotiate over the next several months. They

finally agreed upon the terms of a settlement of the ASM Training Claims in March 2015. Thus,

the Court finds that the parties' Settlement is the product of arms-length negotiation by

competent counsel, and that it is entitled to a presumption of reasonableness. See City P'ship Co.

v. Atl. Acquisition Ltd. P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996); see also In re Lurpon Mktg.

& Sales Practices Litig., 345 F. Supp. 2d 135, 137 (D. Mass 2004).

Although the Settlement is presumptively reasonable, and no class member has objected,

the Court has a duty to absent class members to make an independent assessment of whether the

Settlement satisfies the requirements of Fed. R. Civ. P. 23(e)(2). See In re Lupron Mktg. & Sales

Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005). Accordingly, the Court will briefly review

the fairness, reasonableness, and adequacy of the Settlement under the factors set forth in City of

Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).[8] Those factors are as follows:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best

---

[8] Because the First Circuit has not developed a definitive list of factors to consider when
evaluating the fairness of a class action settlement, courts in this Circuit frequently employ the
Second Circuit's Grinnell factors or some version of it. See, e.g., Bezdek v. Vibram USA Inc., 79
F. Supp. 3d 324, 343–43 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015); In re Lupron Mktg. &
Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); In re Tyco Int'l, Ltd. Multidistrict
Litig., 535 F. Supp. 2d 249, 259 (D.N.H. 2007); In re Compact Disc Minimum Advertised Price
Antitrust Litig., 216 F.R.D. 197, 203 (D. Me. 2003).

> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

Grinnell, 495 F.2d at 463 (internal citations omitted).

First, although the FLSA and state law misclassification cases are not necessarily legally complex, they are heavily fact and time-intensive. Additionally, if this action were to proceed, the parties would need to propound and respond to discovery requests, take time-consuming depositions, and engage in motion practice related to class certification and summary judgment, all before preparing for what would likely be a lengthy trial. The parties' proposed Settlement avoids the significant time and expense that they would incur preparing this case for trial on the merits. Thus, the first Grinnell factor weighs in favor of approving Settlement.

Second, while only 39% of the 4,018 class members responded to the Notice of Settlement, those class members who did respond have reacted positively to the proposed Settlement. The parties have received no objections to the Settlement, and only 3 class members have asked to be excluded from the NYLL Settlement Classes. Thus, the second Grinnell factor supports judicial approval of the Settlement.

Third, as discussed above, the parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the settlement. The parties say that they exchanged extensive informal discovery and documents, and Class Counsel represent that they interviewed numerous witnesses and class members to evaluate the strengths and weaknesses of the ASM Training Claims. Finally, Class Counsel's considerable experience in litigating misclassification cases, and the participation of an experienced mediator, also supports the Court's finding that the Settlement is fair, reasonable, and adequate.

The fourth and fifth factors—which involve establishing liability and damages—also weigh in favor of finding the Settlement fair, reasonable, and adequate. The Plaintiffs, regardless of the merits of their claims, face a real risk in establishing liability at trial. Here, the questions of liability and damages are heavily fact-intensive. Determining liability in this case requires a jury to weigh numerous, interdependent factors. Furthermore, for the FLSA claims, the amount of damages would depend on the Plaintiffs' ability to prove the employer's willfulness and, for liquidated damages, lack of good faith. Of the four collective action trials that counsel were aware of around settlement, three ended in employer verdicts. See [ECF No. 137 at 19] (citing Stillman v. Staples, Inc., No. 07-849, 2009 WL 1437817, at *1 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict); Perkins v. S. New England Tel. Co., No. 3:07-CV-967, 2012 WL 517286, at *3 (D. Conn. Feb. 14, 2012) (collective action defendant's verdict); Henry v. Quicken Loans, Inc., No. 2:04-cv-40346 (E.D. Mich. Mar. 17, 2011) (same); Bell v. Citizens Fin. Group, Inc., No. 2:10-cv-00320 (W.D. Pa. Apr. 21, 2013) (same)).

Then, even assuming liability is proven, the parties disagree on the method of calculating damages. Defendants argue for the "half-time" method, while the Plaintiffs argue for the "time-and-one-half" approach.[9] See [ECF No. 137 at 20]. Defendants are able to cite to cases in this Circuit to support using the "half-time" method, see, e.g., Valerio v. Putnam Assocs., Inc., 173

---

[9] The Plaintiffs explain that under the "half-time" method, damages are calculated to include only "half of [an employee's] regular rate" for each hour worked over 40. The "regular rate" under the "half-time" method is calculated "by dividing [an employee's] salary by the total number of hours worked (a number necessarily higher than 40 in any week in which overtime is earned) in the work week." See [ECF No. 101 at 7]. Under the "time-and-a-half" method, on the other hand, the "regular rate" is calculated by dividing an employee's salary by 40 hours and damages are calculated to include "1.5 times [an employee's] regular rate for all hours worked over 40." [ECF No. 101 at 7]. According to the Plaintiffs, calculating damages using the "time-and-one-half" method could result in damages that are three to four times higher than damages calculated using the "half-time" method. See [ECF No. 101 at 7 n.6].

F.3d 35 (1st Cir. 1999), while Plaintiffs point to district courts outside the First Circuit that have more recently complicated its applicability, see, e.g., Seymour v. PPG Indus., Inc., 891 F. Supp. 2d 721, 737 (W.D. Pa. 2012) ("The court, at this stage, without impermissibly invading the province of the jury, cannot determine that plaintiffs are only entitled to half-time damages."). Courts have found that uncertainty involving the method of calculating damages weighs in favor of finding a settlement agreement fair, reasonable, and adequate, and this Court does as well. See, e.g., McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 462 (D.N.J. 2008); see also Craig v. Rite Aid Corp., No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Thus, the fourth and fifth Grinnell factors weigh in favor of approving the Settlement.

Sixth, there is a risk of successfully maintaining the class action through trial. There are numerous stages during the litigation at which certification could fail. The Plaintiffs first have to successfully move to certify the class (conditionally in the case of FLSA) and would then have to survive a motion to decertify by Defendants. Plaintiffs provide numerous examples of cases in which certification ultimately failed. See, e.g., Stevens v. HMSHost Corp., No. 10-CV-3571, 2014 WL 4261410, at *1 (E.D.N.Y. Aug. 27, 2014) (granting motion to decertify FLSA collective action); Hernandez v. Fresh Diet, Inc., No. 12-CV-4339, 2014 WL 5039431, at *1 (S.D.N.Y. Sept. 29, 2014) (same); Tracy v. NVR, Inc., 293 F.R.D. 395 (W.D.N.Y. 2013) (same); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567 (E.D. La. 2008) (granting motion to decertify FLSA collective action following bench trial). Furthermore, if a class is certified under Rule 23, the Defendants could also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). The numerous opportunities for certification to fail could lead to delay and create substantial risk of Plaintiffs failing completely. Accordingly, the sixth Grinnell factor favors approving the Settlement.

The Plaintiffs did not directly address the seventh <u>Grinnell</u> factor—the ability of the defendants to withstand a greater judgment—but instead argued that the focus should be on whether the settlement falls within a range of reasonableness. <u>See</u> [ECF No. 137 at 22–23]. Specifically, the Plaintiffs argue that the defendant's ability to withstand a greater judgment does not on its own suggest that the settlement is unfair. The Court agrees. The Court recognizes that, as noted above, district courts have not strictly applied the <u>Grinnell</u> factors and can modify them based on the particular circumstances of the case. <u>See, e.g.</u>, <u>In re Tyco</u>, 535 F. Supp. 2d at 259–60. Furthermore, the seventh <u>Grinnell</u> factor seems to be appropriately assessed within the context of the eighth and ninth factors. For example, if the settlement amount were significantly below even the most pessimistic estimates of a possible recovery, then considering the defendant's ability to pay (the seventh factor) would be relevant in assessing whether the settlement amount was nonetheless fair. Thus, the seventh factor on its own appears to be neutral, <u>see, e.g.</u>, <u>Romero v. La Revise Associates, L.L.C.</u>, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014), and the Court turns to the final two factors.

The eighth and ninth <u>Grinnell</u> factors—which involve the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation—weigh in favor of approving the Settlement. The following contingencies impact Plaintiffs' possible recovery: the number of hours the average employee worked per week, the method of calculating damages, proving willfulness in order to extend the statute of limitations by one year in order to obtain an additional year of damages under FLSA, and showing lack of good faith in order to get liquidated damages. <u>See</u> [ECF No. 101 at 5]. Plaintiffs have provided this Court with more than one range of possible damages, including one in their supplemental filing in support of their Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement

[ECF No. 101], and another in their Memorandum in Support of the Unopposed Motion for Final Approval of Class and Collective Action Settlement [ECF No. 137]. The actual settlement amount here, $4.75 million, falls within either range.

First, assuming that the ASMs in training worked 50 hours per week, the Plaintiffs provided the following estimates of their damages: $1.3 to $12.9 million. [ECF No. 101 at 6]. The low estimate reflects contingencies playing out in favor of the Defendants; thus, assuming a two-year statute of limitations and no liquidated damages, and calculating damages using the "half-time" method preferred by Defendants. The high estimate, on the other hand, reflects contingencies playing out in favor of the Plaintiffs; thus, assuming a three-year statute of limitations and fully liquidated damages, and calculating damages using the "time-and-one-half" method preferred by Plaintiffs. The entire range assumes certification.

Second, the Plaintiffs provided another range of estimates that reflects a single set of assumptions they believe are reasonable. See [ECF No. 137 at 22–24]. If Plaintiffs could "establish[] a willful violation of the FLSA to extend the statute of limitations from two to three years, overcome[] Defendants' defenses to liquidated damages, and assum[e] a favorable damage determination by the jury," then they believe that the range of possible recovery could be $3.87 million (Plaintiffs' valuation using the "half-time" method of calculating damages) to $11.26 million (Plaintiffs' valuation using "time-and-one-half" method). See [ECF No. 137 at 24 & n.1]. Furthermore, the range inherently assumes that the class will make it through litigation intact. The total settlement amount here, $4.75 million, is within both ranges and results in a fair recovery for the claimants, which is—assuming final approval of Class Counsel fees, costs, and expenses—$165.77 on average for each ASM Training Week. Moreover, claimants would be

able to receive funds more immediately than if the case went to trial. Given the substantial litigation risks, the Court finds the settlement amount to be reasonable.

Accordingly, based on an assessment of the Settlement in light of the Grinnell factors, the Court finds the Settlement fair, reasonable, and adequate.

## III.    CLASS COUNSEL'S PETITION FOR ATTORNEY'S FEES

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Similarly, the FLSA provides for the award of a "reasonable attorney's fee" and costs to a prevailing plaintiff. See 29 U.S.C. § 216(b).

"The First Circuit recognizes two methods for calculating attorneys' fees in the class action context." Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 349 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015); see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995). First, under the "lodestar" method, the court calculates the fee award by "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." In re Thirteen Appeals, 56 F.3d at 305. Alternatively, in cases where the parties' settlement establishes a "common fund" of money for the benefit of class members, the court may "shape[] the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." Id.; see also Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Courts often refer to this method as the "percentage of fund" or "POF" approach.

The First Circuit has held that the district court has the discretion to use either the lodestar method or the POF approach when awarding fees to class counsel. In re Thirteen Appeals, 56 F.3d at 307. The In re Thirteen Appeals Court noted that its decision was "driven

both by our recognition that use of the POF method in common fund cases is the prevailing praxis and by the distinct advantages that the POF method can bring to bear in such cases." Id. Specifically, the In re Thirteen Appeals Court pointed out that the POF approach is usually "less burdensome to administer," and avoids the need for the court to "review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended . . . ." Id.[10]

The In re Thirteen Appeals Court also recognized, however, that the POF method may not be appropriate in all cases. In particular, the POF method "may result in the overcompensation of lawyers in situations where actions are resolved before counsel has invested significant time or resources." Id. at 307. Thus, the In re Thirteen Appeals Court held that district courts have the discretion to use either approach, and that this discretion "may, at times, involve using a combination of both methods when appropriate." Id. at 308. In accordance with the First Circuit's guidance, courts in this District frequently "cross-check" the reasonableness of a POF fee award by comparing it against the estimated fee award under the lodestar method. See In re Lupron, 2005 WL 2006833, at *6; In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 215–16 (D. Me. 2003).

Here, Class Counsel urge the Court to utilize the POF approach, and they request a fee award in the amount of $1,583,333.33, which is thirty-three and one-third percent (33 & 1/3%)

---

[10] The In re Thirteen Appeals Court acknowledged, however, that even under the POF method, the "time logged is still relevant to the court's inquiry," as "time records tend to illuminate the attorneys' role in the creation of the fund, and, thus, inform the court's inquiry into the reasonableness of a particular percentage . . . ." See In re Thirteen Appeals, 56 F.3d at 307. But using the POF as the primary method of calculating a fee award represents a "shift in focus" that "lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." Id.

of the Maximum Gross Settlement Amount of $4,750,000. Defendants do not oppose this request

for fees. In fact, the parties' Settlement Agreement contains a "clear sailing" provision, under

which Defendants specifically agree not to oppose Class Counsel's fee application, as long as it

does not exceed 1/3 of the Maximum Gross Settlement Amount.

The presence of a clear sailing clause, however, "should put a court on its guard, not lull

it into aloofness." Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 525 (1st Cir. 1991). The

First Circuit has warned that a clear sailing clause

> by its nature deprives the court of the advantages of the adversary
> process. The source of the proposed payment renders it improbable
> that class members will come forward to challenge the
> reasonableness of the requested fee. Meanwhile, the payor is bound
> by contract not to contest the application. . . . Furthermore, the very
> existence of a clear sailing provision increases the likelihood that
> class counsel will have bargained away something of value to the
> class.

Id. Therefore, given the clear sailing clause in this case, the Court must apply heightened

scrutiny when determining whether Class Counsel's requested fees are reasonable. Id.; see also

Bezdek v. Vibram USA, Inc., 809 F.3d 78, 84 (1st Cir. 2015).

Based on the structure of the proposed Settlement, this does appear to be a "common

fund" case, as Class Counsel has successfully negotiated the creation of a settlement fund of

$4,750,000 for the benefit of class members. Furthermore, any award of attorneys' fees will itself

be paid from the settlement fund, such that a larger fee award will reduce the amount of

settlement payments to each class member, and a smaller fee award will increase the amount of

settlement payments. Thus, the Court will apply the POF approach and award Class Counsel a

percentage of the Maximum Gross Settlement Amount of $4,750,000.

The more difficult issue, however, is determining what percentage of the fund is fair and

reasonable for the attorneys' fees under the circumstances. The Court has wrestled considerably

with whether it would be fair and reasonable to award one-third of the Maximum Gross Settlement Amount to Class Counsel in this action and has serious reservations about a fee award that will ultimately exceed the total distribution to the class. The First Circuit's holding in <u>In re Thirteen Appeals</u> did not establish a "benchmark" percentage that is presumptively reasonable in common fund cases,[11] nor did it set forth a definitive list of factors to consider when determining the reasonableness of a POF fee award. Nonetheless, it appears that district courts in this Circuit have considered factors such as (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; and (8) public policy considerations. <u>See</u> <u>In re Relafen Antitrust Litig.</u>, 231 F.R.D. 52, 79 (D. Mass. 2005); <u>In re Tyco</u>, 535 F. Supp. 2d at 266; <u>In re Lupron</u>, 2005 WL 2006833, at *3.

The Court has no concerns regarding the quality of representation that Class Counsel provided in this case. Plaintiffs have been represented by highly competent attorneys with substantial experience litigating wage and hour claims, and pursuing such claims in class and collective actions. Further, the Court has considered that no class members have objected to the Settlement generally, or to the attorneys' fee award in particular. Finally, the Court finds that, on the whole, Class Counsel has negotiated a very good result for members of the Settlement Classes, as each class member will receive at least $165.77 per week spent in the ASM Training

---

[11] In the Ninth Circuit, for example, courts typically use a benchmark of 25% in POF cases, which can be adjusted upwards or downwards to account for unusual circumstances. <u>See</u> <u>Fischel v. Equitable Life Assur. Soc'y of U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002).

Program. In light of all the circumstances, the Court believes that this represents a fair and reasonable compromise of the FLSA and NYLL claims.

The Court's primary concern, however, is whether a fee award of $1,583,333.33—a full one-third of the $4,750,000 common fund—is commensurate to the benefits actually bestowed on class members in this case. Again, only 39% of the 4,018 class members have filed Claim Forms and are eligible to receive settlement checks. The Court finds this response rate to be unimpressive, particularly where each class member is eligible to receive a fairly substantial amount of money. As a result of the low claim rate, Class Counsel stands to collect 33 and 1/3% of a $4,750,000 common fund, whereas only 26% of the fund will end up in class members' pockets, and 39% of the fund will revert to Defendants. Arguably, the fee award in this case is closer to a 50/50 split between Class Counsel and the class members, rather than the one-third requested by counsel.

Class Counsel argue that in common fund cases, a POF fee award should be based on the entire common fund, as opposed to the portion of that fund that is ultimately claimed by class members. In support, they cite <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472 (1980), in which the U.S. Supreme Court affirmed an award of attorney's fees in a securities class action. In so doing, the Court rejected the defendant's argument that the fee award should be based only on the portion of the fund actually claimed by class members. The Court reasoned that

> [o]nce the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.

Boeing Co., 444 U.S. at 479.

Boeing, however, is distinguishable from the instant case in at least two significant ways. First, Boeing was a pure Rule 23 class action, which adjudicates the rights of absent class members even if they choose not to make a claim on the common fund. In this case, however, at least some of the claims at issue are FLSA claims. Thus, members of the FLSA Settlement Classes who do not "opt in" to the collective action are not bound by this Settlement, their FLSA claims will not adjudicated, and they will retain the right to bring a separate FLSA action against the Defendants. If they were to prevail in such an action, they too would be entitled to an award of attorney's fees. Accordingly, the cost-shifting rationale cited by the Boeing Court is not entirely applicable here, particularly where only 39% of class members have filed Claim Forms.

Second, the fee award in Boeing did not arise in connection with a class action settlement. Rather, the case in Boeing was tried on the merits, and the district court awarded attorney's fees as a portion of the total damages that were awarded to the class. Thus, the damages award in Boeing was a reasonable approximation of the class' *actual* damages, not an amount that had been discounted for purposes of settlement. Here, in contrast, the parties have compromised the ASM Training Claims for an agreed-upon sum, and Defendants have further agreed not to oppose Class Counsel's petition for fees, up to one-third of the total settlement fund. In the settlement context, there is a clear potential for mischief that was not present in Boeing. As one district court has explained:

> When cases settle, "the adversarial process melts away." Settling defendants tend to lose interest in how settlement monies are distributed. And a natural tension arises between plaintiffs' attorneys and the class they represent, in that both must jockey for payment from a common fund. Often, it is judges alone who are left to safeguard the interests of the class.

Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 429–30 (S.D.N.Y. 2014) (quoting

S.E.C. v. Bear, Stearns & Co., 626 F. Supp. 2d 402, 403 (S.D.N.Y. 2009)) (internal citation

omitted). Numerous courts and commentators have pointed out that the POF method of awarding

attorney's fees can incentivize class counsel to agree to early settlements on sub-optimal terms,

because class counsel will be entitled to a sizeable portion of the total recovery regardless of the

amount actually distributed to the class, and without needing to invest much time, effort, or

resources on behalf of the class. See In re Thirteen Appeals, 56 F.3d at 307 (acknowledging

disadvantages of POF approach, including the potential for "overcompensation of lawyers in

situations where actions are resolved before counsel has invested significant time or resources").

Similarly, the POF method may encourage some class counsel to "push defendants for higher

payout caps or fund amounts in order to expand the basis for their fee petition without any real

expectation that those additional funds will be claimed by the class." In re TJX Companies Retail

Sec. Breach Litig., 584 F. Supp. 2d 395, 405 (D. Mass. 2008) (collecting sources).

By pointing out that class action settlements are vulnerable to abuse and can elevate the

financial interests of the attorneys over those of the class, the Court does not mean to suggest that

Class Counsel has engaged in such tactics here. The Court simply notes that in the settlement

context, it has a heightened obligation to scrutinize the fairness and reasonableness of any

agreed-upon fee award, particularly where the settlement is conditioned on the defendant's

promise not to oppose class counsel's fee petition. Thus, the Court does not read Boeing to

preclude it from considering, among other factors, the percentage of the settlement fund that is

actually claimed by class members when determining a reasonable fee award under the POF

method. In fact, public policy concerns relating to class action settlements would seem to compel

the Court to do so.[12] See Int'l Precious Metals Corp. v. Waters, 530 U.S. 1223 (2000)

(O'Connor, J., writing on denial of certiorari) (observing that Boeing did not address "whether

there must at least be some rational connection between the fee award and the amount of the

actual distribution to the class").

Accordingly, in future class action cases, the undersigned intends to give weight to the

percentage of claims actually made by class members when determining a reasonable fee award

under the POF method. As Judge William J. Young observed in TJX Companies, "[t]his

approach will not only encourage more realistic settlement negotiations and agreements, but also

will drive class counsel to devise ways to improve how class action suits and settlements

operate." 584 F. Supp. 2d at 406. The Court acknowledges that class counsel does not have total

control over class members' decisions to participate in a settlement, and that in some cases,

claim rates may be very low despite counsel's best efforts to reach class members. The Court

would prefer, however, a resolution where the attorneys are incentivized to get class members to

receive their claims, rather than simply incentivized to get a large settlement pool that will result

in a large fee regardless of what reverts back to the Defendant. Although the Court will not now

adopt a bright-line rule, and will consider each fee petition based on the particular circumstances

of the case, this Court does largely agree with Judge Young's observations that linking attorney's

fees to claims made will both prevent undeserved windfalls for class counsel, and curb the filing

of meritless lawsuits. See id. at 406–07.

---

[12] Plaintiffs note that there is some authority to the contrary. See Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007) (holding, in the class action settlement context, that district court erred in awarding attorney's fees based on the "claims made against the Fund, rather than on the entire Fund created by the efforts of counsel"); Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (same); Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1297 (11th Cir. 1999). The Court, however, has not located any binding authority from the First Circuit on this issue.

That being said, the parties in this case had no reason to know of the Court's views on this topic at the time they negotiated the Settlement, and it does not seem entirely fair to penalize Class Counsel by tying their fee award to the claim rate in this case. More importantly, however, the Court is satisfied that, in this case, a one-third fee award, while certainly generous, is not unreasonable in light of the positive results obtained for class members, and the actual time and efforts expended by Class Counsel in this case.

To "cross-check" the reasonableness of a one-third POF fee award in this case, the Court has conducted an abbreviated lodestar calculation, based on Class Counsel's representations regarding the hours they have spent investigating, mediating, and ultimately settling the ASM Training Claims on behalf of the class members.[13] See, e.g., In re Thirteen Appeals, 56 F.3d at 305 (lodestar method involves "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates."). Class Counsel estimated the total hours they spent on the case in connection with the ASM Training Claims, and determined that the total amount all firms would have billed was $897,622.67. See Lesser Declaration [ECF No. 136 ¶ 12]. Class Counsel reduced this amount by 10% to account for the possible duplication of any efforts, resulting in a total amount of $807,860.40, which is Class Counsel's estimated "lodestar." Id. As their actual fee, however, Class Counsel request 33 and 1/3% of the total settlement fund, amounting to $1,583,333.33, significantly more than the lodestar even as calculated by counsel themselves.

---

[13] The First Circuit does not require courts in this District to perform a lodestar calculation. See In re Thirteen Appeals, 56 F.3d at 307. Given the POF analysis already conducted, the Court does not engage in a full-scale investigation in conducting this lodestar "cross-check." Instead, the Court relies on the attorneys' representations and sworn statements regarding the accuracy and fairness of the hours requested.

More specifically, Class Counsel's requested amount is 1.96 times higher than their estimated lodestar amount, a metric which is commonly referred to as the "lodestar multiplier." See, e.g., In re Tyco, 535 F. Supp. 2d at 271. Multipliers of 2 and more have been found reasonable in common fund cases. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases); see also Long v. HSBC USA Inc., No. 14 CIV. 6233, 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) ("a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases") (quoting Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014)). There are numerous considerations here that justify a lodestar multiplier of 1.96. See, e.g., Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014); see also In re Relafen, 231 F.R.D. at 81–82 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) (charting multipliers in common fund cases and noting that they typically ranged from 1.0 to 4.0)). First, Class Counsel noted that they have already committed, and anticipate continuing to commit, additional time to the administration of the claims. See Lesser Declaration [ECF No. 136 ¶ 13]. Second, Class Counsel estimate that the costs and expenses in connection with the ASM Training Claims total to $16,500.19 for all firms. [ECF No. 136 ¶ 14]. Third, the Court finds that the amount of recovery secured by Class Counsel, based on what the average Authorized Claimant is to receive, is very fair. Finally and most importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case. Accordingly, the Court finds Class Counsel's requested fee of 33 and 1/3% of the fund total, reflecting a lodestar multiplier of nearly 2, to be reasonable in light of the counsel's efforts—consolidating the three class actions, preparing for mediation, engaging in

extensive settlement negotiations, undertaking a substantial amount of work in approving the settlement, administering the required notice to class members, and administering the settlement itself—and the significant risk they assumed in taking the case on a wholly contingent basis, to be reasonable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Final Approval of the Class and Collective Action Settlement [ECF No. 135] is <u>ALLOWED</u>. The Court will issue a separate Order certifying the Settlement Classes and approving the Settlement. In light of this ruling, the Plaintiffs' Motion for Partial Final Approval [ECF No. 169] is <u>DENIED AS MOOT</u>.

**SO ORDERED.**

Dated: September 30, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE
