UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELINA ROBERTS, ANTHONY | * | |
| SCIOTTO, ERIC BURNS, KERI DICKEY, | * | |
| ANGELA RAMIREZ, DIANA | * | |
| SANTILLAN, CAMILLE GHANEM, | * | |
| ARNOLD WILLIAMS, OLUWATOSIN | * | |
| BABALOLA, TOMMY ZAHTILA, | * | |
| TODD JUSTICE, GIANFRANCO | * | |
| PIROLO, MICHAEL O'GRADY, | * | |
| AND JASON FOSTER, individually, and | * | |
| on behalf of other persons similarly situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 13-cv-13142-ADB |
| v. | * | |
| | * | |
| THE TJX COMPANIES, INC., a Delaware | * | |
| Corporation; MARSHALLS OF MA, INC., | * | |
| a Massachusetts Corporation; MARMAXX | * | |
| OPERATING CORP., a Delaware | * | |
| Corporation, d/b/a MARSHALLS | * | |
| HOMEGOODS, d/b/a | * | |
| MARSHALLS, d/b/a T.J. MAXX | * | |
| HOMEGOODS; HOMEGOODS, INC., a | * | |
| Delaware Corporation; | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this putative class and collective action, the plaintiffs allege that their employers, the

TJX Companies, Inc.; Marshalls of MA, Inc.; Marmaxx Operating Corp.; and HomeGoods, Inc.

(together, the "Defendants") misclassified them as exempt from the overtime requirements of the

Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"), and then

failed to pay them overtime as required by the FLSA and the NYLL. Presently before the Court

are Plaintiffs'[1] Motion for Conditional Certification under FLSA [ECF No. 124], and Plaintiffs'

Motion for Equitable Tolling [ECF No. 161]. For the reasons set forth herein, the Motion for

Conditional Certification is GRANTED, and the Motion for Equitable Tolling is DENIED

without prejudice.

## I.      BACKGROUND

The plaintiffs in this case, who all worked as Assistant Store Managers ("ASMs") at

Marshalls, HomeGoods, or T.J. Maxx stores in various states (excluding California), alleged that

the Defendants misclassified them as exempt from the overtime requirements of the FLSA and

the NYLL (1) during the period when Plaintiffs participated in a formal "ASM Training

Program" sponsored by their employer (the "ASM Training Claims"); and (2) during their

subsequent employment as ASMs (the "ASM Misclassification Claims"). Defendant TJX

Companies, Inc. is the parent company of Defendants HomeGoods, Inc. and Marshalls of MA,

Inc. See [ECF No. 63 at ¶¶ 42–43 (cited as "Answer")]. There are more than 1300 HomeGoods

or Marshalls retail stores in the United States. Answer ¶ 1. The Plaintiffs seeking conditional

certification under the FLSA in the pending motion [ECF No. 124] have all worked as

Merchandise ASMs in a Marshalls or HomeGoods store.

This case originally stems from three separate putative class and collective actions filed

between December 2013 and May 2014: Roberts v. TJX Companies, Inc., 1:13-cv-13142; Burns

v. TJX Companies, Inc., 1:14-cv-10306; and Ghanem v. TJX Companies, Inc., 1:14-cv-12104.

The three cases were consolidated on August 8, 2014, when the plaintiffs filed their Second

---

[1] The plaintiffs bringing this motion, who are a sub-set of the plaintiffs who initiated the suit, are
Celina Roberts, Eric Burns, Keri Dickey, Angela Ramirez, Diana Santillan, Camille Ghanem,
and also opt-ins Eugene Costa, Jr., Norma McKenzie, Natalie Cromartie, Jerry Freedman, and
Karen Razzetti-Giamis (hereinafter, the "Plaintiffs"). [ECF No. 125 at 1 n.1].

Amended Complaint in the above-captioned action. [ECF No. 60]. After several months of negotiations, the ASM Training Plaintiffs and the Defendants reached a settlement on the ASM Training Claims. [ECF No. 82 (the "Settlement Agreement")]. On March 25, 2015, the plaintiffs filed a Third Amended Complaint that reflected the Settlement Agreement. [ECF No. 89]. On May 6, 2015, this Court issued an order preliminarily approving the Settlement Agreement with revisions to the Settlement Notice and Proposed Order. [ECF Nos. 111, 112]. On September 30, 2016, the Court entered a final approval order on the Settlement. [ECF No. 171]. Therefore, what remains at issue and before this Court are the ASM Misclassification Claims.

On July 23, 2015, Plaintiffs moved to conditionally certify a class under the FLSA for purposes of notice. [ECF No. 124]. They filed a memorandum [ECF No. 125 (cited as "P.Brief")] and a declaration [ECF Nos. 126, 132] in support of the motion. Defendants opposed the motion for conditional certification [ECF No. 147 (cited as "D.Brief")], and submitted an affidavit with exhibits in opposition [ECF No. 148, 151]. On October 14, 2015, Plaintiffs filed a reply in further support of their motion for conditional certification. [ECF No. 156]. On June 3, 2016, Plaintiffs filed a motion to equitably toll the statute of limitations for putative collective action members until ten days after the Court issues an order on the motion for conditional certification [ECF Nos. 161, 162]. Defendants opposed the motion for equitable tolling [ECF No. 163], and filed an affidavit with an attached exhibit in opposition [ECF No. 164]. The parties stipulated to the tolling of the statute of limitations for the remaining ASM claims from February 23, 2015 until the filing of Plaintiffs' Motion for Conditional Certification on July 23, 2015. See Seth R. Lesser Declaration ("Lesser Decl.") [ECF No. 126 at ¶ 5].

## II.      PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

### a. Legal Standard

The FLSA allows employees to sue on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). The FLSA, however, also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Thus, in a FLSA collective action, unlike in a Rule 23 class action, potential plaintiffs are required to affirmatively opt in. See Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 289 (D. Mass. 2015), appeal dismissed, 15-8011 (1st Cir. Nov. 10, 2015). In order to facilitate the FLSA's collective action mechanism, district courts have the discretion to authorize that notice be sent in "appropriate cases" to putative plaintiffs informing them of "the pendency of the action and of their opportunity to opt-in as represented plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)). "[N]othing in FLSA in fact requires certification, it is instead a recognized case management tool for district courts to employ in appropriate cases to facilitate the sending of notice to potential class members." Heitzenrater v. OfficeMax, Inc., 2014 WL 448502, at *1 (W.D.N.Y. Feb. 4, 2014) (citing Myers, 624 F.3d at 555 n.10). To be conditionally certified for purpose of notice under the FLSA, "the putative class members [must be] 'similarly situated' with the named plaintiffs." O'Donnell v. Robert Half Int'l, Inc., 429 F. Supp. 2d 246, 249 (D. Mass. 2006).

Neither the FLSA nor the First Circuit has established a standard that district courts must apply in determining whether potential plaintiffs are "similarly situated," but courts in this Circuit have predominantly applied a two-tier approach. See Trezvant v. Fid. Emp'r. Servs.

Corp., 434 F. Supp. 2d 40 (D. Mass. 2006) ("the majority of courts addressing this issue in the

First Circuit have adopted the two-tier approach"); see also Torrezani v. VIP Auto Detailing,

Inc., No. 16-40009, 2017 WL 888309, at *6 (D. Mass. Mar. 6, 2017) (applying two-tier approach

and allowing conditional class certification even though discovery had completed); Lapan v.

Dick's Sporting Goods, Inc., No. 13-11390, 2014 WL 4206212, at *1 (D. Mass. Aug. 20, 2014)

("After careful consideration, the court sees no reason to blaze new trails or to revisit the two-tier

approach laid out by Judge Young in Trezvant. . . ."); Perez v. Prime Steak Rest. Corp., 959 F.

Supp. 2d 227, 230 (D.P.R. 2013); Johnson v. VCG Holding Corp., 802 F. Supp. 2d 227, 233 (D.

Me. 2011); O'Donnell, 429 F.Supp.2d at 246. Courts in other circuits have likewise applied a

two-tier approach. See Myers, 624 F.3d at 554–55 (explaining that courts in the Second Circuit

have utilized a "two-step method" to determine whether to exercise the discretion to implement

§ 216(b)); see also In re HCR Manorcare, Inc., 2011 U.S. App. LEXIS 26241, at *3 (6th Cir.

Sept. 29, 2011) ("[w]e have . . . implicitly upheld" the two-step approach); Symczyk v. Genesis

Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011) (finding that courts in the Third Circuit

"typically employ a two-tiered analysis" in "deciding whether a suit brough under § 216(b) may

move forward as a collective action"); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233,

1261 (11th Cir. 2008). Accordingly, this Court will apply the two-tier approach generally

accepted in this Circuit to the pending motion for conditional certification under the FLSA.

Using this approach, a court, first, makes a preliminary determination of whether the

potential plaintiffs are "similarly situated" (tier one) and then "makes a final 'similarly situated'

determination" after discovery (tier two). See Trezvant, 434 F. Supp. 2d at 42–43 (quoting Kane

v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001)). The first stage or tier,

often referred to as the "notice stage," ordinarily happens before discovery when plaintiffs move

for conditional certification. <u>See</u> <u>O'Donnell</u>, 429 F. Supp. 2d at 249. The second stage or tier is triggered after discovery if the defendants move for de-certification based on the contention that the plaintiffs that have opted in are not in fact similarly situated. <u>Id.</u> If the Court finds that the plaintiffs are not "similarly situated" at the second stage, it can then de-certify the class and dismiss the opt-in plaintiffs without prejudice. <u>Kane</u>, 138 F. Supp. 2d at 214. "At that [second] stage, courts consider factors such as: 1) the disparate factual and employment settings—e.g. whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations." <u>Trezvant</u>, 434 F. Supp. 2d at 45 (quoting <u>Melendez Cintron v. Hershey P.R., Inc.</u>, 363 F. Supp. 2d 10, 16 (D.P.R. 2005)). Thus, the two-stage process allows the Court to have the benefit of knowing who has opted in when determining whether the plaintiffs are actually similarly situated and if the named plaintiffs are representative.

Here, at the first stage, the Court need only make a "preliminary finding" as to whether the named plaintiffs are similarly situated as to other potential plaintiffs. <u>See</u> <u>id.</u> at 43 (citing <u>Melendez Cintron</u>, 363 F. Supp. 2d at 16). The standard for the preliminary showing is lenient, and "[a]t this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented." <u>Id.</u> (internal quotation marks omitted) (citing <u>Kalish v. High Tech Inst.</u>, No. 04-1440, 2005 WL 1073645, at *2 (D. Minn. Apr. 22, 2005)). "[A] modest factual showing or asserting *substantial* allegations that 'the putative class members were together the victims of a single decision, policy, or plan that violated the law'" is sufficient. <u>Id.</u> (quoting <u>Thiessen v. Gen. Elec. Capital</u>, 267 F.3d 1095, 1102 (10th Cir. 2001)). The Second Circuit has explained that, in a FLSA case, this burden is met when the plaintiffs "mak[e] some showing that 'there are other

employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." <u>Myers</u>, 624 F.3d at 555 (alterations in original) (quoting <u>Family Dollar</u>, 551 F.3d at 1259). It is overall a "low standard of proof." <u>Id.</u>

### b. Analysis

Plaintiffs seek conditional class certification under the FLSA for all Merchandise ASMs who have worked at Marshalls and HomeGoods since February 23, 2012. P.Brief at 1. Conditional certification would allow them to issue notice to an estimated 3000 putative class members. In support of conditional certification, Plaintiffs have provided: (1) the deposition testimony of eight plaintiffs who worked at over 30 Marshalls and HomeGoods stores in eight different states (Florida, Indiana, Maryland, Massachusetts, New York, Texas, and Virginia); (2) the deposition testimony of Defendants' Corporate Representatives; and (3) internal company documents obtained during preliminary discovery. Plaintiffs do not argue that the company policy of exempting Merchandise ASMs was facially invalid; rather, they assert that, in practice and based on their work responsibilities, Merchandise ASMs should not have been exempt from the overtime requirements of the FLSA and thus that exempting them was a de facto violation of the law.

Defendants oppose conditional certification, arguing that Plaintiffs have not met their burden at this stage. In their view, Plaintiffs must, but have not, shown that there was a "common policy or plan that *violated the law*," and "provide evidence sufficient for the Court to reasonably infer that thousands of ASMs across the country performed nonexempt tasks as their primary duty." D.Brief at 13.

In the view of the Court, for present purposes, the Plaintiffs have adduced sufficient evidence to support the inference that Merchandise ASMs were similarly situated with respect to their job requirements and FLSA classification. The job title for Merchandise ASMs was the same throughout all Marshalls and HomeGoods stores. D.Brief at 4 n.6. Although there were two job descriptions for Merchandise ASMs nationwide—one for Marshalls and one for HomeGoods—both job descriptions share nearly the same "major areas of responsibility." See Justin R. Marino Affidavit ("Marino Aff.") [ECF No. 148, Ex. 19]. Every Merchandise ASM was classified as exempt under FLSA for all TJX stores nationwide, regardless of the size of the store, where it was located, the particular Store Manager on premises, or any theoretical variation in the actual duties performed. See Seth R. Lesser Declaration ("Lesser Decl.") [ECF No. 126, Ex. A at 9–12]. In 2013, Defendants audited whether the ASMs performed the managerial duties as listed in their job descriptions, and determined that they did (although the extent to which remains disputed by the parties), which suggests that the job was generally the same from store to store. See Marino Aff., Ex. 18 at ¶ 4.[2]

There is also evidence that all Merchandise ASMs were subject to the same corporate policies, including "BEST Methods." According to Robert Borek, one of Defendants' corporate representatives, "Best Methods are the best practice of how to execute tasks, [and] processes." Lesser Decl., Ex. O at 24:4–5. Tasks and processes include, among other things, receiving freight, ringing the cash register, customer service, and processing goods. Id. at 24:17–23. All ASMs also had to adhere to the same code of conduct, see Lesser Decl., Exs. B at 63–64, E at 5, 7, and underwent the same initial training program, see id., Exs. B at 52–53, E at 19–20. The

---

[2] For the audit, Defendants interviewed 26 Marshalls ASMs and 10 HomeGoods ASMs, see Marino Aff., Ex. 18 at ¶ 4, although it is unclear what percentage of them were Merchandise, rather than Operations, ASMs.

existence of detailed corporate policies guiding how Merchandise ASMs were to do their jobs, similar job descriptions, and a uniform FLSA classification practice all support an inference that the experiences of a small sample of geographically diverse Merchandise ASMs may be representative of the experience of other Merchandise ASMs.

Finally, the eight plaintiff depositions demonstrate that they, as Merchandise ASMs, were performing nonexempt tasks the vast majority of their time, although they also performed managerial tasks as well. See P.Brief at 4 n.6 (citing plaintiff depositions). For purposes of conditional certification, the Court need not make a determination as to whether management was or was not the primary duty of the putative plaintiffs. See, e.g., Indergit v. Rite Aid Corp., Nos. 08-9361, 08-11364, 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010) (deciding not to credit Defendant's argument that the fact-intensive nature of primary duty inquiry precludes FLSA collective action because it would mean that "no FLSA action that is premised upon an alleged misclassification under the executive exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.").

Furthermore, Plaintiffs' deposition testimony also reveals that they regularly worked more than 40 hours per week. See P.Brief at 9 n.41 (citing plaintiff depositions). Again, the Court need not make any credibility assessments, weigh the evidence at this stage, or determine whether the putative class members did in fact work overtime or not. See Trezvant, 434 F. Supp. 2d at 43. A more searching assessment of the evidence is appropriate at the second stage of certification based on the putative plaintiffs who have actually opted in. See id. at 45 (listing factors to consider at second stage). Accordingly, for present purposes, there is a supportable inference, based on the experience of the named plaintiffs and otherwise—including the number

of similarities in the job regardless of the store, location, or supervisor as more fully described above—that other Merchandise ASMs were also performing nonexempt tasks and working more than 40 hours per week.

To further bolster the inference that other Merchandise ASMs nationwide performed nonexempt tasks, Plaintiffs have supplied an internal company document from March 2009—supposedly the results of an internal study by the BEST development team—that indicates that the Defendants were aware that "significant tasking [was] preventing managing from occurring" and that "[m]anagement roles [were] not clear." Lesser Decl., Ex. P at 12. Defendants argue that this document is unreliable because it is over six years old, covers only three stores in Massachusetts, and was created by a vendor to review efficiencies, rather than the classification status of ASMs. D.Brief at 22 n.46. Definitively assessing the strength of the evidence is not necessary at this preliminary stage. See Trezvant at 45. In viewing this 2009 study in an earlier case, the court in Jenkins v. TJX Companies Inc. did not seem to place any weight on it because the plaintiffs in that case failed to provide any context for the document, such that any inferences drawn from it would have been "completely speculative." See Jenkins v. TJX Companies Inc., 853 F. Supp. 2d 317, 321–22 (E.D.N.Y. 2012). Here, the document is part of what appears to be a longer presentation, called "B.E.S.T Training Session," for HomeGoods. Lesser Decl., Ex. P at 12. The 2009 study is on a page labeled "Example 4." A few slides earlier, in what appears to be an introduction to the "Examples," the presentation explains that a "[d]iagnostic was commissioned by HomeGoods to assess areas of opportunity for the business," "[w]e visited 10 pilot stores and observed from open to close, weekdays and weekends," and "510 observations were made by our 6 person team over 530 observation-hours." Id. at 6. Leading up to the 2009 study slide, the presentation includes a chart listing "several types of potential improvement." Id.

at 7. One of the areas of potential improvement was "[u]pdating the specifics of what management, coordinators, and associates do on a daily basis, and optimizing the management structure and tools needed to operate efficiently." Id. In "Example 3: Staffing to demand in cashiering and customer service," a bullet point reads: "'All to register' backup calls caused delays, confusion, and lost productivity." Lesser Decl., Ex. P at 10. The Court finds this document, even discounted for its age and geographic limits, bolsters the inference that Merchandise ASMs performed nonexempt tasks throughout the HomeGoods stores in the United States and will extend the inference to Marshalls stores at this stage given the other evidence that seems to link the experience of the Merchandise ASMs at both stores.

The Court is well aware of the earlier cases involving the same Defendants and ASMs, where district courts in New York declined to conditionally certify a class under the FLSA, and has considered these opinions carefully. See Ahmed v. T.J. Maxx Corp.,[3] Guillen v. Marshalls of MA, Inc.,[4] and Jenkins v. HomeGoods, Inc., 853 F. Supp. 2d 317 (E.D.N.Y. 2012) (together, the "Prior TJX Cases"). In those Prior TJX Cases, the judges determined that there was not enough evidence to permit a finding that the named plaintiffs were "similarly situated" to the putative plaintiffs. Those cases are largely distinguishable based on the quantity and quality of the evidence offered in support of conditional certification. In Jenkins, for example, the plaintiff

---

[3] Ahmed v. T.J. Maxx Corp., No. 10-cv-3609, 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013) [hereinafter Ahmed I] (Spatt, J.) (overruling magistrate judge order granting conditional certification as "clearly erroneous" and "contrary to law."); Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 357 (E.D.N.Y. 2015) [hereinafter Ahmed II] (overruling plaintiff's Rule 72 objections to the magistrate judge order denying Plaintiff's second motion for conditional certification).

[4] Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 804 (S.D.N.Y. 2012) [hereinafter Guillen I] (Gorenstein, M.J.) (denying Plaintiffs' second motion for conditional certification); Guillen v. Marshalls of MA, Inc., 09-9575, 2012 WL 2588771, at *3 (S.D.N.Y. July 2, 2012) [hereinafter Guillen II] (Preska, C.J.) (upon a de novo review of Guillen I, finding the Magistrate Judge's decision "to be correct and appropriate" and adopting his decision).

provided only his own deposition testimony. Jenkins, 853 F. Supp. 2d at 321. In Guillen I, the plaintiffs presented seven depositions of Marshalls ASMs, but those ASMs worked in stores only in the New York City area. Guillen I, 841 F. Supp. 2d at 799. In Ahmed I, the plaintiffs offered deposition testimony of ASMs working only in New York and Connecticut. Ahmed I, 2013 WL 2649544, at *13. In contrast, here, the Plaintiffs have provided depositions from eight Merchandise ASMs who worked in eight different states from different regions of the United States across thirty Marshalls and HomeGoods stores. In Ahmed I, the court emphasized the importance of geographic diversity in distinguishing that case from another FLSA case, Stevens v. HMSHost Corp., No. 10-3571, 2012 WL 4801784, at *1 (E.D.N.Y. Oct. 10, 2012). See Ahmed I, 2013 WL 2649544, at 14. In Stevens, the court conditionally certified a FLSA collective action of assistant store managers, finding that plaintiffs had met their burden at the conditional certification stage "by submitting evidence on identical job classification and training materials across all ASMs nationwide, and presenting testimony from former ASMs across the country regarding their actual job duties." Stevens, 2012 WL 4801784, at *2. The Ahmed I court noted that "the Stevens plaintiffs offered deposition testimony from nine potential plaintiffs, located across the nation, who all alleged that as assistant store managers they were required to primarily do nonexempt tasks. As such, due to this, the Stevens court found that the plaintiffs had offered sufficient evidence at the preliminary certification stage to show that a de facto illegal policy existed that affected all assistant store managers." Ahmed I, 2013 WL 2649544, at *14. The Plaintiffs here have provided a more representative sample of Merchandise ASMs than in Jenkins, Guillen, or Ahmed I, and more akin to Stevens.

In Ahmed II, the court found that the plaintiff's testimony regarding his job duties conflicted with that of the potential opt-ins, which, "[u]nlike [p]laintiff's testimony,"

"suggest[ed] that the Defendants did properly classify [the potential opt-ins] as exempt from overtime." Ahmed II, 103 F. Supp. 3d at 354. Here, the Plaintiffs' testimony regarding their job duties as ASMs is sufficiently consistent to allow for the inference that the Merchandise ASMs performed nonexempt tasks such that they may have been improperly classified under the FLSA.[5] Furthermore, other courts in the Second Circuit have conditionally certified classes under the FLSA using a less demanding standard than it appeared was used in the Prior TJX Cases, including Ahmed II. See, e.g., McEarchen v. Urban Outfitters, Inc., No. 13-03569, 2014 WL 4701164, at *2 (E.D.N.Y. Sept. 23, 2014) ("Urban's admissions [that putative plaintiffs had similar job duties] and corporate documents [that putative plaintiffs uniformly categorized] satisfy the lenient conditional certification standard."); Kalloo v. Unlimited Mech. Co. of NY, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012) ("At this conditional certification stage, the focus of the inquiry 'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" (internal quotation marks omitted) (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005))); Ibea v. Rite Aid Corp., 2012 WL 75426, at *3 (S.D.N.Y. Jan. 9, 2012) (affirming magistrate judge's grant of conditional certification and explaining that, at the first stage, inquiry only involves whether "similarly situated plaintiffs *likely* exist" (emphasis added)); Levy v. Verizon Info. Servs. Inc., No. 06-1583, 2007 WL 1747104, at *5 (E.D.N.Y. June 11, 2007) ("Because the allegations of unpaid

---

[5] Defendants argue that Plaintiffs "robotically answered" questions from their counsel during depositions and that there were significant variations among the depositions with respect to each Merchandise ASM's personal experience. See [ECF No. 147 at 6–10]. The Court declines to engage in a more robust inquiry into the consistency of the Plaintiffs' testimony at this stage, which would effectively result in an inquiry into the merits and force the Court to make credibility determinations and engage in fact-finding not appropriate at this time.

overtime do not derive from one geographic location, there is no reason to assume that the policy was limited to only certain offices or areas.").

Even more instructive, perhaps, is the fact that many courts in this Circuit have similarly applied a relatively lenient standard for conditional FLSA certification. See, e.g., Torrezani, 2017 WL 888309, at *6 (finding plaintiffs meet the first stage's "lenient standard"); Cunha v. Avis Budget Car Rental, LLC, No. 16-10545, 2016 WL 6304432, at *3 (D. Mass. Oct. 26, 2016) (finding that plaintiff "has shown that damage managers at Avis are all classified as salaried employees who are exempt from overtime under FLSA [and] [t]hat alone may be sufficient to issue notice"); Kane, 138 F. Supp. 2d at 215 ("The record thus suggests that the Defendants had a policy of treating at least some of a discrete class of employees (i.e. Crew Coordinators) as exempt from the FLSA overtime requirements. That showing is sufficient for this Court to determine that a 'similarly situated' group of potential plaintiffs exists given the adopted lenient standard for court-facilitated notice."). Some courts have conducted a more searching analysis, but nonetheless have conditionally certified a collective action where putative plaintiffs shared similar job requirements and pay provisions. See Trezvant, 434 F. Supp. 2d at 44, 48 (holding "that the plaintiffs are required to put forth some evidence that the legal claims and factual characteristics of the class in this case are similar").

Thus, in this Court's view, Plaintiffs have satisfied their modest burden for conditional certification by presenting evidence that allows the Court to plausibly infer that there may well be putative plaintiffs who will choose to opt-in that are similarly situated to the Plaintiffs, including (1) that they sometimes worked in excess of 40 hours per week, (2) that they were classified by Defendants as nonexempt for FLSA purposes, (3) that they were not paid overtime, (4) that they performed nonexempt work, and (5) that they had similar job requirements. The

Court declines to require Plaintiffs to show, at this stage, that putative plaintiffs' primary duty was not management. Such issues tread too deeply into the merits and are premature without knowing who the actual class members will be.

The Court believes that the Plaintiffs here have provided more evidence than in the Prior TJX Cases. That being said, although this Court too recognizes the risk of certifying a class based largely on allegations that a facially valid classification scheme is, in practice, violating the FLSA, it is also concerned about companies being able to escape responsibility for possible FLSA violations by simply omitting references to managers' performance of nonexempt tasks in the relevant documentation. At the notice stage, the Court is not persuaded that Plaintiffs have to meet an exceptionally high standard, particularly when the decision can be revisited at a later stage. The purpose of the FLSA notice mechanism is to facilitate collective actions in FLSA cases where plaintiffs are in fact similarly situated. It is difficult to definitively determine whether the putative class members are similarly situated at this stage, at least in part because most putative plaintiffs have likely not received notice of this action. At some point, and in this case we have reached that point, the plaintiffs have done what they can with the information available to them and adduced enough evidence to warrant notice to the other potential plaintiffs. Once those potential plaintiffs have received notice, they will opt-in or not, the group will form, and the Court will then be much better positioned to determine if the plaintiffs are in fact similarly situated. If they are not, the class can be de-certified. If they are, the case will go forward without further procedural wrangling. Taken together, the evidence submitted by the parties supports an inference, at least at this stage, that the Merchandise ASMs in HomeGoods and Marshalls were sufficiently similarly situated for FLSA notice purposes.

### III.    PLAINTIFFS' MOTION FOR EQUITABLE TOLLING

Plaintiffs also ask this Court to equitably toll the statute of limitations for putative collective action members from July 23, 2015 until ten days after the Court rules on the Motion for Conditional Certification. [ECF No. 161]. Defendants oppose equitable tolling, and challenge Plaintiffs' standing to even make the motion. [ECF No. 163].

### a.  Legal Standard

Equitable tolling is only warranted in "extraordinary circumstances," Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001), and should be granted "sparingly," Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999). "Generally speaking—peculiar circumstances may leave some wiggle room—equitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control. . . ." Id. at 279. In short, in order to have a limitations period equitably tolled, a plaintiff must "show[] (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way." Curtis v. Scholarship Storage Inc., No. 14-303, 2015 WL 1241365, at *6 (D. Me. Mar. 18, 2015) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "Courts generally weigh five factors when considering whether to allow equitable tolling in a particular case: (1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the [filing] requirement." Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 48 (1st Cir. 2005) (alterations in original) (internal quotation marks omitted) (quoting Kelley v. N.L.R.B., 79 F.3d 1238, 1248 (1st Cir. 1996)).

Some courts have held that equitable tolling for putative collective action members is

premature at the conditional certification stage because the individuals have not yet opted in and are thus not yet parties to the case. See, e.g., Lemmon v. Harry & David Operations, Inc., No. 15-779, 2016 WL 234854, at *8 (S.D. Ohio Jan. 20, 2016); Weil v. Metal Techs., Inc., No. 15-00016, 2015 WL 5827594, at *2 (S.D. Ind. Oct. 6, 2015); Atkinson v. TeleTech Holdings, Inc., 14-cv-253, 2015 WL 853234, at *8 (S.D. Ohio Feb. 26, 2015); In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act and Wage and Hour Litig., No. 14-02504, 2014 WL 3695750, *3 (W.D. Ky. 2014); Tidd v. Adecco USA, Inc., No. 07-11214, 2010 WL 996769 (D. Mass. Mar. 16, 2010); Ingersoll v. Royal & Sunalliance USA, No. 05-1774L, 2006 WL 859265, at *3 (W.D. Wash. Feb. 10, 2006); United States v. Cook, 795 F.2d 987, 994 n.5 (Fed. Cir. 1986). The district court in Tidd explained that because some putative collective action members might in fact never opt-in, a decision on equitable tolling prior to opt-in would result in an impermissible advisory opinion. Tidd, 2010 WL 996769, at *3. Many courts have nonetheless addressed the equitable tolling issue for putative plaintiffs at the conditional certification stage. See, e.g., Kampfer v. Fifth Third Bank, No. 14-2849, 2016 WL 1110257, at *7 (N.D. Ohio Mar. 22, 2016) (collecting cases where courts equitably tolled statute of limitations for FLSA putative collective action members).

**b. Analysis**

The limitations period for a claim under FLSA is two years, or three years if the violation is willful. 29 U.S.C. § 255(a). The limitations period on claims of a potential opt-in plaintiff in a FLSA collective action is not tolled by the filing of a complaint, but instead continues to run until the putative plaintiff files a written consent to join the action. 29 U.S.C. § 256(b). Putative plaintiffs are not prevented from bringing their own claim or from joining the lawsuit prior to the issuance of court-facilitated notice, as evidenced by the plaintiffs who have already opted into

this case. See, e.g., [ECF Nos. 48, 125 at 1]; see also O'Donnell v. Robert Half Int'l, Inc., 534 F. Supp. 2d 173, 182 (D. Mass. 2008) (explaining that, in FLSA action, "nothing has prevented other individuals from joining the lawsuit"). Unlike members to a Rule 23 class action who fail to opt-out, putative plaintiffs to a FLSA collective action case are not bound by the judgment in the action unless they have affirmatively opted-in. Compare Cunha, 2016 WL 6304432, at *2 (explaining that FLSA requires employees to opt-in to be bound by any judgment) with Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004) (explaining that, under Rule 23, putative plaintiffs who fail to opt-out after appropriate notice are bound by court's actions). The Supreme Court has explained that "[c]ourt authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Sperling, 493 U.S. at 172.

Court-facilitated notice can also aid in preserving the claims of putative plaintiffs. See, e.g., Patton v. Thomson Corp., 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (finding that "early notice will help to preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case"). The Court recognizes the possibility that the claims of some putative plaintiffs might have become time-barred while the motion for conditional certification was under consideration. Nonetheless and given the extraordinary nature of equitable tolling, the Court is reluctant to toll the limitations period for thousands of putative collective action members, particularly where it is possible that no putative plaintiffs whose claims are time-barred ultimately elect to opt-in.

Accordingly, the motion for equitable tolling is denied without prejudice, to be renewed as appropriate.

IV.     **CONCLUSION**

Plaintiffs' Motion for Conditional Certification [ECF No. 124] is <u>GRANTED</u>, and Plaintiffs' Motion for Equitable Tolling [ECF NO. 161] is <u>DENIED</u> without prejudice. It is hereby <u>ORDERED</u> that Defendants shall produce the names and last known addresses of the conditionally certified collective action members within 14 days of this order. Within seven (7) days of this order, Plaintiffs shall submit a proposed notice letter and consent form to which the Defendants will have seven (7) days to object. Once the Court approves the notice letter and consent form, Plaintiffs are authorized to issue notice to all members of the conditionally certified collective action.

**SO ORDERED.**

Dated: March 31, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE
