UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CELINA ROBERTS, ANTHONY | * | |
| SCIOTTO, ERIC BURNS, KERI DICKEY, | * | |
| ANGELA RAMIREZ, DIANA | * | |
| SANTILLAN, CAMILLE GHANEM, | * | |
| ARNOLD WILLIAMS, OLUWATOSIN | * | |
| BABALOLA, TOMMY ZAHTILA, | * | |
| TODD JUSTICE, GIANFRANCO | * | |
| PIROLO, MICHAEL O'GRADY, | * | |
| AND JASON FOSTER, individually, and | * | |
| on behalf of other persons similarly situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 13-cv-13142-ADB |
| v. | * | |
| | * | |
| THE TJX COMPANIES, INC., a Delaware | * | |
| Corporation; MARSHALLS OF MA, INC., | * | |
| a Massachusetts Corporation; MARMAXX | * | |
| OPERATING CORP., a Delaware | * | |
| Corporation, d/b/a MARSHALLS | * | |
| HOMEGOODS, d/b/a | * | |
| MARSHALLS, d/b/a T.J. MAXX | * | |
| HOMEGOODS; HOMEGOODS, INC., a | * | |
| Delaware Corporation; | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

## I.      INTRODUCTION

In this putative class and collective action, the named plaintiffs allege that their

employers, The TJX Companies, Inc.; Marshalls of MA, Inc.; Marmaxx Operating Corp.; and

HomeGoods, Inc. (together, the "Defendants") misclassified them as exempt from the overtime

requirements of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL"), and failed to pay them overtime as required by the FLSA and the NYLL.

The named plaintiffs, who worked as Assistant Store Managers ("ASMs") at Marshalls, HomeGoods, and T.J. Maxx stores in various states (excluding California), allege that the Defendants misclassified them as exempt from the overtime requirements of the FLSA and the NYLL both (1) during the period when Plaintiffs participated in a formal "ASM Training Program" sponsored by their employer (the "ASM Training Claims"); and (2) during their subsequent employment as ASMs (the "ASM Misclassification Claims"). The parties settled the ASM Training Claims, and the Court approved the settlement. [ECF No. 171]. The ASM Misclassification Claims have not been settled.

Presently before the Court is Defendants' Motion for Summary Judgment as to the claims of Tommy Zahtila and Anthony Sciotto, two of the named plaintiffs ("Zahtila" and "Sciotto"). [ECF No. 122].[1] The Defendants argue that the record undisputedly shows that Zahtila and Sciotto were properly classified as executives and therefore exempt from FLSA's and NYLL's overtime compensation requirements. Accordingly, the Defendants ask the Court to enter a judgment as a matter of law in favor of the Defendants. Id. For the reasons set for below, the Defendants' Motion is <u>DENIED</u>.

## II.   BACKGROUND

### a.  Procedural History

This case stems from three separate putative class and collective actions filed between December 2013 and May 2014: <u>Roberts v. TJX Companies, Inc.</u>, 1:13-cv-13142; <u>Burns v. TJX</u>

---

[1] In their motion, the Defendants specifically move the Court "for summary judgment on <u>all</u> claims asserted against it by" Zahtila and Sciotto. [ECF No. 122 at 1] (emphasis added). The Defendants clarify in their Memorandum of Law in Support of the Motion for Summary Judgment that the parties have in fact resolved the claims pertaining to Zahtila's and Sciotto's misclassification claims during their training. [ECF No. 129 at 3 n.1]. The Court gave final approval to the settlement. [ECF No. 171].

Companies, Inc., 1:14-cv-10306; and Ghanem v. TJX Companies, Inc., 1:14-cv-12104. In each

case, the named plaintiffs alleged that Defendants misclassified ASMs as exempt from the

overtime requirements of the FLSA and NYLL at Marshalls, HomeGoods, and/or T.J. Maxx

stores nationwide (excluding California), and failed to pay ASMs overtime in accordance with

the FLSA and NYLL.

The three cases were consolidated on August 8, 2014, when Plaintiffs filed their Second

Amended Complaint in the above-captioned action. [ECF No. 60]. After several months of

negotiations, the ASM Training Plaintiffs and the Defendants reached a settlement on the ASM

Training Claims, although the settlement discussions did not address the ASM Misclassification

Claims. [ECF No. 82 (the "Settlement Agreement")]. On March 25, 2015, the plaintiffs filed a

Third Amended Complaint that reflected the Settlement Agreement. [ECF No. 89]. On May 6,

2015, this Court issued an order preliminarily approving the Settlement Agreement with

revisions to the Settlement Notice and Proposed Order. [ECF Nos. 111, 112]. On September 30,

2016, the Court entered a final approval order on the Settlement. [ECF No. 171].

On July 23, 2015, Defendants filed this motion for summary judgment. [ECF Nos. 122,

129 (hereinafter, "D.Brief")]. Plaintiffs filed an opposition on September 18, 2015. [ECF No.

144 (hereinafter, "P.Brief")]. Both parties have filed statements of undisputed material facts

under Local Rule 56.1 [ECF Nos. 127, 146]. The Defendants have also filed a reply [ECF No.

154 (hereinafter, "D.Reply")], and the Plaintiffs have filed Notice of Supplemental Authorities

[ECF No. 158]. Finally, the Defendants filed another statement under Local Rule 56.1 that

combined each of the parties' initial statements and responded to Plaintiffs counterstatements.

[ECF No. 155].

### b.  Factual Background

The following facts are undisputed, unless otherwise noted. Pursuant to Local Rule 56.1

material facts contained within the Local Rule 56.1 statement filed by the moving party are

deemed admitted for purposes of this summary judgment motion unless controverted by the

opposing party's statement. Additional relevant facts will be discussed as needed in this

Memorandum and are presented in the light most favorable to the plaintiffs, the nonmoving

party.[2]

"Through its operating subsidiaries, TJX is the leading off-price retailer of apparel and

home fashions in the United States." [D.Facts ¶ 1]. The Marmaxx Group, which includes T.J.

Maxx and Marshalls retail operations, and HomeGoods are divisions of TJX. Id. At a Marshalls

store location, the Store Manager ("SM") is the most senior employee and the ASMs report to

him or her. [D.Facts ¶ 2; P.Facts ¶ 2]. The SM reports to a District Manager ("DM"). Id. There

were two types of ASMs at Marshalls: Operations and Merchandise ASMs. The hourly

associates generally report to their respective coordinators (department managers) who report to

their respective ASMs. During the relevant time period, the sales associates started at an hourly

rate of $7.25 per hour. [D.Facts ¶ 81; P.Facts ¶ 81]. At issue here is the proper classification of

Zahtila and Sciotto under FLSA and NYLL, both of whom were Operations ASMs.

The company job description of the Operations ASM position indicates, among other

things, that the Operations ASMs "manage in-store operations," including "customer service,

recruiting, interviewing, hiring, training, and associate development," and that they "[o]versee[]

the efficient operation of key areas such as cash office, maintenance, and back room functions."

---

[2] In this Memorandum, the Defendants' statement of undisputed material facts under Local Rule 56.1 [ECF No. 127] will be referred to as "D.Facts," and Plaintiffs' response and counterstatement under Local Rule 56.1 [ECF No. 146] will be referred to as "P.Facts."

[D.Facts ¶ 3]; see also Justin R. Marino Declaration ("Marino Decl.") [ECF No. 123], Ex. 5.

There are four major areas of responsibility listed: (1) developing an effective operational team;

(2) managing store operations, human resources functions and the daily activities of the cash

office; (3) managing the Door to Floor process and other backroom activities; and (4) overseeing

and managing the maintenance of the store. Marino Decl., Ex. 5. Each of these areas is

accompanied by a long list of more specific duties, including participating in the recruiting and

hiring process, upholding company values and the code of conduct, disciplining associates,

preparing evaluations for reporting associates and coordinators, developing work schedules,

exercising discretion regarding customer service policies in order to satisfy customers, and

providing coaching, training, and development to specific associates and coordinators. See id.

The job description does not explicitly mention that the ASM is expected to engage in associate-

level, non-managerial work based on the store's need. See id. Plaintiffs dispute the accuracy of

the job description. [P.Brief at 9–11].

Zahtila and Sciotto were both reviewed by their SM in their Operations ASM roles. See

Marino Decl., Exs. 12–15, 21–23. The performance evaluations contain a self-review by the

ASM and reviews by the SM. Id. Defendants have emphasized that the performance reviews

reveal the significance of Zahtila's and Sciotto's managerial responsibilities. See [D.Brief at 10].

Plaintiffs vigorously dispute this. [P.Brief at 10–11].

### i. Tommy Zahtila's Tenure at Marshalls

Tommy Zahtila worked as an Operations ASM at a Marshalls location in Freeport, New

York (the "Freeport Store") from April 2010 until he was terminated in May 2012. [D.Facts ¶¶ 4,

5; P.Facts ¶¶ 4, 5]. At the Freeport Store during Zahtila's tenure, there were a total of 55

associates and six coordinators. [D.Facts ¶ 6; P.Facts ¶ 6]. On any typical day, roughly six to 12

associates and six coordinators worked in the store. Id. Zahtila received an annual salary of

$56,000. [D.Facts ¶ 52; P.Facts ¶ 52]. The Store Manager and the ASMs, including Zahtila, were

eligible for annual bonuses based on the store's sales performance. [D.Facts ¶ 53].[3] In his final

year as an Operations ASM, Zahtila received a $4,767.23 bonus. Id. According to Zahtila, he

typically worked 50 to 60 hours per week and 60 to 70 hours per week during the Christmas

season, which began roughly the week of Black Friday and ran through Christmas week.

Deposition of Tommy Zahtila ("Zahtila Depo.") 46:12-17; 47:13-20. During the interview

process, Zahtila claims that he was told that he could expect a 40 to 45 hour workweek and he

understood that he was going to be paid an annual salary. See id. 86:5–9.

Before beginning as an Operations ASM in Freeport, Zahtila attended a five-week

training program at the Marshalls in Elmont, New York [D.Facts ¶ 4; P.Facts ¶ 4]. At the

training, Zahtila was provided with "basic knowledge" about managing and supervising the

store, which he described as knowledge necessary to open and close the store based on company

policies and procedures. Zahtila Depo. 42:14. Zahtila recalls receiving training on store structure,

store culture, and shrinkage. [P.Facts ¶ 4]. While Zahtila did not receive hands-on training on

interviewing and disciplining associates during the training program, he had basic knowledge on

this topic from his review of interview questionnaires and his past experience. Zahtila Depo.

43:10-19.

The parties dispute how accurately the company job description of the Operations ASM

position and Zahtila's performance evaluations reflect his actual duties. See, e.g., [P.Facts ¶ 3].

---

[3] The Plaintiffs' response to this fact was unclear. Plaintiffs write: "Plaintiffs' knowledge or information regarding the non-personal facts in paragraph 53." The Court assumes they mean that the Plaintiffs have no knowledge or information regarding the non-personal facts in paragraph 53.

Despite the impression these company-generated documents might give, Zahtila claims that he actually spent a majority of the time performing non-managerial tasks and that he only conducted his managerial duties "occasionally." See, e.g., [D.Facts ¶ 30; P.Facts ¶ ¶ 25, 30]. Specifically, Zahtila estimates that he only spent about 5–10% of his time per shift on managerial tasks. Zahtila Depo. 57:7–10. Non-managerial tasks included ringing the register, unloading the truck, cleaning the fitting rooms and bathrooms, and locating bags or other items for customers. See [D.Facts ¶ 30; P.Facts ¶ 30]. Zahtila claims that he was not able to supervise associates while he was engaged in non-managerial tasks. See, e.g., Zahtila Depo. 75:5–20. He would inform his Store Manager when he could no longer manage the store building because he had to do non-managerial tasks. Id. at 76:4–13. Furthermore, Zahtila claimed that the SM needed to be involved in most situations on the sales floor, except those that were very urgent or relatively minor—for example, compliance with the company no gum chewing policy. Id. at 80:5–25. Zahtila claimed that his SM was present four out of five of his shifts per week. Id. at 59:10–22. He also stated, however, that he was responsible for ensuring that certain associates and coordinators complied with company policy and procedures, and SM orders. See, e.g., id. at 82:5–17 ("I was in charge to make sure that he [the backroom coordinator] was following the company policies and procedures, correct.").

The Plaintiffs also dispute how accurately Zahtila's resume illustrates the character of his job. His resume indicates that he maintained and monitored payroll and expenses to stay within the company budget; that he supervised and developed a team of 55 associates and 6 department managers (coordinators); and that he managed the remodel team. Marino Decl., Ex. 4. His resume also says that he "contributed" to a $1.2 million total stores sales increase and a decrease in shrinkage. Id. Zahtila claims that he embellished his resume to make himself marketable;

however, he still admits that he performed all of the managerial duties listed on his resume some portion of the time even if he excluded the non-managerial tasks. [P.Facts ¶ 28]; Zahtila Depo. 303:22–305:21. Specifically, Zahtila testified that he was not "lying" on the resume because he "occasionally did all this stuff. They don't need to know the time frame if I did it every day, if I didn't do it every day. I did it occasionally." Id. at 305:17–21.

Furthermore, Zahtila conducted first-round interviews, using the company-created interview questionnaire, of potential associates and provided their answers and his opinion on their candidacy to his Store Manager, who made the final hiring decision. [D.Facts ¶¶ 32, 33; P.Facts ¶¶ 32, 33]. The Store Manager also had the authority to fire an employee, but Zahtila could carry out the termination in the Store Manager's absence. Zahtila Depo. 158:16-24. Furthermore, Zahtila was able to counsel employees for non-compliance with corporate policies, which was documented on their record cards, or to verbally counsel them, which was not always documented, and such citations could contribute to a decision of whether to fire them. Id. at 131, 154; [D.Facts ¶¶ 40, 41, 42; P.Facts ¶¶ 40, 41, 42]. Furthermore, Zahtila completed 10-12 associate evaluations once a year, which were then reviewed and edited by the Store Manager. [P.Facts ¶ 37].

### ii. Anthony Sciotto's Tenure at Marshalls

Anthony Sciotto worked as an Operations ASM at Marshalls in New York, first at the Westbury location (the "Westbury Store") and then at the Elmont location (the "Elmont Store"), from July 2010 until February 2013. [D.Facts ¶¶ 55, 56; P.Facts ¶¶ 55, 56]. While an Operations ASM, Sciotto was selected as an "operations specialist." [D.Facts ¶ 57; P.Facts ¶ 57]. As an operations specialist, he made at least five visits to different Marshalls stores to meet with Operations ASMs, walk the sales floors, and identify opportunities for operational improvement.

[D.Facts ¶ 58; P.Facts ¶ 58]. Sciotto was then promoted to Store Manager at Marshall's Jamaica location and worked in that position until he was terminated in November 2013. Id. The Westbury and Elmont Marshalls stores employed between 70 to 90 associates and six coordinators. [D.Facts ¶ 59; P.Facts ¶ 59]. During his last year as an Operations ASM, Sciotto earned an annual salary of $70,000. He was paid performance-based bonuses of $4,071.46 in 2012 and $7,029.73 in 2013. [D.Facts ¶¶ 79, 80; P.Facts ¶¶ 79, 80]. Like Zahtila, Sciotto attended an ASM training program prior to officially starting work as an Operations ASM. [D.Facts ¶ 55; P. Facts ¶ 55].[4]

As the Operations ASM, Sciotto was primarily responsible for the front end of the store and the stockroom. Deposition of Anthony Sciotto ("Sciotto Depo.") 81:24–82:9. Many of his duties were governed by corporate policy and guidelines. See, e.g., Sciotto Depo 373:18–23. Although he did not directly hire associates, he did perform initial screening interviews based on a questionnaire developed by the company and asked additional questions he determined were necessary. [D.Facts ¶ 23; P.Facts ¶ 23]. During his time as an Operations ASM, Sciotto interviewed roughly a 100 candidates for part-time associate positions. [D.Facts ¶ 70; P.Facts ¶ 70]. He would form an opinion of whether a candidate should be hired and pass the recommendation to the Store Manager, who would make the final hiring decision. [D.Facts ¶ 72; P.Facts ¶ 72]. There were times when, based on Sciotto's opinion alone, a candidate did not proceed to an interview with the Store Manager. Id. Sciotto's involvement in associate training was limited by his other priorities and guided by corporate policies, but he was responsible for ensuring that the proper policies were followed (when he was able to) and that associates took a

---

[4] Defendants did not provide a copy of Sciotto's post-Marshalls resume with this motion for summary judgment. [ECF No. 122].

corporate skills test. [P.Facts ¶¶ 74, 75]. Sciotto was able to "coach" associates if he noticed that they were failing to comply with proper rules and procedures; and while he was not able to officially sanction them, he could escalate a situation to his SM. [D.Facts ¶ 76; P.Facts ¶ 76]. Sciotto also drafted associate evaluations that were reviewed and edited by the SM. [D.Facts ¶ 77; P.Facts ¶ 77].

Further, Sciotto was involved in payroll, hiring, supply orders, signage, audit, and general delegation of duties. Sciotto Depo. 82:10–22. He was responsible for audits, which involved filling out a short form provided by the company, and supply orders. [P.Facts ¶ 60]. Sciotto also was able to "strategically schedule" employees based on events that the computer-scheduling system, Kronos, could not anticipate, such as a truck cancellation or bad weather. Sciotto Depo. 115:9-116:10. The need for strategic scheduling was rare and would be addressed quickly as it arose, id., and Sciotto did not have the authority to depart from the budget, [P.Facts ¶ 62].

Sciotto estimates that 80% of the time the Store Manager was present in the store, but he would be the highest ranked employee physically present in the SM's absence. [D.Facts ¶ 59; P.Facts ¶ 59]. Sciotto testified that only about 30% of his time was spent managing, while 70% was spent on non-managerial tasks. [D.Facts ¶ 68; P.Facts ¶ 68]. Some of his non-managerial tasks included unloading the truck, breaking open boxes, processing merchandise, ringing the register, and stocking toilet paper. Id. It seems that Sciotto did, however, have the discretion at least some of the time to determine which non-managerial tasks he would assist on provided that it best furthered the needs of the business. See, e.g., Sciotto Depo. 178:6–179:23. Sciotto also testified that sometimes he was not able to actually supervise employees because he was performing non-managerial tasks and could not perform both duties simultaneously. See, e.g., [P.Facts ¶ 61]. Sciotto further claimed that his Store Manager sometimes assigned him non-

managerial tasks that would take him away from his managerial duties. Sciotto Depo. 321:8–322:22.

### III.   DISCUSSION

#### a.  Legal Standard

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). Here, "[t]he question of how [Plaintiffs] spent their working time . . . is a question of fact," while "[t]he question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law…." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file…demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts

sufficient to rebut the movant's assertions." <u>Nansamba v. North Shore Med. Ctr., Inc.</u>, 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In reviewing the record, however, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Cochran</u>, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." <u>Hannon v. Beard</u>, 645 F.3d 45, 48 (1st Cir.2011). "The factual conflicts upon which he relies must be both genuine and material," <u>Gomez v. Stop & Shop Supermarket Co.</u>, 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." <u>Cochran</u>, 328 F.3d at 6 (quoting <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Medina-Munoz</u>, 896 F.2d at 8. At summary judgment, however, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Burns v. Johnson</u>, No. 15-1982, 2016 WL 3675157, at *4 (1st Cir. July 11, 2016) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)) (alteration in original). At bottom, "[s]ummary judgment for the defendant [] is appropriate when the evidence is so one-sided that no reasonable person could find in favor of the plaintiff." <u>Vega-Colon v. Wyeth Pharm.</u>, 625 F.3d 22, 25 (1st Cir 2010) (quoting <u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 211 (1st Cir. 2003).

**b.  Analysis**

Both New York and federal wage law require employers to compensate employees who work over forty hours per week at a rate of one-and-a-half times the regular rate. 29 U.S.C. § 207(a)(1); N.Y. Labor Law §§ 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (expressly adopting the provisions and exemptions of the federal Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*). There are, however, numerous exceptions to these overtime compensation requirements. *See* 29 U.S.C. § 213; N.Y. Labor Law § 651.[5] At issue in this case is the exemption for "any employee in a bona fide executive…capacity." 29 U.S.C. § 213(a)(1). In their motion, the Defendants argue that Zahtila and Sciotto qualified for the bona fide executive exemption under both FLSA and NYLL and were therefore not entitled to overtime compensation. See D.Brief at 1.

Pursuant to regulations issued by the Secretary of Labor that were in effect during Plaintiffs' employment, in order for an employee to qualify as an exempted executive under 29 U.S.C. § 213(a)(1), an employer must establish that: (1) the employee's salary is at least $455/week; (2) the employee's "primary duty" is management; (3) the employee "customarily and regularly directs the work of two or more other employees;" and (4) the employee "has the authority to hire or fire other employees or whose suggestions or recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a). [6] Each of these four requirements must be met

---

[5] NYLL's exemptions to the overtime requirement are interpreted the same as the FLSA's, and thus do not require a separate analysis. See Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012) (omitting separate analysis of plaintiffs' NYLL claims because the NYLL "mandates overtime pay and applies the same exemptions as the FLSA.")

[6] The salary requirement in 29 C.F.R. § 541.100(a)(1) has been amended and became effective after the time period at issue.

for the exemption to apply. "The burden is on the employer to prove an exemption from the

FLSA's requirements." Marzuq v. Cadete Enterprises, Inc., 807 F.3d 431, 438 (1st Cir. 2015)

(citing Cash v. Cycle Craft Co., 508 F.3d 680, 683 (1st Cir. 2007)). Moreover, "the remedial

nature of the statute requires that [its] exemptions be narrowly construed against the employers

seeking to assert them." Id. at 438 (quoting Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7 (1st

Cir.1997)) (alteration in original) (further internal citations and quotation marks omitted).

A genuine dispute as to any of the four requirements is sufficient to deny summary

judgment. Id. at 435. Plaintiffs have conceded that Zahtila and Sciotto each earned a salary of

more than $455 per week, thereby satisfying the first requirement under 29 C.F.R. § 541.100(a).

See [P.Facts ¶¶ 52, 79]. The parties, however, dispute the material facts supporting the remaining

three requirements.

### i. "Primary Duty" Requirement

The second FLSA executive exemption requirement is that the employee's primary duty

be management. The Secretary of Labor's regulations break down and define both "primary

duty" and "management." Firstly, "management" activities include, but are not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates
> of pay and hours of work; directing the work of employees; maintaining production
> or sales records for use in supervision or control; appraising employees'
> productivity and efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances; disciplining
> employees; planning the work; determining the techniques to be used; apportioning
> the work among the employees; determining the type of materials, supplies,
> machinery, equipment or tools to be used or merchandise to be bought, stocked and
> sold; controlling the flow and distribution of materials or merchandise and supplies;
> providing for the safety and security of the employees or the property; planning and
> controlling the budget; and monitoring or implementing legal compliance
> measures.

29 C.F.R. § 541.102. An employee's "primary duty" is management when management is "the

principal, main, major or most important duty that the employee performs." 29 C.F.R.

§ 541.700(a). Importantly, the regulations instruct that the "[d]etermination of an employee's primary duty must be based on *all the facts* in a particular case, with the major emphasis on the character of the employee's job *as a whole*." <u>Id.</u> (emphasis added).

The regulations provide a list of non-exclusive factors to consider in conducting this "primary duty" analysis: "[1] the relative importance of the exempt duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700. While the regulations do not provide guidance on how to weigh the various primary duty factors, the analysis is a holistic one, and thus the various factors will necessarily influence each other. Furthermore, the fact that an employee performs nonexempt work "concurrently" with his or her exempt work does not preclude finding that the employee falls within the executive exemption provided that management is still his or her "primary duty." <u>See</u> 29 C.F.R. § 541.106. "Whether an employee who concurrently performs both types of duties meets the requirements is determined on a case-by-case basis." <u>See</u> <u>Marzuq</u>, 807 F.3d at 435–36 (citing 29 C.F.R. § 541.106). "[E]ven a substantial overlap in the performance of non-managerial and managerial work will not disqualify an employee from the exemption if the executive duties are his or her 'primary duty.'" <u>Marzuq</u>, 807 F.3d at 436 (citing 29 C.F.R. § 541.106(b)).

### 1. *Factor 1: Amount of Time Spent Performing Exempt Work.*

The parties dispute the amount of time Zahtila and Sciotto spent performing their managerial duties. Plaintiffs argue that Zahtila and Sciotto performed nonexempt work the vast majority of the time and could generally not perform exempt work simultaneously. Defendants have not focused on contesting these estimates in their briefs, but have instead argued that, first,

the amount of time spent on nonexempt work is not dispositive of the primary duty inquiry, and, second, that Zahtila and Sciotto concurrently performed their managerial duties, such as supervising and training, while they performed their non-managerial tasks.

The Department of Labor's regulations provide that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. 541.700(b). "Time alone, however, is not the sole test" and "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." Id. Thus, the amount of time spent on exempt work is useful, but not dispositive of the primary duty inquiry.

The Plaintiffs provide evidence that they spent significantly less than 50% of their time on exempt duties. Zahtila estimates that he generally worked 50–60 hours per week and 60–70 hours per week during the holiday season. He estimates that he spent roughly five to ten percent of his time performing managerial tasks. If these estimates, which Defendants "vigorously dispute[]" [DF brief at 16], are correct, this means that Zahtila would have worked 45 to 54 hours—more than a full workweek—performing non-managerial tasks. Sciotto estimates that he worked between 50 to 65 hours per week and that he spent about 70% of the time doing non-managerial tasks. If true, this means he would have spent 35 to 45.5 hours per week performing non-managerial tasks. The Plaintiffs' testimony indicates that the amount of time factor weighs in their favor; however, these estimates do not end the inquiry because, not only do Defendants dispute them, but also the estimates do not seem to account for the possibility of concurrent duties.

The nature of Zahtila's and Sciotto's concurrent duties—whether they could and did simultaneously perform their managerial and non-managerial duties—is disputed and could significantly complicate the amount of time inquiry. The "concurrent duties" provision in the Department of Labor's regulations provides an example of a retail assistant manager who could qualify as an exempt executive despite performing nonexempt work. See 29 C.F.R. § 541.106(b). Specifically, an assistant manager that supervises and directs other employees *while* performing nonexempt tasks does not necessarily lose the exemption provided that his or her primary duty is still management. See id. In line with this provision, courts have found that employees qualify for exempt status even when the vast majority of their time was spent on nonexempt work. See, e.g., Donovan v. Burger King Corp., 672 F.2d 221, 226 (1st Cir. 1982) ("an employee can manage while performing other work," and "this other work does not negate the conclusion that his primary duty is management''); see also Donovan v. Burger King Corp., 675 F.2d 516, 521 (2d Cir. 1982) (finding that Burger King assistant managers were exempt where they were "solely in charge of their restaurants and [we]re the 'boss' in title and in fact" the bulk of their working time); Murray v. Stuckey's, Inc., 939 F.2d 614, 617–20 (8th Cir. 1991) (store managers who spend 65 to 90 percent of their time on "routine non-management jobs such as pumping gas" were nonetheless exempt executives). In such cases, while the vast majority of the employees' time was spent on nonexempt work, the employees were also simultaneously engaged in exempt work, such as directing and supervising other employees.

The regulations also provide two examples of employees who perform concurrent duties but are *not* exempt: (1) a "relief supervisor or working supervisor whose primary duty is performing nonexempt work on the production line of a manufacturing plant…[who] occasionally has some responsibility for directing the work of other nonexempt production line

employees; and (2) "an employee whose primary duty is to work as an electrician …[and] also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor." 29 C.F.R. § 541.106(c). Thus, employees who occasionally perform supervisory work do not automatically qualify for the exemption simply because they sometimes perform managerial tasks.

The parties dispute whether Zahtila and Sciotto could have performed their duties concurrently. Defendants claim they could have, while Zahtila and Sciotto testified that they, in practice, could not.[7] In fact, Zahtila testified that he regularly called the SM whenever he had to perform non-managerial tasks because he was unable to supervise the building during those times. Zahtila Depo. 75:24–76:19. Sciotto likewise testified that there were times when he could not perform his managerial duties while he was engaged in a non-managerial task, which the Store Manager would assign him. See, e.g., Sciotto Depo. 321:8–322:8. Thus, if Zahtila and Sciotto could not simultaneously perform their managerial and non-managerial duties, then the amount of time they spent on exempt work could have been relatively small, and the character of their jobs would be more comparable to the example of the nonexempt supervisors in § 541.106(c), rather than the exempt assistant managers in § 541.106(b). Moreover, an inability

---

[7] It is not this Court's role, on summary judgment, to assess the credibility of the Plaintiffs' deposition testimony. See Burns, 2016 WL 3675157, at *4. The Defendants have argued that "this Court (like many others), should decline to credit Plaintiffs' 'post-hoc efforts to minimize the relative importance of managerial duties.'" D.Brief at 10. Despite the "many others" they reference, the sole case Defendants cite is an inapposite comparison. In Byers v. Petro Servs., Inc., the court was faced with plaintiffs' deposition testimony that contradicted the same plaintiffs' subsequent declarations. See 110 F. Supp. 3d 1277, 1283 (S.D. Fla. 2015). Here, there is no such declaration that would show that Zahtila and Sciotto have backpedaled on their representations in an effort to minimize their managerial roles. Importantly, at summary judgment, the facts must be viewed in the light most favorable to the nonmoving party, here the plaintiffs.

to perform these duties concurrently would distinguish this case from cases where courts, like the

First Circuit in <u>Donovan</u>, 672 F.2d at 226, found employees exempt even when they spent the

majority of their time performing nonexempt work. <u>See</u> <u>Marzuq</u>, 807 F.3d at 442 (drawing a

distinction between its case, where "the record contains evidence indicating that [the plaintiff's]

supervisory role was, at least at times, overwhelmed by his non-managerial tasks", from <u>Family</u>

<u>Dollar</u>, 637 F.3d at 515–16, where the plaintiff acknowledged performing duties

simultaneously).

Accordingly, it is both disputed how much time the Plaintiffs spent on exempt work and,

more specifically, whether they performed exempt and nonexempt duties simultaneously. These

disputes of material fact preclude finding that the amount of time factor conclusively weighs in

either side's favor.

### 2.  *Factor 2: Relative Importance of Exempt Duties*.

The parties dispute the relative importance of Zahtila's and Sciotto's managerial and non-

managerial duties. Defendants argue that, because their managerial duties were clearly valued

more highly by the company than their non-managerial duties, as revealed by internal company

documents, such as job descriptions, performance evaluations, and compensation, and that their

managerial functions were more important than their non-managerial ones to the success of the

store, the relative importance factor falls in their favor. The Plaintiffs, on the other hand, argue

that a determination of relative importance must be based on work that employees actually

performed, rather than what they were expected by the company to perform, and that the facts of

what Zahtila and Sciotto actually did with respect to each alleged managerial duty is disputed.

The Plaintiffs do not seem to deny that Zahtila and Sciotto performed managerial tasks that were

critical to a store's operations some portion of the time, such as their involvement in creating

work schedules, associate training, and associate hiring. They do dispute, however, what their level of involvement was and what it can be fairly characterized as based on the particular factual circumstances. The Plaintiffs further argue that the relative importance factor must be considered in light of the fact that their actual involvement was minor with respect to the sorts of management duties that Defendants claim they had.

Some courts have conducted the primary duty inquiry from the standpoint of what duties were most important to the employer. See Calvo v. B & R Supermarket, Inc., 63 F. Supp. 3d 1369, 1381 (S.D. Fla. 2014). Courts have also, however, focused on what duties employees actually performed, recognizing that they may differ from what formal company documents might claim. See Dole v. Papa Gino's of Am., Inc., 712 F. Supp. 1038, 1044–45 (D. Mass. 1989); see also Schaefer v. Indiana Michigan Power Co., 358 F.3d 394, 400 (6th Cir. 2004) (in conducting primary duty analysis for FLSA's administrative exemption, "[w]e focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations."). The record is replete with factual disputes bearing on the question of relative importance that, taken as a whole in conducting a holistic assessment of an ASM's job, are material. As such, the discussion here cannot be exhaustive, but the Court will touch briefly on three of the significant disputes that preclude summary judgment.

First, it is disputed how much time the Plaintiffs spent on their non-managerial tasks, and whether they could simultaneously perform their managerial duties. As discussed above, there is evidence that the Plaintiffs spent the vast majority of their time on non-managerial work, and that they could not perform their managerial work concurrently. Zahtila and Sciotto each testified that they spent the bulk of their time on non-managerial work, at least 90% and 70% of the time,

respectively. Furthermore, Zahtila and Sciotto both stated that, at least some portion of the time, they could not perform their managerial and non-managerial work concurrently. Zahtila claimed that whenever he performed associate-level tasks, he would notify his Store Manager that he was unable to supervise the store at the time. Zahtila Depo. 76:9–19. Sciotto testified that labor constraints forced ASMs to engage in associate-level tasks, rather than simply delegating them. Sciotto Depo. 70:3–71:14. Furthermore, while the record does not sufficiently flesh out an ASM's relationship with the SM, there seem to be few, if any, duties that another employee, namely, the Store Manager or another associate, would not be able to cover. Many of the managerial tasks that Zahtila and Sciotto completed, particularly those related to hiring and disciplining, had to be approved or finalized by the Store Manager. Both Zahtila and Sciotto testified that their Store Manager was present in the store the vast majority of the time, and that the ASMs closely worked with the SMs, see, e.g., Marino Decl., Ex. 9 ¶ 12.

Second, it is disputed why the ASMs performed the non-managerial tasks. The Plaintiffs argue that Zahtila and Sciotto were forced to perform such tasks because there were not enough associates to cover them. [P.Brief at 14]. Defendants cite the DOL guidelines explaining that an exempt employee generally exercises discretion in choosing when to perform nonexempt tasks. [D.Brief at 11]. Even if an employee has discretion to perform his or her non-managerial duties, see 29 C.F.R. § 541.106(a), the First Circuit has reasoned that "[i]f contrary to their job descriptions, managers could not *prioritize* their supervisory duties" because customer service or other duties "demanded that they regularly perform tasks ordinarily assigned to hourly employees, a factfinder could reasonably conclude that plaintiffs' exempt and nonexempt duties were equally important to the successful operation of their restaurants," Marzuq, 807 F.3d at 441 (citing Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 at 1270 (11th Cir. 2008)) (emphasis

added). In other words, even if Zahtila and Sciotto theoretically had discretion in completing

their non-managerial tasks, their managerial tasks might not have been more important if other

duties set by the employer forced them to sometimes prioritize their non-managerial tasks.

Zahtila and Sciotto have both testified to the fact that there were times when they prioritized their

non-managerial duties over their managerial ones. For example, Sciotto testified that his SM

assigned him non-managerial tasks that precluded him from performing any managerial tasks

simultaneously, and Zahtila explained to the Department of Labor, when they were reviewing his

termination, that he failed to input associate training time on one occasion because he was

overwhelmed by his other duties and that he understood another manager was covering, see

Marino Decl., Ex. 14 at 3.

Third, there are disputes of fact as to what tasks Sciotto and Zahtila actually performed

with respect to each management duty that Defendants claim they were responsible for. For

example, Defendants' state that "Zahtila was responsible for managing in-store operations,

which included customer service, recruiting, interviewing." [D.Facts ¶ 7]. Plaintiffs deny this in

its entirety and rebut with facts, for example, that Zahtila actually escalated customer complaints

to the SM and never made the actual hiring decisions. [P.Facts ¶ 7]. Similarly in Sciotto's case,

Defendants claim that he managed the payroll budget. [D.Facts ¶ 63]. Plaintiffs, on the other

hand, state that payroll was created by a computer system based on the company budget and that

Sciotto could not change it. [P.Facts ¶ 63]. Despite the importance of the relationship between

ASMs and SMs, of the more than dozens of exhibits Defendants submitted with their summary

judgment motion, only one of them is a declaration by a Store Manager. [8]  See Marino Decl, Ex.

_____

[8] While Exhibit 16 to Defendants' summary judgment motion includes the declaration of a Store
Manager who worked with Sciotto, it is short and references a previous declaration that was not

16. The Defendants' reliance on performance reviews and other internal company documents is not dispositive of the primary duty inquiry because, as the Sixth Circuit noted on a similar issue, "[n]either the job description that [the plaintiff] wrote for his resume nor [the plaintiff's] failure to dispute [the defendant's] position descriptions or performance evaluations prior to this lawsuit preclude him from arguing that his day-to-day activities differ from those described in these documents—such actions merely raise credibility questions for the factfinder." See Schaefer, 358 F.3d at 400–01 (conducting "primary duty" analysis in context of FLSA's administrative exemption).

Thus, there are disputes as to how much time Zahtila and Sciotto spent on their managerial duties, why they engaged in non-managerial work, and what Zahtila's and Sciotto's actual duties were, especially in the context of the SM's role. Such factual disputes belie any contention that the relative importance inquiry is so one-sided that it can be resolved on summary judgment.

### 3. *Factor 3: Employee's Relative Freedom from Supervision.*

The parties dispute Zahtila's and Sciotto's relative freedom from supervision. Defendants argue that the Plaintiffs were the most senior employee "over the front and back end of the store when the Store Manager was not present," that they were responsible for opening and closing the stores, and that they directed lower level employees in store recovery in the evenings. [D.Brief at 14]. Defendants further note that Sciotto testified that his SM was in her office most of the time. Id. Plaintiffs, in response, argue that that they were not free from direct supervision because "(1) the SM was present in the store the vast majority of the time with Plaintiffs and retained all

provided with the motion. See Marino Decl., Ex. 16. There is no declaration from a Store Manager who worked with Zahtila included among the exhibits.

authority and control; and (2) during the limited times the SM was not present, the SM would leave detailed instructions and any substantial decision would still require a call to either the SM or District Manager." [P.Brief at 15].

Freedom from supervision "contemplate[s] decisions of the kind and quality normally made by persons formulating policy within their spheres of responsibility, or who participate in this process, or who exercise authority to commit the employer in a substantial respect, financial, or otherwise." Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 292 (E.D.N.Y. 2010). An employee's exercise of discretionary authority is a relevant, subsidiary consideration. Id. Courts in this district recognize that an employee may exercise discretion with respect to an individual customer even if the employee is "adher[ing] to predetermined guidelines." Hines v. Longwood Events, Inc., No. 08-CV-11653, 2010 WL 2573194, at *8 (D. Mass. June 23, 2010), aff'd sub nom. Hines v. State Room, Inc., 665 F.3d 235 (1st Cir. 2011) (citing Reich v. John Alden Life Insurance Co., 126 F.3d 1, 3 (1st Cir.1997)).

More recently, the First Circuit decided a particularly instructive case, Marzuq v. Cadete Enterprises, Inc., 807 F.3d 431 (2015). The Marzuq Court found that, on facts comparable to the ones at issue here, the relative supervision factor weighed in favor of the plaintiffs, Marzuq, 807 F.3d at 444, but was not dispositive of the primary duty inquiry, id. In Marzuq, the plaintiff had "some autonomy over the day-to-day operations," but was "unable to make any significant or substantial decisions." Id. at 443 (citing Burger King, 672 F.2d at 227). For example, the Marzuq plaintiff was expected to follow company procedures, was subject to regular supervision by company directors who visited a store for 15 minutes to four hours per week, had limited problem-solving authority (*e.g.*, he could not outsource maintenance work), and had limited authority to resolve customer disputes (*e.g.*, he could buy a customer a cup of coffee if they

complained about theirs). Id. There was also some evidence that the Marzuq managers could terminate lower level employees for some reasons, but not others. Id. The Marzuq Court concluded that the plaintiff managers were closely supervised and that the freedom from supervision factor favored the plaintiffs. Id.

Like in Marzuq, the record shows that Zahtila and Sciotto had some degree of autonomy in implementing corporate policies, but that they were "unable to make any significant or substantial decision on [their] own." See id. (quoting Burger King, 672 F.2d at 227). For example, ASMs were permitted pursuant to company policy to markdown goods that were damaged and to extend a customer's layaway by up to five days on a case-by-case basis, but they could not change the policy. They could cite associates who violated company policy and could "coach in the moment" to ensure associates completed their tasks in accordance with company policies, but they could not fire or promote associates. They would review the employee schedule to ensure the store was staffed within budget, but a program called Kronos auto-generated the schedule based on that company budget. They would also check payroll and recent sales in the mornings to ensure that the store stayed within budget and then relay the information back to the SM. Furthermore, it seems that Sciotto and Zahtila were able to determine, at least sometimes, which non-managerial tasks they needed to perform based on what was needed at the time. There is also evidence, however, that the SM assigned ASMs to non-managerial duties. Sciotto has also suggested that this sort of autonomy was an illusion because it was understood that the Operations ASMs were required to fill in on nonexempt tasks where and when needed, and he would sometimes ask his SM what managerial tasks should be done if it was busy.

The parties also dispute how closely supervised the Plaintiffs were. The Defendants mainly focus on explaining that complete freedom from supervision is not required to find that

this factor weighs in their favor and that the Plaintiffs were the most senior employees some period of the time. Even if that is the case, there is evidence on the record to support Plaintiffs' contention that they were nonetheless closely supervised. The Store Manager was in the store the vast majority of the time and both Zahtila and Sciotto testified that he or she had to be involved in all major decisions. Zahtila and Sciotto did not have any final authority in hiring, firing, or sanctioning associates. With respect to certain duties, Zahtila and Sciotto appear to have had even less discretion than the manager in <u>Marzuq</u>. Unlike here, where ASMs only monitored the schedule to ensure it complied with the budget and accounted for unanticipated events, the manager in <u>Marzuq</u> actually created the weekly employee schedules and decided how many hours each employee was assigned, <u>see</u> <u>Marzuq</u>, 807 F.3d at 443. They also had limited authority in resolving customer complaints: they could exercise their discretion within narrow company parameters (*e.g.*, a small discount on damaged goods). Furthermore, it seems that at least some of Zahtila's and Sciotto's managerial duties could be reduced to simply following the SM's detailed orders. An example would be Zahtila's role in remodeling the store. According to Zahtila, someone from the company surveyed the store and created a floor plan detailing the new layout. The SM went over the floor plans with him and provided him with daily instructions on what to do. Zahtila then carried out these instructions, which included delegating tasks to associates. Zahtila Depo. 26:12–22; 27:2–18. Furthermore, there is some evidence that the Store Manager would be the on-floor manager when Zahtila and Sciotto were engaged in nonexempt work (although how frequently is unclear). It also seems that an SM's presence on the floor was not required in order to micromanage the ASMs because he or she could ensure his or her orders were followed by ringing their beepers or by providing detailed instructions.

Thus, the parties dispute the degree of supervision that the Plaintiffs were subject to, which is crucial in analyzing the third primary duty factor. Nonetheless, while there are unresolved facts, the record as it exists now more readily supports a finding that the Plaintiffs' were not relatively free from supervision, especially in light of the First Circuit's holding in Marzuq. See 807 F.3d at 444.

### 4. *Factor 4: Relationship Between Zahtila's and Sciotto's Salaries and the Wages Paid Hourly Employees for Similar Nonexempt Work.*

The relative wage factor most strongly supports the Defendants' assertions that Zahtila's and Sciotto's primary duty was management. As the Defendants highlighted, Zahtila's and Sciotto's pay, if converted to an hourly wage—even assuming Zahtila's and Sciotto's own estimates of how many hours they worked—far exceeded the wage of hourly associates. During the relevant time period, associates received $7.25 per hour. Converting their salary to an hourly wage and assuming a 60-hour workweek, Zahtila would have received roughly $18 per hour and Sciotto would have received roughly $22 per hour, or roughly $1,800 per week and $1,300 per week, respectively. Even when the comparison accounts for the fact that hourly associates earn time-and-a-half for every hour they work over 40 hours, Zahtila's and Sciotto's salaries were still significantly higher.

The parties, however, have not provided the hourly wages of more senior associates or coordinators for comparison. Such a comparison could reveal that the differential is not quite as drastic as it first appears and would help assess the weight of this factor in light of the others. Furthermore, the relative salary factor cannot be considered in isolation from all the other primary duty factors, which are largely inconclusive in this case. As the Secretary of Labor highlighted, the primary duty analysis is a case-by-case analysis of "all the facts." See 29 C.F.R.

§ 541.700(a). Moreover, the FLSA contains a distinct exemption for employees with high wages for which Zahtila's and Sciotto's wages are too low. 29. C.F.R. § 541.601.[9]

### 5.  *Primary Duty Inquiry as a Whole.*

The analysis of the above factors demonstrates that there are material factual disputes as to whether Zahtila's and Sciotto's primary duty was management. The record suggests that Zahtila and Sciotto performed both managerial and non-managerial tasks during their careers at Marshalls. At the very least, Zahtila and Sciotto performed some of the managerial tasks listed in the company job description occasionally. Beyond that, it is hotly disputed what percentage of their time was devoted to their managerial versus non-managerial tasks, and especially whether they could concurrently perform their competing tasks. Thus, a number of the factors that inform the primary duty inquiry are inconclusive—specifically the first and second factors involving relative importance of duties and the amount of time spent on exempt duties—because of factual disputes the parties raised. The third factor, relative freedom from supervision, was also disputed, but seemed to weigh in favor of the Plaintiffs' position on the current record; while the fourth factor weighed in favor of the Defendants' position. The resolution of these factual disputes is critical to determining whether the Plaintiffs' primary duty was management or not, and the evidence is certainly not so one-sided that the Court could find in favor of the Defendants at this stage.

---

[9] "An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part." 29. C.F.R. § 541.601.

Depending on the resolution of such factual disputes, Zahtila and Sciotto might most appropriately be characterized as part-time managers, full-time associates. Taken as a whole, it is not apparent whether such an employee has management as his primary duty. The First Circuit observed that in a scenario where "a factfinder determined that plaintiffs' nonexempt duties regularly consumed more than forty hours per week, *and* that plaintiffs did not, in fact simultaneously perform managerial duties during a substantial portion of that time," then he or she might very well conclude that a plaintiff's *primary* duty is not management. Marzuq, 807 F.3d at at 445. In fact, concluding that such a part-time manager, full-time associate had management as his primary duty would, as the First Circuit observed, contravene FLSA's policy objectives. Id. One of the FLSA's policy objectives was "to spread employment more widely through the work force by discouraging employers from requiring more than forty hours per week from each employee." Id. (quoting Marsall v. Chala Enters., Inc., 645 F.2d 799, 803 (9th Cir. 1981).

Accordingly, summary judgment is not appropriate at this stage because material factual disputes concerning the primary duty requirement exist. Therefore, it is not necessary to address the remaining two requirements of the FLSA executive exemption. See id. at 447 ("The factual dispute concerning primary duty suffices to foreclose summary judgment.").

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment as to Plaintiffs' Sciotto's and Zahtila's Claims [ECF No. 122] is DENIED.

**SO ORDERED.**

Dated: March 31, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE
