UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------X
CELINA ROBERTS, ANTHONY SCIOTTO, ERIC
BURNS, KERI DICKEY, ANGELA RAMIREZ,
DIANA SANTILLAN, CAMILLE GHANEM, ARNOLD
WILLIAMS, TOMMY ZAHTILA, and GIANFRANCO
PIRILO, individually, and on behalf of other persons
similarly situated,

|                                        |                        |
|----------------------------------------|------------------------|
| Plaintiffs,                            | CIVIL ACTION NO.       |
| v.                                     |                        |
|                                        | 1:13-CV-13142          |

THE TJX COMPANIES, INC., a Delaware
Corporation; MARSHALLS OF MA, INC., a
Massachusetts Corporation; MARMAXX
OPERATING CORP., a Delaware Corporation,
d/b/a MARSHALLS HOMEGOODS, d/b/a
MARSHALLS, d/b/a T.J. MAXX HOMEGOODS;
HOMEGOODS, INC., a Delaware Corporation;

Defendants.
----------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      FACTUAL AND PROCEDURAL BACKGROUND…………………………….…...2

II.     THE SETTLEMENT AND PROPOSED PLAN FOR NOTICE…………………….…5

        A.      THE SETTLEMENT……………………………………………………………...5

        B.      THE NOTICE PLAN……………………………………………………………...7

III.    THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUND….…8

IV.     PRELIMINARY APPROVAL OF THIS CLASS ACTION SETTLEMENT UNDER
        AMENDED RULE 23(e) IS APPROPRIATE…………………………………………..10

        A.      Settlement of Class Actions Are Favored………………………………………..10

        B.      Preliminarily Approval is Warranted……………………………………………11

                1.      The Court "will likely be able to… approve the proposal under
                        Rule 23(e)(2)……………………………………………………………..11

                        a.      Rule 23(e)(2)(A): The settlement classes' representatives and class
                                counsel have adequately represented the settlement classes………..12

                        b.      Rule 23(e)(2)(B): The proposal was negotiated at arm's length……14

                        c.      Rule 23(e)(2)(C)(i): The relief provided for the settlement classes
                                is adequate, considering the costs, risks, and delay of trial and
                                appeal…………………………………………………………………..14

                        d.      Rule 23(e)(2)(C)(ii): The relief provided for the settlement classes
                                is adequate, taking into account the effectiveness of the proposed
                                method of distributing relief to the settlement classes including the
                                method of processing class-member claims if required……………...15

                        e.      Rule 23(e)(2)(C)(iii): The terms of any proposed award of
                                attorney's fees and expenses, including the timing of payment…….15

                        f.      Rule 23(e)(2)(C)(iv): Any agreement required to be identified under
                                Rule 3(e)(3)……………………………………………………………17

                        g.      Rule 23(e)(2)(D): The proposal treats settlement class members
                                equitably relative to each other………………………………….........17

                2.      The Court "will likely be able to certify the class" for the settlement
                        purposes……………………………………………………………………18

a.      Numerosity…………………………………………………18

b.      Commonality and Typicality ……………………………………18

c.      Adequacy…………………………………………………...19

d.      Predominance…………………………………………….....19

e.      Superiority………………………………………………..20

CONCLUSION………………………………………………………………………..21

## TABLE OF AUTHORITIES

**<u>Cases</u>** **<u>Page(s)</u>**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................... 21

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985) ............................................................. 19

*Cabot Corp. v. AVX Corp.*,
   448 Mass. 629 (2007) ........................................................................ 10

*Caissie v. BJ's Wholesale Club*, No. 08-30220
   (D. Mass. June 24, 2010)………………………………………………………..17

*Conley v. Sears, Roebuck & Co.*,
   222 B.R. 181 (D. Mass. 1998) ........................................................... 17

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317,
   2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ........................ 15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   183 F.3d 1 (1st Cir. 1999) ................................................................. 10

*Durrett v. Housing Auth. of Providence*,
   896 F.2d 600 (1st Cir. 1990) ............................................................. 10

*Dvornikov et al. v. Landry's, Inc. et al.*, No. 1:15-cv-1328,
   (D. Mass. Nov. 16, 2018)………………………………………………………..16

*E.E.O.C. v. Astra U.S.A., Inc.*,
   94 F.3d 73 (1st Cir. 1996) ................................................................. 10

*Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. 99-CV-143,
   (D.N.H. Jan. 23, 2004) ...................................................................... 18

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
   216 F.R.D. 97 (D. Me. 2003).............................................................. 7

*In re Fleet/Norstar Sec. Litig.*,
   935 F. Supp. 99 (D.R.I. 1996) ........................................................... 10

*In re Pharm. Indus.*,
   588 F.3d 24 (1st Cir. 2009) ............................................................... 14

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005) ................................................... 16, 17

*In re StockerYale, Inc. Secs. Litig.*,
    2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18, 2007) ...................................... 16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ................................................... 17

*In re Viatron Computer Sys. Corp. Litig.*,
    614 F.2d 11 (1st Cir. 1980) ........................................................ 10

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ....................................................... 18

*National Ass'n of the Deaf v. Massachusetts Inst. of Tech*,
    2020 U.S. Dist. LEXIS 53643 (D. Mass. Mar. 27, 2020) ................................. 14

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
    2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) .................................. 17

*Padovano v. FedEx Ground Package Sys.*,
    2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019)………………………………………...10

*Pavlidis v. New England Patriots Football Club, Inc.*,
    675 F. Supp. 707 (D. Mass. 1987) ................................................... 16

*Roberts v. TJX Cos., Inc.*,
    2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) ........................... *passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................. 20

## Statutes and Rules

29 U.S.C. § 201 ......................................................................... 2

29 U.S.C. § 16(b) ....................................................................... 3

Fed. R. Civ. P. 23 ................................................................ *passim*

After six and one-half years of litigation, Plaintiffs Celina Roberts, Anthony Sciotto, Eric Burns, Keri Dickey, Angela Ramirez, Diana Santillan, Camille Ghanem, Tommy Zahtila, and Gianfranco Pirolo ("Plaintiffs") are pleased to move for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement") attached as Exhibit 1 to the accompanying Declaration of Seth R. Lesser ("Lesser Dec."). Defendants The TJX Companies, Inc., Marshalls of MA, Inc., Marmaxx Operating Corp., and Homegoods, Inc. ("Defendants") do not oppose this motion.[1]

The Settlement here was reached by virtue of months of dogged negotiations on behalf of Plaintiffs and Defendants (together, the "Parties"), including two all-day sessions and numerous telephone conferences with Hunter R. Hughes, a leading FLSA mediator. It is a $31.5 million common fund settlement and will settle the entirety of the lawsuit set forth in the operative Third Amended Complaint, including the claims of the opt-ins who joined and remain in the conditionally certified FLSA collective and members of the putative Rule 23 New York state law class. In addition, and notably different from the prior training class settlement that the Court approved on September 30, 2016, every putative Rule 23 New York state law class member who does not opt-out of the settlement will receive a settlement payment and none of the Settlement funds will revert to the Defendants. The Settlement will include settlement payments to all final collective and class action members without any requirement of filing a claim form.[2]

---

[1] Though Defendants would, in the course of litigation, vigorously oppose Plaintiffs' claims on the merits, seek decertification of the FLSA collective, and oppose the Rule 23 certification of the putative New York state law class, they do not oppose the instant motion for settlement purposes only. Should the Court not grant preliminary or final approval, Defendants reserve the right to raise any argument with respect to the merits of Plaintiffs' claims or the appropriateness of the final certification of the FLSA collective or the certification of the putative Rule 23 New York state law class, or to make arguments contrary to any of Plaintiffs' positions in this memorandum.

[2] In the event that, despite remailing and rechecking of addresses prior to sending checks to the members of the Settlement Classes, uncashed checks remain, the unclaimed funds will escheat to the appropriate state authority for the respective settlement class members, but the funds will remain the property of the class members and be subject to recovery under escheatment laws of the states where the unclaimed funds are deposited.

This memorandum sets forth these and other reasons why preliminary approval is appropriate.  Of note, inasmuch as Class Counsel represents the individuals who opted-into the FLSA collective and who specifically authorized the named Plaintiffs to represent them for settlement purposes, Class Counsel will undertake to inform these clients about the Settlement, including the options they have with respect to it, their right to challenge their weeks worked, and will inform the Court of their clients' reactions.  This motion thus seeks preliminary approval of the Settlement and notice to the Rule 23 New York state law settlement class.  Plaintiffs will seek final approval of the FLSA collective settlement at the time of final approval of the Rule 23 New York state law settlement class and, thereby resolve all the claims in the litigation.

## I.      FACTUAL AND PROCEDURAL BACKGROUND (*See* Lesser Decl. ¶¶ 2-16)

On December 11, 2013, Plaintiffs Celina Roberts and Anthony Sciotto commenced this case.  Case No. 1:13-cv-13142 ("*Roberts*").  They asserted violations of 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), on behalf of themselves and other individuals employed by Defendants as a Marshalls or HomeGoods Assistant Store Manager, and alleged that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40.  *See Roberts* Action Doc. No. 1.

A couple of months later, on February 10, 2014, Plaintiff Eric Burns and a group of other plaintiffs commenced another action in this Court, Case No. 1:14-cv-10306 ("*Burns*"). The *Burns* Plaintiffs also asserted FLSA collective and NYLL class claims on behalf of themselves and other individuals who had been employed by Defendants as Marshalls Merchandising Assistant Store Managers alleging that they were not improperly classified as exempt and were not paid owed overtime wages for hours worked over 40 in a week.  *See Burns* Doc. No. 1.  On May 20, 2014, this Court consolidated the *Roberts* and *Burns* actions.  Just prior, on May 12, 2014, Camille Ghanem and a third group of plaintiffs commenced Case No.

14-cv-12104 ("*Ghanem*"), asserting violations of the FLSA and the NYLL, on behalf of themselves and other individuals employed as Marshalls, T.J. Maxx, and HomeGoods Assistant Store Managers, and alleging that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40 in a week during the time they spent training for an ASM position (the "ASM Training Claims"). *See Ghanem* Doc. No. 1.

On August 8, 2014, Plaintiffs filed a Second Amended Complaint in *Roberts*, along with an assented-to motion to dismiss the *Burns* and *Ghanem* actions, following the Court's granting an assented-to motion for leave to file a Second Amended Complaint to consolidate the three actions. In the Second Amended Complaint, Plaintiffs asserted violations of the FLSA and the NYLL, on behalf of themselves and other individuals employed by Defendants as a Marshalls or HomeGoods Assistant Store Manager, alleging that they were improperly classified as exempt and not paid overtime. *See Roberts* Doc. No. 60. The Court dismissed the *Burns* and *Ghanem* actions on August 13, 2014.

In March 2015, the Parties settled the *Ghanem* Training Claims included in the Second Amended Complaint, and the Court approved that settlement on September 30, 2016. *Roberts v. TJX Cos., Inc.*, 2016 U.S. Dist. LEXIS 136987, at *20 (D. Mass. Sept. 30, 2016).

On March 25, 2015, the Plaintiffs filed a Third Amended Complaint removing the ASM Training Claims from this action, leaving just the ASM Claims (as defined in the Settlement Agreement). While finalizing the Training Claims settlement, the Parties also engaged in "first stage" discovery related to notice and conditional certification issues under Section 16(b) of the FLSA, including Plaintiffs taking six depositions of Defendants' corporate witnesses and Defendants taking the depositions of the Plaintiffs and the Opt-ins who had, to that point, opted in to the litigation as party-plaintiffs by filing consent to join forms. The Parties exchanged written

discovery, including the production—and review—of thousands of documents.  Defendants also moved for summary judgment against two Plaintiffs, which the Court denied.

Thereafter, Plaintiffs moved for, and the Court granted, their Motion for Conditional Certification of an FLSA collective consisting of all persons who are or were employed as MASMs at Marshalls stores, HomeGoods stores, and Marshalls/HomeGoods combination stores outside of California at any time from November 1, 2012 to March 31, 2017.  Following notice to the FLSA Collective, 1,172 individuals were determined to have properly opted-in to the FLSA Collective.  The remaining members of the FLSA Collective, including their consent dates and applicable tolling periods, are set forth in Exhibit B of the Settlement Agreement.

Following the Court's order conditionally certifying the FLSA Collective, disputes arose between the Parties relating to the nature and scope of the "second stage" discovery about merits, damages, and Defendants' Affirmative Defenses, as well as differences in the nature of when and how discovery would commence in light of the "TopClassActions.com" issues, as well as other issues such as equitable claim tolling.  After extensive negotiations left many unresolved points, both sides put forward lengthy second stage discovery proposals in a series of filings that Magistrate Judge Kelley addressed and resolved in May 2019, whose order was upheld over Defendants' objections.  *Roberts* Doc. Nos. 329, 339.  The Parties then commenced second stage discovery in earnest.  Both prior to the Orders and following them, Plaintiffs' counsel interviewed and worked extensively with the numerous opt-in clients to prepare responses to Defendants' discovery requests, as well as prepare broad second-stage discovery to Defendants, including ESI discovery, and discovery related to the class certification of the New York state law claims.

As the Parties were facing a long, drawn-out, and expensive discovery process, and in light of each sides' already extensive knowledge and understanding of the case and its claims, in the fall of 2019, the Parties agreed to proceed to mediation with the assistance of Hunter R.

Hughes, III, one of the country's leading wage and hour class and collective action mediators, and the same mediator who aided them in resolving the Training Claims.

On December 11, 2019 and then again on January 23, 2020, the Parties engaged in all-day mediation sessions with Mr. Hughes.  The Parties were unable to settle this action in those in-person sessions, but continued settlement negotiations thereafter.  Between February 27, 2020 and June 9, 2020, the Parties negotiated the terms of a potential settlement and ultimately reached agreement on the terms of a Settlement Agreement, as well as a Settlement Notice, CAFA Notice, proposed Preliminary Approval Order, and a release.  The Parties conducted ongoing negotiations through exchanges of proposed terms in emails, and multiple telephone calls.  After exhaustive settlement negotiations, in May 2020, the Parties again sought the assistance of Mr. Hughes who became involved to aid the Parties in resolving particular issues, which ultimately culminated in the comprehensive Settlement Agreement.  Lesser Dec. at Exh.1.  As noted above, before agreeing to settle, and throughout the extensive litigation of this case, Plaintiffs' Counsel thoroughly investigated the claims brought in this action.

As discussed in more detail below, the proposed settlement is fair, reasonable, and adequate, and satisfies the requirements for approval under Fed. R. Civ. P. 23(e).  It is the product of extensive discovery, and lengthy negotiations between adverse parties represented by experienced counsel.  It represents what Class Counsel believe to be a substantial recovery, allowing them to obtain a monetary award without the delays and uncertainty of pursuing their claims through trial and appeal.  Lesser Decl. ¶¶ 17-22.

## II.   THE SETTLEMENT AND PROPOSED PLAN FOR NOTICE

### A.   THE SETTLEMENT

While maintaining its denial as to any liability or wrongdoing of any kind, Defendants will pay a Maximum Gross Settlement Amount of $31,500,000 ("Maximum Gross Settlement

Amount") to resolve all claims in the Third Amended Complaint.  The Settlement encompasses both the FLSA claims of the 1,172 opt-in plaintiffs and the claims of the members of the putative New York State Law Settlement Class, estimated to number 900 individuals, for a total (given overlap) of approximately 1,911 current and former ASMs.  Lesser Decl. ¶ 19.  Plaintiffs believe that the recovery is not merely adequate—it is a truly excellent result.  The $31,500,000 Maximum Gross Settlement Amount is the second largest wage and hour settlement in the First Circuit in terms of total dollars,[3] after the *CVS* settlement cited immediately below.  Each FLSA opt-in and each member of the New York State Law Settlement Class will be eligible to receive a settlement payment based upon their number of weeks they were employed by Defendants as an ASM in specific Marshalls, HomeGoods, and/or Marshalls/HomeGoods combination stores, among other factors.  Class Counsel has calculated that the gross recovery amount is $16,750.[4] Lesser Decl. ¶ 19.  Although every case is different, in other cases in this Circuit involving similar FLSA managerial misclassification claims, the gross recoveries to settlement members have been much less.  *See* Lesser Decl. ¶ 19.  Although every case is different, in other cases in this Circuit involving similar FLSA managerial misclassification claims, the gross recoveries to settlement members have been much less.  *See* Lesser Decl. ¶ 19.  For example, in *Caissie v. BJ's Wholesale Club,* No. 08-cv-30220 (D. Mass.), which was about mid-level department managers (not Assistant Store Managers) at a retail chain asserting they had been misclassified, the average gross recovery per settlement class member was $3,280.  And, likewise, in the largest FLSA settlement in the First Circuit, a retail pharmacy store mid-level manager misclassification case, the average class member gross recovery was $2,697, a result that District Judge Jack McConnell termed

---

[3] The Maximum Gross Settlement Amount agreed to here is a product of the extended class and collective limitations periods applicable to this case, which, for the New York state law settlement class runs for more than 12 years, and for some members of the FLSA collective, more than six years, and includes more than 300,000 workweeks.

[4] The average anticipated net average settlement payment will be $10,207, assuming approval of after the requested awards for administration, attorneys' fees and costs, and service payments.

"magnificent." *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) (final approval order dated Apr. 9, 2012). Lesser Decl. ¶ 19. The Settlement here is a fair, reasonable, and adequate result.

### B.     NOTICE PLAN

Assuming preliminary approval, the Claims Administrator will be responsible for issuing the Court-approved Settlement Notice to the New York State Law Settlement Class members within 20 days of the Preliminary Approval Order and after the Claims Administrator finalizes the class data, following up on undeliverable correspondence, and issuing tax documents and settlement payments from the Qualified Settlement Fund to the members of the Final Settlement Classes, assuming final Settlement approval. Prior to mailing the Settlement Notice, the Claims Administrator will attempt to confirm the accuracy, and, if necessary, update addresses though the Post Office's National Change of Address database.

The proposed Notice is attached as Exhibit A to the Settlement Agreement (Ex. 1 to the Lesser Declaration). The Claims Administrator will personalize it to contain the estimated individualized settlement payment amount for each member of the putative New York State Law Settlement Class, assuming that the Court approves all the requested awards. This Notice fairly describes the allegations in the case, the terms and the amount of the settlement, the provision for attorneys' fees and costs, and the proposed service payments to the Plaintiffs and certain Opt-ins. It will also identify the date, time, and location of the final approval hearing, and will afford the members of the New York State Law Settlement Class the opportunity to opt-out from or to object to the Settlement. Sending notice by first-class mail to the last known class member address is the best practicable and most widely accepted means of disseminating notice. *See In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 218 (D. Me. 2003) ("individualized notice by first-class mail ordinarily satisfies the requirement that class members

receive the best notice practicable under the circumstances"). Thus, the notice plan is fair, reasonable, and adequate.

## III.     THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUND

As with the ASM Training Claims settlement, all members of the Settlement Classes, including the Plaintiffs, FLSA Collective, and members of the putative Rule 23 New York settlement class are treated alike in the settlement payment allocation formula, with payment determined on a *pro rata* basis based upon the number of weeks each member of the Settlement Classes worked within the applicable statute of limitations for either their FLSA or New York State law claim. A *pro rata* per week payment is the most common way in which wage and hour misclassification cases are settled, whether as FLSA-only or Rule 23 class settlements, or, as here, a hybrid settlement, because it treats all settlement collective and/or class members alike. *See* Lesser Decl. ¶ 20.

The Qualified Settlement Fund will be administered by an independent and experienced third-party settlement administrator, and the Parties request that JND Legal Administration, who is familiar with Defendants' data through its work administering the ASM Training Claims settlement, in which it did an exceptional job, to be appointed as the settlement Claims Administrator ("Claims Administrator"). *See* Lesser Decl. ¶ 26.

The Maximum Gross Settlement Amount fund will cover all settlement payments to individual members of the Final Settlement Classes; Class Counsel's attorneys' fees and costs and disbursements up to thirty-three and one-third percent (33 and 1/3%) of the total fund, subject to Court approval; service payments to the Plaintiffs who will also be representatives of the Settlement Classes and to the FLSA opt-in plaintiffs who appeared for deposition;[5] the

---

[5] If approved by the Court, service awards will be paid in the amounts of $10,000 to named Plaintiffs Celina Roberts, Anthony Sciotto, Eric Burns, Keri Dickey, Angela Ramirez, Diana Santillan, Camille Ghanem, Tommy Zahtila, and Gianfranco Pirolo; and in the amount of $3,500 to three FLSA Collective members who appeared for deposition --

Defendants' share of payroll taxes; the mediation expenses; and the expenses of the Claims

Administrator (estimated to be approximately $60,000).  (Lesser Dec. Exh. 1 at II.A).  It also

includes a Reserve Fund of $500,000 which is sometimes included in wage and hour settlements

to cover errors or omissions, such as to address, for example, individual members of the

Settlement Classes who dispute the amounts allocated to them or any individuals who come

forward after the Settlement Notice is mailed and allege they should be included.  In the likely

event that the Reserve Fund is not exhausted, sixty days after mailing the settlement payment

checks, any amount remaining in the Reserve Fund will be reallocated and redistributed, on a *pro*

*rata* basis, among the members of the Final Settlement Classes.  Lesser Dec. Exh.1 at II.B.  No

portion of the Maximum Gross Settlement Amount shall revert to Defendants.

Defendants have agreed to provide funds equal to the Maximum Gross Settlement Amount

less any pre-paid mediation expenses for deposit into a qualified settlement fund no later than ten

business days after the Final Effective Date (as defined in the Settlement Agreement), or August

16, 2021,[6] whichever date is later.  (Lesser Dec. Exh. 1 at IX.A).  Twenty business days after

funding, individual payments will be mailed by direct check to the members of the Final

Settlement Classes.  One-half of each settlement payment is allocated as wages with regular

payroll tax withholdings, and one-half is allocated as non-wages, 1099 income (representing

alleged penalties and alleged liquidated damages).

---

Eugene Costa, Jr., Norma McKenzie, and Shawn Corway.  Lesser Decl. ¶ 25.  In addition, another FLSA Collective
member who was deposed, about whom the Parties dispute whether, given her precise position as an ASM in a store
that is not included in the class definitions in this Settlement, she is entitled to credit for certain weeks for her FLSA
claims, Karen Razzetti-Giaimis, will receive $7,500 as compensation both for her time and effort in aiding the
prosecution of the lawsuit and for her (disputed) relevant time.  Lesser Decl. ¶ 25.

[6] This date was reached as a result of extensive negotiations and was driven by Defendants' insistence on payment at a
later date than is typical in class settlement (sometimes 35 days after final approval) due to the extraordinary
circumstances that the Defendants have faced resulting from extensive and lengthy store closures and the substantial
lost business that has resulted from the COVID-19 pandemic.

## IV.   PRELIMINARY APPROVAL OF THIS CLASS ACTION SETTLEMENT UNDER AMENDED RULE 23(e) IS APPROPRIATE

### A.   Settlement of Class Actions Are Favored

Settlement is favored over protracted class action litigation. *Newberg on Class Action*s, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). Settlement spares the litigants of the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Accordingly, courts in the First Circuit consistently favor the settlement of disputed claims. *Durrett v. Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp. Litig.,* 614 F.2d 11, 15 (1st Cir. 1980); *see also Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638 (2007) (recognizing a "well-established public policy favoring the private settlement of disputes"); *E.E.O.C. v. Astra U.S.A., In*c., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.); Local Rule 16.4(A) (providing that "[t]he judicial officer shall encourage the resolution of disputes by settlement….").

The role of a district court is not to determine whether the settlement is the fairest possible resolution – a task ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement – including those terms relating to the allocation of settlement funds – are fair, reasonable, and adequate when considered from the perspective of the class as a whole. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 106 (D.R.I. 1996).

Rule 23 was amended as of December 1, 2018, and "alter[ed] the standards that guide a court's preliminary approval analysis" of the settlement of a putative Rule 23 class. *Padovano v. FedEx Ground Package Sys.*, 2019 U.S. Dist. LEXIS 107092 at *6 (W.D.N.Y. June 10, 2019). It

now "explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements". *Hall v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 143542 at *23 n.1 (E.D. Pa. Aug. 22, 2019):

> (e)     Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1)     *Notice to the Class.*

> (A)     *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

> (B)     *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all [Rule 23] class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).

**B.     Preliminary Approval is Warranted**

For the same reasons the Court deemed the ASM Training Claims settlement fit for preliminary and final approval, it should preliminarily approve this settlement.  Although the Court approved the ASM Training Claims settlement before Rule 23(e) was amended, the same rationale still applies.  Amended Rule 23(e) establishes that, at the "preliminary approval" stage, a district court must address two questions: (1) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)," and (2) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  As discussed below, both requirements are satisfied:

**1.     *The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)"***

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," the Court should look to Rule 23(e)(2)'s approval factors, which are:

11

(2)   *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

   (A)   the class representatives and class counsel have adequately represented the class;

   (B)   the proposal was negotiated at arm's length;

   (C)   the relief provided for the class is adequate, taking into account:

      (i)   the costs, risks, and delay of trial and appeal;

      (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)   any agreement required to be identified under Rule 23(e)(3); and

   (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As discussed below, Plaintiffs will likely satisfy each factor:

   **a.   Rule 23(e)(2)(A):  The settlement classes' representatives and class counsel have adequately represented the settlement classes.**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter, "Advisory Committee Notes"). This Settlement is the second largest FLSA settlement in the First Circuit in terms of total dollars, and represents an estimated average settlement payment more than in other FLSA settlements involving mid-manager positions in this Circuit and Court.  And, importantly, Defendants had several legal arguments that could have potentially resulted in Plaintiffs and the Settlement Classes receiving nothing or substantially less than what they will receive under this settlement.  As this Court recognized at the time that it approved the ASM Training Claims settlement, and even assuming that the New York State Settlement Class was certified for purposes

of the litigation under Rule 23, there were a large number of "contingencies" that could have "impact[ed] Plaintiffs' possible recovery," in a misclassification case of this sort, including, for instance, "the number of hours the average employee worked per week, the method of calculating damages, proving willfulness in order to extend the statute of limitations by one year in order to obtain an additional year of damages under FLSA, and showing lack of good faith in order to get liquidated damages," which was in addition to the risk presented by alternative methodologies by which damages could be shown. *Roberts*, 2016 U.S. Dist. LEXIS 136987, at *27-28.  There was always the possibility that the putative class could receive nothing, because, as the Court also noted in approving the ASM Training Claims settlement, defendants have won FLSA collective misclassification trials and the Defendants here would have presented vigorous defenses to the merits of Plaintiffs' claims. *Id.* at *23.

Prior to settling the case, Class Counsel had an extensive evidentiary record upon which to draw, including significant deposition and documentary evidence, and Class Counsel's extensive interviews and work with the FLSA Collective to address Defendants' discovery requests in the months both prior to and after Magistrate Kelley's rulings on the discovery disputes.  In addition, prior to the mediation sessions, Class Counsel sought, and obtained, detailed payroll data so as to be able to determine the number of weeks worked by all the members of the FLSA Collective and New York State Law Settlement Class, and to estimate the claimed average unpaid overtime wages.  This full scope of information allowed Class Counsel, themselves quite experienced in these kinds of cases, to carefully evaluate and analyze the merits of this settlement.

Based on the results obtained in this case as well as the work performed by Class Counsel prior to the mediation, it is likely that the Court will find this factor to be satisfied.

### b.    Rule 23(e)(2)(B):  The proposal was negotiated at arm's length.

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests."  Advisory Committee Notes.  Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations between the Parties, with the assistance of an experienced neutral third-party mediator.  A settlement is presumed to be reasonable when achieved by arm's length negotiations conducted by experienced counsel.  *In re Pharm. Indus.*, 588 F.3d 24, 33 (1st Cir. 2009); *see also*, *e.g.*, *National Ass'n of the Deaf v. Massachusetts Inst. of Tech*, 2020 U.S. Dist. LEXIS 53643, *11 (D. Mass. Mar. 27, 2020).   And, despite two all-day in-person mediation sessions, as with the settlement of the ASM Training Claims, "the mediation session[s] did not result in an immediate settlement, and the parties continued to negotiate over the next several months."  *Roberts*, 2016 U.S. Dist. LEXIS 136987, at *20.  This factor is certainly met.

### c.    Rule 23(e)(2)(C)(i):  The relief provided for the settlement classes is adequate, considering the costs, risks, and delay of trial and appeal.

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome," which "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  Advisory Committee Notes. Here, this factor is likely to be satisfied.   Absent settlement, the costs and delays associated with this litigation would be significant, and, as it is, the FLSA opt-ins joined this case a number of years ago.   There would have been extensive discovery and contested motions for class certification of the putative Rule 23 New York state law class, and decertification and final certification of the FLSA Collective.  Trial would probably not have commenced until at least mid-2021.  Even after trial, potential appeals could delay the final outcome.  Continued adversarial litigation would

14

be a long, complicated, and expensive process for the Parties and the Court.  And, the risks – the "contingencies" – that could have impacted the case were extensive.  *See also Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013) (writing, in approving hybrid FLSA retail chain mid-manager misclassification settlement, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability.").

> **d.  Rule 23(e)(2)(C)(ii):  The relief provided for the settlement classes is adequate, taking into account the effectiveness of the proposed method of distributing relief to the settlement classes including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Advisory Committee Notes.  This factor is likely to be satisfied, first, because this a case in which the Settlement Classes are defined groups of individuals ascertainable by Defendants' records and, second, because members of the New York State Law Settlement Class do not have to file a claim form to be eligible to receive a settlement payment.  Lesser Dec. Exh. 1 at IX.B.  If the Settlement is approved and they do not opt-out they, like the FLSA Collective, will be directly paid.  Moreover, every member of the New York State Law Settlement Class will receive an individualized notice form that explains the settlement and specifies his/her anticipated settlement payment amount and how it was calculated.  It also provides a process for them to challenge the determination of their weeks used to calculate their individual settlement payment.

> **e.  Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, costs and expenses, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Advisory Committee Notes.  Here, the total combined attorneys' fees, costs, and expenses sought by putative Class Counsel represent 33.3% of the $31,500,000 common settlement fund and will be paid at the same time as the

Settlement Classes.[7]  At the final approval stage, Plaintiffs will fully brief the fairness and

reasonableness of the requested attorneys' fees under the factors articulated in the First Circuit.

Plaintiffs, however, believe it is quite likely that the amount and timing of the proposed attorneys'

fees and costs will support final approval.  Class Counsel's request of 33 and 1/3%, as a

percentage of the fund for attorneys' fees, costs and expenses is an acceptable and common

percentage within this Circuit, particularly in light of the result that has been reached here.[8]

       The request for attorneys' fees, costs and expenses that Class Counsel will submit is also

warranted in light of two other considerations.  *First*, the risk Class Counsel faced with this case.

As the Court is well-aware, this case was filed after, on three prior occasions, Defendants had

successfully defeated attempts to have essentially the same claims that were asserted here certified

for notice.  *Second*, while the Court approved a one-third fee in the connection with the ASM

Training Claims settlement, it had "serious reservations" about such a fee percentage when only

39% of the ASM Training Claims settlement class members filed claims, writing it "would prefer

… a resolution where the attorneys are incentivized to get class members to receive their claims,

rather than simply incentivized to get a large settlement pool that will result in a large fee

regardless of what reverts back to the Defendant." *Roberts*, 2016 U.S. Dist. LEXIS 136987, at

*41.  Class Counsel has heeded the Court's words, and negotiated to ensure that this Settlement

would not be claims-made, but, rather, a non-reversionary direct-pay settlement.

---

[7] Defendants do not oppose Plaintiffs' Counsel's instant request for attorneys' fees, costs and expenses for settlement purposes only.  Should the Court not approve the proposed Settlement, Defendants reserve the right to raise any argument with respect to any subsequent request by Class Counsel for attorneys' fees, costs and expenses.

[8] *See, e.g.*, *Roberts, supra*; *Dvornikov et al. v. Landry's, Inc. et al.*, No. 1:15-cv-13286-ADB, Burroughs, J. (D. Mass. Nov. 16, 2018) (approving 33% of gross settlement amount) attached to Lesser Dec.; *see also, e.g., In re StockerYale, Inc. Secs. Litig.,* 2007 U.S. Dist. LEXIS 94004, at *21 (D.N.H. Dec. 18, 2007) (fees of 33% of $3,400,000 settlement, with expenses in addition to fee award); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving fee of 33 1/3%); *Pavlidis v. New England Patriots Football Club, Inc.*, 675 F. Supp. 707, 710 (D. Mass. 1987) (fees in the 20%-50% range in common fund class actions are not uncommon).

Further, while the First Circuit does not require a court to conduct a lodestar cross check, *In re Relafen Antitrust Litig.*, 231 F.R.D. at 81 (citations omitted), it can be used as "a check or validation of the appropriateness of the percentage of funds fee, but it is not required." *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419, at *1 (D. Mass. Aug. 3, 2009) (citations and quotation omitted).  Here, separate and apart from the attorneys' fees, costs, and expenses incurred in representing Plaintiffs in the ASM Training settlement, Plaintiffs' counsel have worked well over 8,000 hours at a combined lodestar of approximately $5 million dollars, which will result in a fee multiplier that of approximately 2.0, which is also well within the range of what is normally approved.  *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (approving lodestar multiplier of 8.9); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (multiplier of 2.697); *First Databank, Inc.*, 2009 WL 2408560 (multiplier of 8.3).  In fact, in this Court's previous second-largest FLSA settlement, the multiplier exceeded five.  *Caissie v. BJ's Wholesale Club*, No. 08-30220-MAP (D. Mass. June 24, 2010) (5+ multiplier in a 30% fee in a $9.15 million FLSA/state law wage and hour mid-manager class and collective action settlement).  Thus, the proposed attorneys' fee award is within the range of fees approved for class actions in this Court.

**f.      Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).**

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, besides the Settlement Agreement, there are no "side agreements" concerning this settlement.  This factor is thus likely to be satisfied.

**g.      Rule 23(e)(2)(D):  The proposal treats settlement class members equitably relative to each other.**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Committee Notes.   This factor is likely to be satisfied.  As discussed, all

17

members of the Settlement Classes will receive their base settlement payments based on the same *pro rata* formula.

### 2.    *The Court "will likely be able to certify the class" for settlement purposes*

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," the next question is whether the Court "will likely be able to . . . certify the class" for settlement.   Fed. R. Civ. P. 23(e)(1)(B)(ii).   Here, Plaintiffs ask the Court preliminarily to certify, for settlement purposes only, a Rule 23 settlement class of any and all persons employed in an ASM POSITION (as defined in the Settlement Agreement) at a Marshalls store or a Marshalls/HomeGoods combination store located in the State of New York during the period from December 11, 2007 to March 28, 2020.   To be certified for settlement purposes, the proposed class must meet the requirements of both Rule 23 (a) and Rule 23(b)(3).   *Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. 99-CV-143, 2004 WL 166722, at *2 (D.N.H. Jan. 23, 2004) (citations omitted).   Plaintiffs believe these requirements are likely to be met.

### a .  Numerosity

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable."   *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).   Here, numerosity is met because the proposed New York state law settlement class includes approximately 900 individuals.   *See First Databank, Inc.*, 2009 WL 10703302, at *2.

### b.    Commonality and Typicality

There are common questions of law and fact.   The gravamen of this lawsuit is Defendants' alleged common, corporate-wide policy of classifying all ASMs as exempt from payment of overtime premium wages.   This is a common contention for each member of the New York State Law Settlement Class, and Plaintiffs take the position that it can be satisfied using evidence common to the class.   *See First Databank, Inc.*, 2009 WL 10703302 at *2-3

18

(granting a motion to certify a class for settlement purposes and describing common legal and factual contentions suitable for resolution on a class-wide basis).  Likewise, Plaintiffs take the position that the Named Plaintiffs' claims are typical, as they are alleged to be identical to the claims of the members of the New York State Law Settlement Class.

### c.   Adequacy

This requirement is satisfied if both: (a) the plaintiff's attorney is qualified, experienced, and able to conduct the proposed litigation, and (b) the moving party shows first that the interests of the representative party will not conflict with the interests of any of the class.  *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).  As the Court previously recognized, Class Counsel here are "highly competent attorneys with substantial experience litigating wage and hour claims, and pursuing such claims in class and collective actions."  *Roberts*, 2016 U.S. Dist. LEXIS 136987 at *35; *see also* Dkt. No. 82-7 at ¶¶ 18-20 & 82-8 (setting forth qualifications of Class Counsel).  The Named Plaintiffs, in turn, have no interests that are antagonistic to the New York State Law Settlement Class and Plaintiffs take the position that their interests are aligned.

### d .  Predominance

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).  The Supreme Court summarized the predominance test as follows:

> The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'  When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, Plaintiffs assert that predominance is satisfied because the success or failure of Plaintiffs' challenge to Defendants' actions surrounding the uniform classification of ASMs as exempt will turn on this Court's application of common legal principles to a common set of facts. In this regard, Plaintiffs believe this lawsuit is actually *more* cohesive than *Bouaphakeo*, where the Supreme Court found predominance satisfied where hundreds of employees (who worked in different job titles and departments and some of whom might have suffered no actual damages) challenged their employer's timekeeping and payroll practices. *See* 136 S. Ct. at 1042-44.

### e.    Superiority

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions," which is intended to protect against class certification where individuals have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See William Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Action*s at §4:69. Here, the legal issues are not so emotionally charged that members of the Settlement Classes have a strong interest in individual control of the litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members, an irrelevant factor because Class Counsel are unaware of other cases brought against Defendants for these claims.

Third, Rule 23(b)(3)(C) requires consideration of the desirability of "concentrating the litigation of the claims in a particular forum." Plaintiffs assert concentration of all claims in this Court in this action is efficient and desirable because Defendants are headquartered in this District.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." This requirement is irrelevant when a case is certified for settlement purposes only. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

## CONCLUSION

For the reasons set forth here, Plaintiffs respectfully request this Court grant Plaintiffs'

unopposed motion and enter the proposed Preliminary Approval Order (Lesser Dec. as Exh. 2).

Date:   July 20, 2020

Respectfully submitted,

/s/ Seth R. Lesser

**VALLI KANE & VAGNINI LLP**
Sara Wyn Kane*
Robert J. Valli, Jr.*
James A. Vagnini*
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser**
Fran L. Rudich
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

**BURR & SMITH, LLP**
Sam J. Smith*
Loren B. Donnell*
111 2nd Ave. N.E., Suite 1100
St. Petersburg, FL  33701
Telephone: (813) 253-2010

**FAIR WORK, P.C.**
Hillary Schwab
192 South Street, Suite 450
Boston, MA 02111
Telephone:  (617) 607-3260

**MEHRI & SKALET, PLLC**
Cyrus Mehri*
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100

**HEPWORTH, GERSHBAUM
& ROTH, PLLC**
Marc S. Hepworth*
David A. Roth*
192 Lexington Avenue, Suite 802
New York NY 10016
Telephone: (212) 545-1199

**ELLWANGER
LAW LLP**
Jay D. Ellwanger*
8310-1 N. Capital of Texas Hwy., Ste. 190
Austin, Texas  78731
Telephone: (737) 808-2262

**SHAVITZ LAW GROUP PA**
Gregg Shavitz*
Alan Quiles*
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Telephone: (561) 447-8888

***Attorneys for Plaintiffs***

* Admitted *Pro Hac Vice*

21

## CERTIFICATE OF SERVICE

I, Seth R. Lesser, hereby certify that a true copy of the above document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 20, 2020.

/s/ *Seth R. Lesser*
Seth R. Lesser

*Attorney for Plaintiffs*