UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------------X
CELINA ROBERTS, ANTHONY SCIOTTO, ERIC
BURNS, KERI DICKEY, ANGELA RAMIREZ,
DIANA SANTILLAN, CAMILLE GHANEM, ARNOLD
WILLIAMS, TOMMY ZAHTILA, and GIANFRANCO
PIRILO, individually, and on behalf of other persons
similarly situated,

                                  Plaintiffs,                CIVIL ACTION NO.

v.

                                                       1:13-CV-13142

THE TJX COMPANIES, INC., a Delaware
Corporation; MARSHALLS OF MA, INC., a
Massachusetts Corporation; MARMAXX
OPERATING CORP., a Delaware Corporation,
d/b/a MARSHALLS HOMEGOODS, d/b/a
MARSHALLS, d/b/a T.J. MAXX HOMEGOODS;
HOMEGOODS, INC., a Delaware Corporation;

                                  Defendants.
-----------------------------------------------------------------X

### DECLARATION OF SETH R. LESSER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

SETH R. LESSER, an attorney admitted *pro hac vice* to the bar of this Court, declares, under penalty of perjury that:

1.     I am a partner in Klafter Olsen & Lesser LLP, and counsel for Plaintiffs Celina Roberts, Anthony Sciotto, Eric Burns, Keri Dickey, Angela Ramirez, Diana Santillan, Camille Ghanem, Tommy Zahtila, and Gianfranco Pirolo ("Plaintiffs"). I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of the Plaintiffs' Unopposed Motion for Preliminary Approval ("Plaintiffs' Motion"), as well as for the sending of notice and the scheduling of a final approval hearing, and other relief set forth in the proposed

1

Preliminary Approval Order set forth at Exhibit 2 to this declaration for the proposed Settlement reached in this action between Plaintiffs and Defendants The TJX Companies, Inc., Marshalls of MA, Inc., Marmaxx Operating Corp., and Homegoods, Inc. ("Defendants") (together, Plaintiffs and Defendants are referred to herein as "the Parties").  Exhibit 1 to this declaration is a copy of the Stipulation and Settlement Agreement ("Settlement Agreement"), with its exhibits A (the proposed Notice) and B (list of remaining members of the previously conditionally certified FLSA collective).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

2. On December 11, 2013, Plaintiffs Celina Roberts and Anthony Sciotto commenced this case. Case No. 1:13-cv-13142 ("*Roberts*"). They asserted violations of 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), on behalf of themselves and other individuals employed by Defendants as a Marshalls or HomeGoods Assistant Store Manager, and alleged that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40. *See Roberts* Action Doc. No. 1.

3. On February 10, 2014, Plaintiff Eric Burns and a group of other plaintiffs commenced another action in this Court, Case No. 1:14-cv-10306 ("*Burns*"). The *Burns* Plaintiffs also asserted FLSA collective and NYLL class claims on behalf of themselves and other individuals who had been employed by Defendants as Marshalls Merchandising Assistant Store Managers alleging that they were not improperly classified as exempt and were not paid owed overtime wages for hours worked over 40 in a week. *See Burns* Doc. No. 1.

4. On May 20, 2014, this Court consolidated the *Roberts* and *Burns* actions. Prior to that, on May 12, 2014, Camille Ghanem and a third group of plaintiffs commenced Case No. 14-cv-12104 ("*Ghanem*"), asserting violations of the FLSA and the NYLL, on behalf of themselves and other individuals employed as Marshalls, T.J. Maxx, and HomeGoods Assistant Store

2

Managers, and alleging that they were not properly classified as exempt and were not paid overtime wages for hours worked over 40 in a week during the time they spent training for an ASM position (the "ASM Training Claims"). *See Ghanem* Doc. No. 1.

5. On August 8, 2014, Plaintiffs filed a Second Amended Complaint in *Roberts*, along with an assented-to motion to dismiss the *Burns* and *Ghanem* actions, following the Court's granting an assented-to motion for leave to file a Second Amended Complaint to consolidate the three actions. In the Second Amended Complaint, Plaintiffs asserted violations of the FLSA and the NYLL, on behalf of themselves and other individuals employed by Defendants as a Marshalls or HomeGoods Assistant Store Manager, alleging that they were improperly classified as exempt and not paid overtime. *See Roberts* Doc. No. 60.

6. The Court dismissed the *Burns* and *Ghanem* actions on August 13, 2014.

7. In March 2015, the Parties settled the *Ghanem* Training Claims included in the Second Amended Complaint, and the Court approved that settlement (the "ASM Training Claims settlement") on September 30, 2016. *Roberts v. TJX Cos., Inc.*, 2016 U.S. Dist. LEXIS 136987, at *20 (D. Mass. Sept. 30, 2016).

8. On March 25, 2015, the Plaintiffs filed a Third Amended Complaint removing the ASM Training Claims from this action, leaving just the ASM Claims (as defined in the Settlement Agreement).

9. While finalizing the ASM Training Claims settlement, the Parties also engaged in "first stage" discovery related to notice and conditional certification issues under Section 16(b) of the FLSA, including Plaintiffs taking six corporate witnesses and Defendants taking the depositions of eleven Plaintiffs and the Opt-ins who had, to that point, opted in to the litigation as party-plaintiffs by filing consent to join forms. The Parties exchanged written discovery, including the production—and review—of thousands of documents. Defendants also moved for

summary judgment against two Plaintiffs, which the Court denied.

10. On July 23, 2015, Plaintiffs moved for, and on March 31, 2017, the Court granted, Plaintiffs' Motion for Conditional Certification of an FLSA collective consisting of all persons who are or were employed as MASMs at Marshalls stores, HomeGoods stores, and Marshalls/HomeGoods combination stores outside of California at any time from November 1, 2012 to March 31, 2017.  *Roberts* Doc. No. 186; *Roberts v. TJX Cos.*, 2017 U.S. Dist. LEXIS 49174 (D. Mass. March 31, 2017).

11. Following notice to the FLSA Collective, 1,172 individuals were determined to have properly opted-in to the FLSA Collective.  The remaining members of the FLSA Collective, including their consent dates and applicable tolling periods, are set forth in Exhibit B of the Settlement Agreement (Exhibit 1).

12. Following the Court's order conditionally certifying the FLSA Collective, disputes arose between the Parties relating to the nature and scope of the "second stage" discovery about merits, damages, and Defendants' Affirmative Defenses, as well as differences in the nature of when and how discovery would commence in light of the "TopClassActions.com" issues,[1] as well as other issues such as equitable claim tolling.  After extensive negotiations left many unresolved points, both sides put forward lengthy second stage discovery proposals in a series of filings that Magistrate Judge Kelley addressed and resolved in May 2019, whose order was upheld over Defendants' objections.  *Roberts* Doc. Nos. 329, 339.

13. The Parties then commenced second stage discovery in earnest.  Both prior to the Orders and following them, Plaintiffs' counsel interviewed and worked extensively with the

---

[1] On approximately November 24, 2017, "TopClassActions.com", without the consent or knowledge of any Party, included on that website a post misrepresenting that this case had been settled, with a link to the consent to join form that had been sent to putative FLSA collective members – resulting in over 650 individuals opting into the action who were neither employed by Defendants nor putative members of the conditionally certified collective.  The Parties spent months addressing this issue, ultimately seeking the Court's assistance to dismiss these individuals.

numerous opt-in clients to prepare responses to Defendants' discovery requests, as well as prepare broad second-stage discovery to Defendants, including ESI discovery, and discovery related to the class certification of the New York state law claims.

14. Inasmuch as the Parties were facing a long, drawn-out, and expensive discovery process, and in light of each sides' already extensive knowledge and understanding of the case and its claims, in the fall of 2019, the Parties agreed to proceed to mediation with the assistance of Hunter R. Hughes, III, one of the country's leading wage and hour class and collective action mediators, and the same mediator who aided them in resolving the Training Claims.

15. On December 11, 2019 and then again on January 23, 2020, the Parties engaged in all-day mediation sessions with Mr. Hughes. The Parties were unable to settle this action in those in-person sessions, but continued settlement negotiations through the mediator. Between February 27, 2020 and June 9, 2020, the Parties negotiated the terms of a potential settlement and ultimately reached agreement on the terms of a Settlement Agreement, as well as a Settlement Notice, CAFA Notice, proposed Preliminary Approval Order, and a release.

16. The Parties conducted ongoing settlement negotiations through exchanges of proposed settlement terms, emails, and multiple telephone calls. After exhaustive settlement negotiations, in May 2020, the Parties again sought the assistance of the mediator, Mr. Hughes, who became involved to aid the Parties in resolving particular issues, which ultimately culminated in the comprehensive Settlement Agreement. Lesser Dec. at Exh. 1.

**II.  PLAINTIFFS' COUNSEL BELIEVE THE SETTLEMENT TO BE A FAIR, REAONABLE AND ADEQUATE RECOVERY AND THAT THEY AND THE PLAINTIFFS ARE ADEQUATE COUNSEL AND REPRESENTATIVE PLAINTIFFS UNDER RULE 23**

17. As noted above, before agreeing to settle, and throughout the extensive litigation of this case, Plaintiffs' Counsel thoroughly investigated the claims brought in this action and were

well informed about the facts and circumstances of the claims here through the discovery, as well as the discussions and interviews with their clients over the course of the years in which the case has been pending.

18.     Plaintiffs' Counsel are of the opinion that the proposed Settlement is fair, reasonable, and adequate. Further, we believe that the Settlement Agreement is in the best interest of the members of the Settlement Classes in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues the Defendants may assert were the case to continue.  The full terms are set out in the Settlement Agreement itself and the primary terms of the Settlement and Notice Plan are set forth at pages 5-9 of the accompanying Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement.  It will also provide closure to a case that has been proceeding for a number of years.  In reaching this opinion, aside from Plaintiffs' Counsel knowledge of the facts and claims of the case, it should be noted that we also consider that the Settlement also resulted from, as set forth above, lengthy negotiations between adverse parties represented by experienced counsel.  Further, the Settlement here is non-claims made and non-reversionary, addressing points that the Court made in its approval of the ASM Training Claims settlement.

19.     The Settlement represents what I, and the other Plaintiffs' Counsel, believe to be a substantial recovery, allowing their clients, including the Plaintiffs, the remaining members of the FLSA Collective (*i.e.*, the individuals listed on Exhibit B of the Settlement Agreement (Exhibit 1)), and the members of the New York State Law Settlement Class (as that term is defined in the Settlement Agreement).  There are 1,172 individuals remaining in the FLSA Collective and Defendants believe that there are approximately 900 members of the New York State Law Settlement Class so that, when the overlap between the two groups is taken into

account, there are approximately 1,911 current and former ASMs encompassed by the Settlement. Plaintiffs' Counsel are of the belief that the recovery is not merely adequate—but that it is an excellent result. The $31,500,000 Maximum Gross Settlement Amount is the second largest wage and hour settlement in the First Circuit in terms of total dollars,[2] after the *CVS* settlement cited immediately below. Each FLSA opt-in and each member of the New York State Law Settlement Class will be eligible to receive a settlement payment based upon their number of weeks they were employed by Defendants as an ASM in specific Marshalls, HomeGoods, and/or Marshalls/HomeGoods combination stores, among other factors. Plaintiffs' Counsel calculates that the gross recovery amount is $16,750.[3] For example, in the two prior largest settlements in this Court, both of which cases involved mid-manager misclassification claims, *Caissie v. BJ's Wholesale Club,* No. 08-cv-30220 (D. Mass.), and *Lapan v Dick's Sporting Goods, Inc.*, No. 13-cv-11390 (D. Mass.), the gross average settlement recoveries were, respectively, $3,280 and $4,335. And, likewise, in the largest FLSA settlement in the First Circuit, a retail pharmacy store mid-level manager misclassification case, the average class member gross recovery was $2,697, a result that District Judge Jack McConnell termed "magnificent." *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) (final approval order dated Apr. 9, 2012). The Settlement here, Plaintiffs' Counsel submit, is a fair, reasonable, and adequate result.

20.     Further, as with the ASM Training Claims settlement, all members of the Settlement Classes, including the Plaintiffs, FLSA Collective, and members of the putative Rule 23 New York settlement class are treated alike in the settlement payment allocation formula, with payment determined on a *pro rata* basis based upon the number of weeks each member of the

---

[2] The Maximum Gross Settlement Amount agreed to here is a product of the extended class and collective limitations periods applicable to this case, which, for the New York state law settlement class runs for more than 12 years, and for some members of the FLSA collective, more than six years, and includes more than 300,000 workweeks.

[3] The average anticipated net average settlement payment will be $10,207, assuming approval of after the requested awards for administration, attorneys' fees and costs, and service payments.

Settlement Classes worked within the applicable statute of limitations for either their FLSA or New York State law claim. I believe, based upon my experience (including in being counsel in all three of the cases cited in the immediately previous paragraph) that a *pro rata* per week payment is the most common way in which wage and hour misclassification cases are settled, whether as FLSA-only or Rule 23 class settlements, or, as here, a hybrid settlement, because it treats all settlement collective and/or class members alike.

21. In reaching our conclusion that the settlement here is fair, reasonable and adequate, Plaintiffs' Counsel can also draw upon their experience – which it is fair to say is extensive – in similar matters. In approving the ASM Training Claims settlement, for instance, the Court wrote that Plaintiffs' counsel are "highly competent attorneys with substantial experience litigating wage and hour claims, and pursuing such claims in class and collective actions." *Roberts*, 2016 U.S. Dist. LEXIS 136987 at *35; *see also Roberts* Dkt. No. 82-7 at ¶¶ 18-20 & 82-8 (setting forth qualifications of Class Counsel). As to myself and my firm, for instance, over the last 10 years, my firm has successfully litigated to conclusion several dozen FLSA/state wage and hour cases and settlements that, to date, constitute over $250 million in recoveries. This includes the three cases referred to in paragraph 19, above, which are the three largest wage and hour settlements within the First Circuit to date, as well as *Stillman v. Staples, Inc.*, 07-cv-849 (D.N.J.) ("Staples"), a FLSA wage and hour case that my firm ultimately successfully tried to a jury verdict on behalf of a collective of 342 opt-ins and which case is one of the rare FLSA cases that has, at least in recent years, been successfully tried to a jury verdict for plaintiffs. That trial, even pursuant to an expedited schedule, occurred nearly two years after the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of law and fact. Although a jury verdict was obtained, the post-trial motion practice that followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to

have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime, and for decertification of the collective class. Ultimately, the Staples case resulted in an omnibus settlement totaling $42 million. *In re Staples Wage & Hour Litigation*, MDL No. 2025 (D.N.J.) (final approval obtained November 3, 2011).

22. The qualifications of the other firms who have litigated on behalf of the Plaintiffs are also substantial and include a substantial number of wage and hour cases in class and collective wage and hour actions: *see, e.g.*, Fair Work P.C. (*Crenshaw et al. v. Texas Roadhouse, Inc.*, D. Mass. Civil Action No. 11-10549-JLT; *Malinski et al. v. Starwood Hotels & Resorts Worldwide, Inc. and Pyramid Advisors LLC*, D. Mass. Civil Action No. 08-11859-RWZ; Burr & Smith, LLP (*Stahl et al. v. Mastec, Inc. et al.*, 8:05-cv-01265-RAL-TGW; *Applegate-Walton et al. v. Olan Mills Inc.*, M. Tenn., 8:10-cv-00224); Shavitz Law Group P.A. (*Zeltser v. Merrill Lynch & Co., Inc., et al.*, S.D.N.Y., Case No. 13 Civ 1531; *Yuzary v. HSBC Bank USA, N.A.*, S.D.N.Y. Case No. 12 Civ. 3693); Mehri & Skalet, PLLC (*Martin v. U.S.*, Fed. Cl., No. 1:13-cv-00834-PEC; *Geday v. C.U. Employment, Inc.*, D.D.C., No. 12-cv-00175); Valli, Kane & Vagnini, LLP (*Kudo v. Panda Express Restaurant Group*, S.D.N.Y., 09-cv-712; *Johnson et al v. County of Nassau*, E.D.N.Y., 2:10-cv-02792); Hepworth, Gersbaum, & Roth (*Lapan et al. v. Dick's Sporting Goods, Inc.*, D. Mass., 13-11390-RGS; *Costello et al. v. Kohl's Illinois, Inc., et al.*, S.D.N.Y., Civil Action NO. 1:13-cv-1359 GHW); Dinovo, Price, Ellwanger & Hardy, LLP (*Indergit et al/ v. Rite Aid*, S.D.N.Y., 08-cv-9361).

23. To date, in this case, and separate and apart from the attorneys' fees and expenses incurred in representing plaintiffs in the ASM Training Claims settlement, Plaintiffs' Counsel have worked incurred well over 8,000 hours at a combined lodestar of approximately $5 million dollars, which will result in a fee multiplier that of approximately 2.0, which is also well within the range of what is normally approved. Plaintiffs' counsel has also incurred costs in excess of

9

$150,000.

24.     In addition, Plaintiffs' Counsel have fully advised the representative Plaintiffs of the Settlement Agreement, who approve of and consent to the Settlement.  We are not aware of, and none of the Plaintiffs, upon being asked or in deposition has identified, any conflicts of interest.

25.     Further, each of the Plaintiffs for whom $10,000 service awards will be requested, Plaintiffs Celina Roberts, Anthony Sciotto, Eric Burns, Keri Dickey, Angela Ramirez, Diana Santillan, Camille Ghanem, Tommy Zahtila, and Gianfranco Pirolo not only put their names on the complaint but substantially aided the work of Plaintiffs' counsel and the case through time and effort in consultation and taking the time to deposed; likewise, each of the three FLSA Collective members who appeared for deposition, Eugene Costa, Jr., Norma McKenzie, and Shawn Corway, for whom $3,500 service awards will be requested, aided in the prosecution of this case by appearing for deposition and responding to discovery.  Finally, FLSA Collective member Karen Razzetti-Giaimis, about whom the Parties dispute whether, given her precise position as an ASM in a store that is not included in the class definitions in this Settlement, she is entitled to credit for certain weeks for her FLSA claims, will receive $7,500 as compensation both for her time and effort in aiding the prosecution of the lawsuit and for her (disputed) relevant time.  This aid by these individuals makes them, Plaintiffs' Counsel will submit at the time of final approval, eminently proper recipients of service awards.

### III.  THE PROPOSED CLAIMS ADMINISTRATOR

26.     The Qualified Settlement Fund will, if approved by the Court, be administered by an independent and experienced third-party settlement administrator, and the Parties believe that JND Legal Administration ("JND"), who is familiar with Defendants' data through its work administering the ASM Training Claims settlement and in which it, in our (and Defendants'

opinion) did an exceptional job, should be appointed as the settlement Claims Administrator. The Parties have obtained an all-in estimate for administrating the Settlement from JND of no more than $60,000, which I believe to be a reasonable and fair amount for administering a settlement of this size based upon my experience.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected. Executed on this 20th day of July 2020, in Rye Brook, New York.

_____
Seth R. Lesser

## CERTIFICATE OF SERVICE

I, Seth R. Lesser, hereby certify that a true copy of the above document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 20, 2020.

/s/ *Seth R. Lesser*
Seth R. Lesser

*Attorney for Plaintiffs*